# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAY 0 8 2002 **LF**

Michael N. Milby, Clerk

| | |
|---|---|
| PAMELA M. TITTLE, on behalf of herself and a class of persons similarly situated, et al., § § § § | |
| *Plaintiffs*, § § § | |
| v. § § | CIVIL ACTION NO: H-01-3913 AND CONSOLIDATED CASES |
| ENRON CORP., an Oregon Corporation, et al., § § § § | |
| *Defendants*. § | |

---

## THE OUTSIDE DIRECTOR DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST CONSOLIDATED AND AMENDED COMPLAINT

---

Robin C. Gibbs
Kathy D. Patrick
Robert J. Madden
Jennifer Horan Greer
Jeremy L. Doyle
GIBBS & BRUNS, L.L.P.
1100 Louisiana Street, Suite 5300
Houston, Texas 77002

### ATTORNEYS FOR DEFENDANTS
Robert A. Belfer, Norman P. Blake, Ronnie C. Chan,
John H. Duncan, Wendy L. Gramm, Joe H. Foy,
Robert K. Jaedicke, and Charles A. LeMaistre




# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES
.......................................................... vi

I.  INTRODUCTION ....................................................... 1

II. PLAINTIFFS' ALLEGATIONS GENERALLY FAIL TO STATE A CLAIM FOR
WHICH RELIEF CAN BE GRANTED AGAINST THE OUTSIDE DIRECTORS .... 2

    A.  Plaintiffs' Group Allegations Deprive the Directors of Fair Notice and Do
Not Plead Fraud With Particularity ..................................... 3

    B.  Relevant Pleading Standards Demonstrate Plaintiffs' Allegations are
Insufficient ......................................................... 5

III. PLAINTIFFS' ERISA CLAIMS AGAINST THE OUTSIDE DIRECTORS
SHOULD BE DISMISSED ................................................ 8

    A.  No Allegation of Fiduciary Status Against the Outside Directors ............. 9

        1.  The Cash Balance Plan ....................................... 11

        2.  The ESOP ................................................. 11

        3.  The Savings Plan ........................................... 13

    B.  No Allegation of a Breach of Any Alleged Fiduciary Duty ................ 17

        1.  Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim for
Breach of Fiduciary Duty under the Standard Established by the Fifth
Circuit in *Sommers* ......................................... 18

        2.  No Allegation of Fiduciary Responsibility in Connection with
Actions of Investing Fiduciary ................................. 20

    C.  No Allegation of a Breach of Any Alleged Co-Fiduciary Duty .............. 22

        1.  Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim for
Breach of Co-Fiduciary Duty under the Standard Established by the
Fifth Circuit in *Sommers* ..................................... 23

2.     No Allegation of Knowledge of a Breach of Duty by an Alleged Co-Fiduciary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.   PLAINTIFFS' RICO CLAIMS AGAINST THE OUTSIDE DIRECTORS SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

A.    Plaintiffs' RICO Claims Are Barred by the PSLRA . . . . . . . . . . . . . . . . . . . . . 29

1.     The PSLRA Amendment to RICO Expressly Bars RICO Claims Based on Conduct Actionable as Securities Fraud . . . . . . . . . . . . . . . . . 29

2.     Plaintiffs RICO Claims Are Thinly Veiled Securities Fraud Claims Barred by the PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

B.    Plaintiffs Have Not Adequately Alleged a Pattern of Racketeering Activity . . . 33

1.     Plaintiffs Have Failed to Allege Adequately "Racketeering Activity" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

a.     Plaintiffs Have Not Alleged any Predicate Act Because They Have Failed to Plead that the Outside Directors Acted with Scienter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

b.     Plaintiffs Have Not Alleged any Predicate Act Because They Have Not Alleged an Actionable Taking of Money or Property in Which They Had an Ownership Interest . . . . . . . . . 43

i.     Employee Contributions . . . . . . . . . . . . . . . . . . . . . . . . . 44

ii.    Enron Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

c.     Plaintiffs Have Not Alleged a Predicate Act Because They Have Failed to Plead Other Critical Elements Specific to Each of Their Claimed Predicate Acts . . . . . . . . . . . . . . . . . . . . . . . . 46

i.     Plaintiffs Have Failed to Plead that the Outside Directors Committed Embezzlement in Violation of § 664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

(A)    Plaintiffs Have Failed to Plead that the Outside Directors Had Custody of Plan Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

(B)    Plaintiffs Have Failed to Allege that Any of the Outside Directors "Embezzled" any Plan Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    (1)    Plaintiffs Have Failed to Allege any Unauthorized Use or Fraudulent Appropriation . . . . . . . . . . . . . . . . . . . . . . 48

    (2)    Plaintiffs Have Failed to Allege an Intentional Breach of a Special Fiduciary Duty . . . . . . . . . . . . . . . . . . . . 50

ii.    Plaintiffs Have Failed to Plead that the Outside Directors Committed Mail or Wire Fraud in Violation of § 1341 and § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

iii.    Plaintiffs Have Failed to Plead that the Outside Directors Committed Obstruction of Justice in Violation of § 1512(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . 54

iv.    Plaintiffs Have Failed to Plead that the Outside Directors Committed Interstate Transportation Offenses in Violation of § 2314 . . . . . . . . . . . . . . . . . . . . 55

    (A)    Plaintiffs Have Failed to Allege that the Outside Directors Committed the Crime of Interstate Transportation of Fraudulently Obtained Property . . . . . . . . . . . . . . . . . . . . . . . 56

    (B)    Plaintiffs Have Failed to Allege that the Outside Directors Committed the Crime of Travel Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

d.    Aiding and Abetting and Conspiracy Are Not Cognizable Predicate Acts Under § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

2.    Plaintiffs Have Failed to Allege a "Pattern" of Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

a.    Plaintiffs Have Failed to Allege that Any Racketeering Activity by the Outside Directors Was Related . . . . . . . . . . . . . 61

b.      Plaintiffs Have Failed to Allege that Any Racketeering Activity by the Outside Directors Was Continuous . . . . . . . . . . 66

C.      Plaintiffs Have Failed to Allege a Cognizable Enterprise . . . . . . . . . . . . . . . . . 67

D.      Plaintiffs Have Failed to Allege a Cognizable Injury or Standing Under RICO
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

1.      Plaintiffs Have Alleged No "Investment Injury" that Is Cognizable Under 18 U.S.C. § 1962(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

2.      Plaintiffs Have Alleged No Injury from Any Predicate Act Purportedly Committed by the Outside Directors under 18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

E.      Plaintiffs Have Not Alleged Causation or Reliance Under RICO . . . . . . . . . . . 72

1.      Plaintiffs Fail to Allege Reliance or Proximate Cause . . . . . . . . . . . . . 73

2.      Plaintiffs' Allegations Negate the Possibility of Reliance or Proximate Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

F.      Plaintiffs Have Not Alleged the Remaining Elements of Their RICO Claims
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

1.      Section 1962(a): Plaintiffs Have Not Alleged that the Outside Directors Invested in and Enterprise Income Derived from Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

2.      Section 1962(c): Plaintiffs Have Not Alleged that the Outside Directors Participated in the Conduct of an Enterprise . . . . . . . . . . . . . 79

3.      Section 1962(d): Plaintiffs Have Failed to Allege that the Outside Directors Conspired to Violate §§ 1962(a) or (c) . . . . . . . . . . . . . . . . . 83

V.      PLAINTIFFS' COMMON LAW CIVIL CONSPIRACY CLAIMS AGAINST THE OUTSIDE DIRECTORS SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

A.      Plaintiffs' Civil Conspiracy Claims are Preempted by SLUSA . . . . . . . . . . . . 88

B.      Plaintiffs' Civil Conspiracy Claims are Preempted by ERISA . . . . . . . . . . . . . 89

C.      Plaintiffs Have Also Failed to Allege the Essential Element of Reliance . . . . . . 90

D.      Plaintiffs Have Failed to Allege Specific Intent by the Outside Directors  . . . . . 92

E.      Plaintiffs Have Failed to Allege the Essential Element of an Agreement or
        Understanding Between Any of the Outside Directors and Any Other Alleged
        Co-Conspirator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

VI.   PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

# INDEX OF AUTHORITIES

## Cases

*ABF Capital Management v. Askin Capital Management,*
   957 F. Supp. 1308 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29-31

*Anderson v. Foundation for Advancement, Educ. and Employment
   of American Indians,* 155 F.3d 500 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 51, 63

*Andrews v. American Nat'l Red Cross, Inc.,*
   176 F. Supp. 2d 673 (W.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

*Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.,*
   941 F.2d 561 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Atkins v. Hibernia Corp.,*
   182 F.3d 320 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 44

*Bald Eagle Area School Dist. v. Keystone Financial, Inc.,*
   189 F.3d 321 (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 46

*Beauford v. Helmsley,*
   740 F. Supp. 201 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Burton v. Ken-Crest Services, Inc.,*
   127 F. Supp. 673 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Castano v. American Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Central Bank of Denver v. First Interstate Bank of Denver,*
   511 U.S. 164 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

*Christopher v. Mobil Oil Corp.,*
   950 F.2d 1209 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Coates v. Heartland Wireless Comms., Inc.,*
   26 F. Supp. 2d 910 (N.D. Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,*
   187 F.3d 229 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 37, 42

*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

*Columbraria v. Pimenta,*
  110 F. Supp.2d 542 (S.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Conley v. Gibson,*
  355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Craighead v. EF Hutton & Co.,*
  899 F.2d 485 (6th Cir, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 26

*Crocker v. FDIC,*
  826 F.2d 350 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69, 83

*Crowe v. Henry,*
  43 F.3d 198 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

*Cyber Media Group, Inc. v. Island Mortgage Network,*
  183 F. Supp.2d 559 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 34, 66, 67

*Danielson v. Burnside-OTT Aviation Training Ctr., Inc.,*
  941 F.2d 1220 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Department of Econ. Dev. v. Arthur Andersen & Co.,*
  924 F. Supp. 449 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

*Dibbs v. Gonsalves,*
  921 F. Supp. 44 (D.P.R. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Elliott v. Foufas,*
  867 F.2d 877 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

*Elmore v. Cone Mills Corp.,*
  23 F.3d 855 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

*Ernst & Young, L.L.P. v. Pacific Mut'l Life Ins. Co.,*
  51 S.W.3d 573 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

*Fine v. American Solar King Corp.,*
  919 F.2d 290 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91, 92

*Florida Dept. of Ins. v. Chase Bank of Texas, N.A.,*
  2001 WL 124591 at * 4 (N.D.Tex. Feb. 9, 2001) . . . . . . . . . . . . . . . . . . . . . . . . 42

*Florida Evergreen Foliage v. E. I. DuPont de Nemours and Co.*,
    165 F. Supp.2d 1345 (S.D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

*FMC Corp. v. Holliday*,
    498 U.S. 52 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Gelardi v. Pertec Comp. Corp.*,
    761 F.2d 1323 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

*Gerstenfeld v. Nitsberg*,
    190 F.R.D. 127 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Goren v. New Vision Int'l, Inc.*,
    156 F.3d 721 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Grider v. Texas Oil & Gas Corp.*,
    868 F.2d 1147 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 35, 47, 52, 84, 86

*Griffin v. GK Intelligent Sys., Inc.*,
    87 F.Supp. 684 (S.D.Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69, 70, 72

*Guidry v. Bank of LaPlace*,
    954 F.2d 278 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91, 92

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 16

*Haase v. Glazner*,
    62 S.W.2d 795 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 61, 62

*Haber v. Brown*,
    774 F. Supp. 877 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
    955 F. Supp. 248 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24, 47

*Heller Financial, Inc. v. Grammco Computer Sales, Inc.*,
    71 F.3d 518 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Hemmings v. Barian*,
    822 F.2d 688 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 61-64, 66

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258, (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

*Howard v. America Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72, 76

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*In re BMC Sec. Lit.*,
    183 F.Supp. 860 (S.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Burzynski*,
    989 F.2d 733 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Ikon Office Solutions*,
    86 F. Supp.2d 481 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 78

*In re Mastercard*,
    132 F. Supp.2d 468 (E.D. La. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re Party City Securities Litig.*,
    147 F. Supp. 2d 282 (D.N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*In re Silicon Graphics Inc.*,
    183 F.2d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 39, 40

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.*,
    935 F.2d 815 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd*,
    113 F.3d 1229 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*Kennilworth Partners v. Cendant Corp.*,
    59 F. Supp. 2d 417 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

*Krear v. Malek*,
    961 F. Supp. 1065 (E.D. Mich. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Landry v. Air Line Pilots Ass'n*,
    901 F.2d 404 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

*Lane v. Peterson*,
    899 F.2d 737 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 47, 48, 50

*Lightening Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69, 70

*Lovelace v. Software Spectrum, Inc.*,
  78 F.3d 1015 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Mathews v. Kidder, Peabody & Co. Inc.*,
  161 F.3d 156 (3rd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 41, 43

*McDonald v. Provident Indem. Life Ins. Co.*,
  60 F.3d 234 (5th Cir. 1995), *cert. denied*,
  516 U.S. 1174 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*McNamara v. Bre-X Minerals, Ltd.*,
  2001 WL 732017 at * 69 (E.D.Tex. March 30, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 90

*Mehling v. New York Life Ins. Co.*,
  163 F. Supp. 502 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

*Melder v. Morris*,
  27 F.3d 1097 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Metz v. United Counties Bancorp*,
  61 F. Supp.2d 364 (D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 37, 39-41

*Mezzonen, S.A. v. Wright*,
  1999 WL 1037866  n.5 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Miranda v. Ponce Federal Bank*,
  948 F.2d 41 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Morin v. Trupin*,
  711 F. Supp. 97 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*,
  981 F.2d 429 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 85, 86

*Old Time Enters., Inc. v. International Coffee*
  Corp., 862 F.2d 1213 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

x

*Ouaknine v. MacFarlane,*
    897 F.2d 75 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 68

*Parker & Parsley Petroleum Co. v. Dresser Indus.,*
    972 F.2d 580 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

*Peavey v. WFAA-TV, Inc.,*
    221 F.3d 158 (5th Cir. 2000)
    *cert. denied* 532 U.S. 1051 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

*Pilot Life v. Dedeaux,*
    481 U.S. 41  (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

*Price v. Pinnacle Brands, Inc.,*
    138 F.3d 602 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

*Pyramid Securities Ltd. v. IB Resolution, Inc.,* 9
    24 F.2d 1114 (D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 68, 70

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,*
    119 F.3d 935 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 52

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 84

*Richman v. W.L. Gore & Assocs., Inc.,*
    881 F. Supp. 895 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

*Ris v. Bedell,*
    699 F. Supp. 429 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rolo v. City Investing Co. Liquidating Trust,*
    155 F.3d 644 (3rd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Rowe v. Marietta Corp.,*
    955 F. Supp. 836 (W.D. Tenn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,*
    435 S.W.2d 854 (Tex. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
    473 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

*Shushany v. Allwaste, Inc.*,
    992 F.2d 517 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

*Shwarz v. United States*,
    234 F.3d 428 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Smith v. Contini*,
    205 F.3d 597 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Solow v. Delit*,
    No. 90 CIV 2273, 1993 WL 322838, *2-3
    (S.D.N.Y.Aug. 13, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 72

*Sommers Drug Stores Co. Employee Profit Sharing Trust*
    *v. Corrigan Enter., Inc.*, 793 F.2d 1456 (5th Cir. 1986),
    *cert. denied*, 479 U.S. 1034 (1987) (*Sommers I*) . . . . . . . . . . . . . . . . . . . . . . . . . . 71

*Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*,
    883 F.2d 345 (5th Cir. 1989) (*Sommers II*) . . . . . . . . . . . . . . . . . . . . . 10, 17-19, 22-24

*St. Paul Mercury Ins. Co. v. Williamson*,
    224 F.3d 425 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Steiner v. Southmark Corp.*,
    734 F.Supp. 269 (N.D.Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69, 77

*Summit Properties, Inc. v. Hoechst Celanese Corp.*,
    214 F.3d 556 (5th Cir. 2000), *cert denied*,
    121 S. Ct. 896 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

*Taffet v. Southern Co.*,
    967 F.2d 1483 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72, 73, 76

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
    975 F.2d 1134 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 61, 84, 86

*Toms v. Pizzo*,
    4 F. Supp. 2d 178 (W.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

*Tuchman v. DSC Comms. Corp.*,
    14 F.3d 1061 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 55

*U.S. ex rel Thompson v. Columbia/HCA Healthcare Corporation*,
125 F.3d 899 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10, 37, 39-41

*U.S. v. Andreen*,
628 F.2d 1236 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16, 26

*U.S. v. Diecidue*,
603 F.2d 535 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 86

*U.S. v. Freeman*,
619 F.2d 1112 (5th  Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

*U.S. v. Furst*,
86 F.2d 558 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37, 57, 85

*U.S. v. Martino*,
648 F.2d 367 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*U.S. v. McIntosh*,
280 F.3d 479 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59, 60

*U.S. v. Myerson*,
18 F.3d 153 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56, 57

*U.S. v. Parise*,
159 F.3d 790 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58, 59

*U.S. v. Pepe*,
747 F.2d 632 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

*U.S. v. Richards*,
204 F.3d 177 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

*U.S. v. Rico Indus., Inc.*,
854 F.2d 710 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37, 43, 52, 57, 85

*U.S. v. Ruggiero*,
726 F.2d 913 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 43, 52, 85

*U.S. v. Todd*,
108 F.3d 1329 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*United Centrifugal Pumps v. Schotz,*
    No. C-89-2291 FMS, 1991 WL 274232, at *3
    (N.D. Cal. June 12, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 43, 46, 86

*United States v. Kloess,*
    251 F.3d 941 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 49

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

*Vild v. Visconsi,*
    956 F.2d 560  (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vulcan Material Co. v. City of Tehuacana,*
    238 F.3d 382 (5th Cir.  2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

*Williams v. WMX Technologies, Inc.,*
    112 F.3d 175 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 24, 26

*Zuckerman v. Foxmeyer Health Corp.,*
    4 F.Supp.2d 618 (N.D.Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 35, 46

**Statutes and Rules**

15 U.S.C. § 78bb(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

15 U.S.C. § 78bb(f)(5)(B)(i)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

15 U.S.C. § 78bb(f)(5)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

18 U.S.C. § 664 . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-34, 36, 40, 42, 44-49, 58, 59, 84

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33, 44, 49, 50, 52, 58, 59, 83

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 36, 44, 49, 50, 52, 58, 59, 83

18 U.S.C. § 1512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58, 59, 83

18 U.S.C. § 1512(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53, 83

18 U.S.C. § 1512(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-34, 36, 53

18 U.S.C. § 1961(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

18 U.S.C. § 1961(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

18 U.S.C. § 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59, 68, 70, 77, 78, 81, 84

18 U.S.C. § 1962(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68, 70, 81, 82, 84

18 U.S.C. § 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 32, 33, 43, 66, 70

18 U.S.C. § 2314 . . . . . . . . . . . . . . . . . . . . . . . . 32-34, 36, 42, 44, 54, 56, 58, 59, 83

29 U.S.C. § 1102(21)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 U.S.C. § 1103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

29 U.S.C. § 1104(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 U.S.C. § 1105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

29 U.S.C. § 1105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. § 1105(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

29 U.S.C. § 1105(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

29 U.S.C. § 1109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 U.S.C. § 1109(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 U.S.C. § 1144(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 26, 27

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . 5-7, 15, 16, 26, 27, 34, 36, 45, 50, 51, 81

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 10, 15, 29, 35, 44

**Other**

S. Rep. No. 98, 104th Cong. 1st Sess. (June 19, 1995),
    [Transfer Binder] Fed. Sec. L. Rep. (C.C.H.) ¶ 85, 629
    at 86, 767 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fifth Circuit Pattern Jury Instructions (Criminal), No. 37 (1979) . . . . . . . . . . . . . . . . . . . . . 85

Devitt & Blackmar, Federal Jury Practice and Instructions
    § 56.20 (Supp. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiffs First Amended Consolidated Complaint[1] purports to assert claims against Defendants Robert A. Belfer, Norman P. Blake, Jr., Ronnie C. Chan, John H. Duncan, Joe H. Foy, Wendy L. Gramm, Robert K. Jaedicke, and Charles L. LeMaistre (collectively the "Outside Directors"), current and former outside directors of Defendant Enron Corp., for common law civil conspiracy and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. In addition, Plaintiffs purport to assert claims against Defendants Blake, Duncan, Jaedicke, and LeMaistre for alleged violations of the Employee Retirement Income Security Act ("ERISA"). No other claims or causes of action are asserted against any of the Outside Directors. Pursuant to Fed. R. Civ. P. 12(b)(6), each of the Outside Directors Defendants, separately and collectively, moves to dismiss Plaintiffs' First Consolidated and Amended Complaint (the "Complaint") for failing to state a claim upon which relief can be granted against them.

## I.    INTRODUCTION

Charged with prosecuting employee benefit plan claims arising out of the collapse of Enron on behalf of current and former Enron employees, the *Tittle* Plaintiffs and their Lead Counsel have produced a bloated, 296 page Consolidated Complaint that spends little time attempting to assert employee benefit claims against those with actual responsibility for the plans. Instead, Plaintiffs spend a great deal of time attempting to ensnare a multitude of other defendants in a series of tenuous claims. Plaintiffs' overreaching begins with their ERISA claims where, not content to limit their claims to the actual fiduciaries to the plans, Plaintiffs attempt to manufacture fiduciary and co-

---

[1]The *Tittle* First Amended Consolidated Complaint is referred to herein as the "Tittle Consolidated Complaint," the "Complaint," or "TCC."

1

fiduciary duties for certain of the Outside Directors. The duties Plaintiffs allege have been created out of whole cloth and are inconsistent with controlling law and the plain language of the plan documents. The Plaintiffs create this theory, moreover, on the basis of conclusory, and wrong, "information and belief" allegations. Such allegations can in no way support a claim for violations of ERISA and must be dismissed against the Outside Directors.

Plaintiffs' penchant for overreaching is also on display in connection with their civil conspiracy and RICO claims. Undeterred by the fact that these claims fall entirely outside the scope of the ERISA claims they were authorized by the Court to assert, Plaintiffs seek to prosecute claims, on behalf of a sub-class of Plaintiffs already represented in the *Newby* action, that Lead Counsel in that action found no basis to assert. These claims were not asserted, importantly, because they are clearly barred and preempted by ERISA and the PSLRA. Moreover, the allegations connecting the Outside Directors to the alleged civil conspiracy and RICO violations are so inadequate and indefinite that they do not begin to state a claim. Plaintiffs have not asserted even the essential elements of these claims, much less given the Outside Directors fair notice of what they must defend.

The Outside Directors have no place in this lawsuit and Plaintiffs have made no real, and certainly no adequate, effort in their pleadings to justify the continued maintenance of their claims against the directors. Accordingly, all claims and causes of action asserted against the Outside Directors should be dismissed.

## II. PLAINTIFFS' ALLEGATIONS GENERALLY FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED AGAINST THE OUTSIDE DIRECTORS

Plaintiffs have sued each of the Outside Directors for a number of serious claims with grave consequences. First, Plaintiffs have accused certain of the Outside Directors of violating ERISA by

breaching a fiduciary duty to certain Enron retirement plans.  Second, Plaintiffs have accused the Outside Directors of racketeering, contending that the Outside Directors committed a variety of felonies prohibited by federal law.  Violations of RICO may result in treble damages and awards of attorneys' fees.  Finally, Plaintiffs have accused the Outside Directors of conspiring to defraud Plaintiffs and members of the putative class.

### A.     Plaintiffs' Group Allegations Deprive the Directors of Fair Notice and Do Not Plead Fraud With Particularity

Plaintiffs, however,  make little attempt to actually allege facts to support a claim that even one of the Outside Directors engaged in any action that would give rise to such liability.  The Outside Directors are mentioned by name at most only nine times in the Complaint (some of the Outside Directors are mentioned even fewer times).   Even these very limited allegations are utterly insufficient to give the Outside Directors fair notice of the claims against them.  The places where the Outside Directors are mentioned are limited to:

*     allegations identifying the parties (TCC at ¶¶ 76- 77, 79- 83);

*     allegations that Blake, LeMaistre, Duncan, and Jaedicke are members of the Compensation and Management Development Committee[2] of the Enron Board of Directors (id. at ¶ 95);

*     allegation that certain of the Outside Directors were signatories to certain registration statements (id. at ¶¶ 211, 216, 226, and 234);

*     reference in a chart that alleges the Outside Directors sold shares of Enron stock (id. at ¶ 665); and

---

[2]Plaintiffs repeatedly refer to this Committee as the "Compensation and Management Committee" in an effort to suggest some managerial role in the ERISA Plans.  In fact, the Committee's correct name is the "Compensation and Management Development Committees" whose purpose it was to create an employee compensation system linked to the enhancement of shareholder value.  See SEC App. Tab 20, pg. 14.

3

      *      three conclusory allegations that certain of the Outside Directors purportedly used the wires and mails to plan an offering of Enron debt securities (*id.* at ¶ 795(a)(xxiv), (xxvi), (xxvii)).

Given the manner in which Plaintiffs have crafted their narrative, the Outside Directors' joinder as defendants seems little more than an afterthought. The Outside Directors are not even mentioned as targets of the RICO count in a one-and-one-half page introduction to this claim (though they are sued for violating RICO).[3] Moreover, many of Plaintiffs' allegations relating to the Outside Directors are actually exculpatory, in that they allege that certain critical information either was not communicated to or was concealed from the Outside Directors by other Defendants.[4]

Unable to allege any significant acts -- much less wrongdoing -- by the Outside Directors, Plaintiffs have resorted instead to creating a collective reference, "the Enron Insider Defendants," and making repeated, generalized allegations of wrongdoing against this group as a whole. As packaged and labeled by Plaintiffs, the "Enron Insider Defendants" are a preposterously broad and unwieldy group of 29 different officers, directors, and employees of at least 10 different Enron related entities, each with widely disparate connections to, participation in, and knowledge of the myriad of facts, circumstances, transactions, and activities placed at issue in Plaintiffs' Complaint. *See* TCC at ¶¶ 64-93. Given the spectacularly broad scope of activities and knowledge attributed to this irregular aggregation, it is a logical certainty that not all members (nor likely any one single member) of this cumbersome "Enron Insider Defendants" group engaged in <u>all</u> of the activities and

---

[3]*See* TCC at ¶ 5.

[4]*See, e.g.*, TCC at ¶ 523 ("V&E did nothing to insure that Enron's Board of Directors was informed that Kopper was assuming control for Fastow."); *id.* ¶ 524 ("Enron's Executive Committee of the Board of Directors had been informed that there would be an <u>outside</u> equity interest in Chewco that was sufficient to avoid consolidation.").

had <u>all</u> of the knowledge indiscriminately ascribed by the Plaintiffs to the "Enron Insider Defendants" *en masse*. Such broad brush allegations are simply inadequate to give the Outside Directors Rule 8 fair notice of the claims against them -- much less to plead with particularity under Rule 9(b) -- and are thus utterly insufficient to state a claim.

**B.   Relevant Pleading Standards Demonstrate Plaintiffs' Allegations are Insufficient**

To avoid dismissal under Rule 12(b)(6), a plaintiff must allege all of the elements of a right to recover against the defendant. *See Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). A plaintiff may not, however, state a claim by merely parroting the terms of the statute or reciting the elements of a claim. *See Vulcan Material Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001) (dismissing claim, noting that "[w]hile it is true that [plaintiff's] complaint faithfully recites the *Shelton* standard, it is equally true that it does no more than that"); *Haber v. Brown*, 774 F. Supp. 877, 879 (S.D.N.Y. 1991) (dismissing ERISA claim that "simply . . . incorporat[ed] terms directly from the statute"). Rather, the pleading requirements imposed by the federal rules are designed to ensure that the defendant receives "fair notice of what the plaintiff's claim is <u>and the grounds upon which it rests</u>." *Conley v. Gibson*, 355 U.S. 41, 48 (1957) (emphasis added). *Accord Vulcan Material Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).

While the court must accept the complaint's well-pleaded <u>factual</u> allegations as true, "conclusory allegations and unwarranted deductions of fact are not admitted as true." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). A plaintiff "must plead specific facts, and not mere conclusory allegations." *Id.* The reason for this rule is simple: "[a]llegations this bare fail to afford Defendant adequate notice of the grounds underlying the claim against it." *Richman v. W.L.*

5

*Gore & Assocs., Inc.*, 881 F. Supp. 895, 905 (S.D.N.Y. 1995).

Rule 12(b)(6) also permits the dismissal of a fraud-based claim when the allegations do not meet the heightened pleading requirements of Rule 9(b). *See Tuchman*, 14 F.3d at 1067-70. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This requires that "the who, what, when, and where must be laid out *before* access to the discovery process is granted." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). Rule 9(b) also requires allegations as to what the defendant obtained as a result of the fraud. *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992). Furthermore, "in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (holding complaint that mentioned individual owners of RICO enterprise in only three paragraphs and that alleged that the individuals "conducted or participated in the conduct of a RICO enterprise through a pattern of racketeering activity" without alleging facts to support the allegation, was insufficient to avoid dismissal). *See Williams*, 112 F.3d at 179.

Facts alleged on information and belief do not satisfy Rule 9(b), unless the facts so alleged are peculiarly within the alleged perpetrator's knowledge and the complaint sets forth a factual basis for such belief. *U.S. ex rel Thompson v. Columbia/HCA Healthcare Corporation*, 125 F.3d 899, 903 (5th Cir. 1998). Although Plaintiffs expressly plead that their entire complaint is based on

"investigation of counsel"[5] -- which is the equivalent of pleading on information and belief,[6] -- and often plead specific paragraphs on information and belief,[7] they make no effort whatsoever to allege the source of their purported belief that the Outside Directors participated in any alleged scheme to defraud.  For this reason alone, their claims against the Outside Directors should be dismissed.

There can be no serious dispute that Rule 9(b) applies in this case.  The Fifth Circuit has held that Rule 9(b)'s particularity requirements apply whenever claims are "grounded in fraud," even when the claims are not typically considered to be fraud claims.  *See Melder*, 27 F.3d at 1100 n.6.  Here, the entire thrust of Plaintiffs' claims is that defendants were engaged in a far-ranging conspiracy "to <u>mislead and defraud</u> Enron employees, shareholders, potential investors, and the securities markets as to, inter alia, the value of Enron's stock."*See TCC* at ¶ 136 (emphasis added).  In addition, as the Fifth Circuit held in *Melder*, the Plaintiffs' "wholesale adoption" of the fraud allegations into all of the Plaintiffs' claims[8] establishes that all of the Plaintiffs' claims are "grounded in fraud" and thus subject to Rule 9(b)'s particularity requirements.  *Id.*  Indeed, the Fifth Circuit has expressly held that Rule 9(b) applies to RICO claims resting on allegations of fraud.  *Williams*, 112 F.3d at 117.

Obviously aware of their own inability to state a claim against the Outside Directors, the

---

[5] *See, e.g.*, TCC at ¶ 1 ("All allegations in this complaint are based upon the investigation of counsel, except the allegations pertaining to the named Plaintiffs, which are made on personal knowledge.").

[6] *See In re Party City Securities Litig.*, 147 F. Supp. 2d 282, 303 & n.11 (D.N.J. 2001) ("Because the investigation of counsel does not confer personal knowledge on Plaintiffs, the allegations are necessarily based upon information and belief.").

[7] *See* TCC at ¶¶ 99, 657, 674, 705.

[8] *See, e.g.*, TCC at ¶ 776, 784, 799, 820.

7

Plaintiffs have resorted to inundating the Court with 296 pages of mind-numbing detail about acts and transactions that -- despite their verbosity -- fail to state a claim. The Fifth Circuit, however, has expressly recognized that verbosity is a frequent refuge of Plaintiffs who cannot state a claim:

> A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail.

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

Even if Rule 9(b) was somehow not held to apply here, Plaintiffs' bare bones -- and nearly nonexistent -- allegations against the Outside Directors are utterly insufficient to give these defendants fair notice of the grounds upon which the claims against them rest. *See* Fed. R. Civ. P. 8. Accordingly, as set forth in more detail below, Plaintiffs' ERISA claims against Defendants Blake, Duncan, Jaedicke, and LeMaistre, as well as Plaintiffs' RICO and civil conspiracy claims against all of the Outside Directors should be dismissed for failing to allege facts on which relief can be granted.[9]

### III. PLAINTIFFS' ERISA CLAIMS AGAINST THE OUTSIDE DIRECTORS SHOULD BE DISMISSED

Plaintiffs' assert claims under ERISA against only four of the Outside Directors: Blake, Duncan, Jaedicke, and LeMaistre, all members of the Compensation and Management Development Committee of the Enron Board of Directors (the "Compensation Committee Defendants"). *See* TCC at ¶¶ 776-783. Plaintiffs assert that the Compensation Committee Defendants are liable under sections 404(a)(1) and 405 of ERISA for allegedly breaching fiduciary and co-fiduciary duties owed

---

[9]In addition to the arguments set forth in this Motion, the Outside Directors adopt the arguments in the motions to dismiss filed by the other defendants in this action to the extent that those arguments are not inconsistent with the arguments set forth herein.

to the Enron Savings Plan, the Enron Employee Stock Ownership Plan ("ESOP"), and the Enron

Cash Balance Plan. *Id.* Plaintiffs, however, have failed to allege facts establishing that the

Compensation Committee Defendants owed any fiduciary duty to any of these plans or their

participants, so Plaintiffs' ERISA claims fail as a matter of law.

### A.    No Allegation of Fiduciary Status Against the Outside Directors

In order to maintain a claim under ERISA for breach of a fiduciary or co-fiduciary duty, a

plaintiff must allege facts establishing that the defendant acted as a fiduciary with respect to the plan

at issue. *See* ERISA § 409(a),[10] 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect

to a plan . . . shall be personally liable . . . .) (emphasis added); ERISA § 405, 29 U.S.C. 1105 ("a

fiduciary with respect to a plan shall be liable for a breach of fiduciary of fiduciary responsibility of

another fiduciary with respect to the same plan in the following circumstances . . . .") (emphasis

added).

As it relates to board members of a corporation maintaining an employee benefit plan, the

Labor Department regulations and the courts agree that

> Members of the board of directors of an employer which maintains an
> employee benefit plan will be fiduciaries only to the extent that they
> have responsibility for the functions described in section 3(21)(A) of
> the Act."

Dept. of Labor, Interpretive Bulletin 75-8, 29 CFR § 2509.75-8, Question D-4 (2002).[11] *Accord*

---

[10]Although Plaintiffs assert their breach of fiduciary duty claim under section 404(a)(1) of
ERISA, the section addressing the standard of care for ERISA fiduciaries, *see* 29 U.S.C. 1104(a)(1),
section 509 of ERISA establishes the scope of liability for breaches of fiduciary duty under ERISA.
*See* 29 U.S.C. 1109.

[11]Federal courts routinely cite to and rely on Labor Departments interpretive bulletins in
determining the scope of ERISA liability and fiduciary responsibilities. *See, e.g., Varity Corp. v.
Howe*, 516 U.S. 489, 511-12 (1996) (citing Interpretive Bulletin 75-8).

*Sommers Drug Stores Co. v. Corrigan Enter., Inc.*, 793 F.2d 1456, 1459-60 (5th Cir. 1986), *cert.*

*denied*, 479 U.S. 1034 (1987) ("a person is a fiduciary [under ERISA] only with respect to those

aspects of the plan over which he exercises authority or control."). Section 3(21)(A) of ERISA

provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, (ii) he
> renders investment advice for a fee or other compensation, direct or
> indirect, with respect to any moneys or other property of such plan,
> or has any authority or responsibility to do so, or (iii) he has any
> discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. § 1102(21)(A).

Plaintiffs can establish the condition precedent to their claims for relief -- the existence of

a fiduciary duty -- only if they allege specific facts establishing that each of the Compensation

Committee Defendants exercised authority or control over the ERISA plans at issue, and thus acted

as fiduciaries for such plans. In the absence of these required allegations, Plaintiffs' claims must be

dismissed under Rule 12(b)(6). *See Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir.

1994) (plaintiff must allege all of the elements of a right to recover against the defendant to avoid

12(b)(6) dismissal). Plaintiffs may not, however, state a claim by merely parroting the terms of the

statute or reciting the elements of a claim. *See Vulcan*, 238 F.3d at 387. Indeed, "in order to avoid

dismissal for a failure to state a claim, a plaintiff must plead specific facts, not mere conclusory

allegations, . . . conclusory allegations and unwarranted deductions of fact are not admitted as true

by a motion to dismiss." *Guidry*, 954 F.2d at 281. Here, Plaintiffs have failed to allege any facts

regarding the Compensation Committee Defendants sufficient to meet this standard as to any of the

Enron plans.

### 1. The Cash Balance Plan

With respect to the Cash Balance Plan, Plaintiffs allege no association whatsoever between the Compensation Committee Defendants and this plan, much less an association that rises to the level of a fiduciary relationship. Indeed, there are only two instances in the Complaint where the Compensation Committee Defendants are even mentioned in connection with the Cash Balance Plan.

The first reference is the heading to Count V to the Complaint. In this <u>heading</u>, which is not even an allegation, Plaintiffs purport to assert a "Claim on Behalf of the Savings Plan, the ESOP and the <u>Cash Balance Plan</u> Against Enron, and the <u>Compensation Committee Defendants</u>." *See* TCC at 260 (emphasis added). In their second reference, Plaintiffs allege that "a[s] detailed in Section XII above, all of the Defendants in this Count breached the fiduciary duties and co-fiduciary duties they owed Plaintiffs, the Savings Plan, the ESOP, the <u>Cash Balance Plan</u>, and their participants and beneficiaries . . . .") *Id.* at ¶ 780. Section XII of the Complaint, however, contains no allegation of fact connecting the Compensation Committee Defendants to the Cash Balance Plan. *See* TCC at ¶¶ 670-725. Neither of these references alleges any fact connecting the Compensation Committee Defendants to the Cash Balance Plan, much less any fact that establishes that any of them occupied a fiduciary role with respect to it, or that any of them exercised any authority over the plan. Accordingly, Plaintiffs ERISA claims, with respect to the Cash Balance Plan, must be dismissed against the Compensation Committee Defendants.

### 2. The ESOP

Plaintiffs' allegations as they relate to the ESOP are equally deficient. The two references described above relating to the Cash Balance Plan also mention the ESOP. *See* TCC at 260 and ¶

11

780.  Just as with the Cash Balance Plan, these references contain no allegation of any fact that connects the Compensation Committee Defendants to the ESOP or that establishes in any way that any of these defendants occupied a fiduciary role with respect to the stock ownership plan by having responsibility for or authority over the plan . *Id.*

At paragraph 95 of the Complaint, Plaintiffs allege that the Compensation Committee Defendants "were fiduciaries with respect to the . . . ESOP," *id.* at ¶ 95, but again offer no allegation of fact to support this bare conclusion.  Finally, at paragraph 777 of the Complaint, Plaintiffs allege that:

> the Compensation Committee Defendants acted as fiduciaries . . . with respect to the Savings Plan and the ESOP <u>to the extent that they were charged with, responsible for, and or otherwise assumed, the duty</u> of selecting, monitoring, and when and if necessary removing other plan fiduciaries . . . ."

*Id.* at 777 (emphasis added).  While this allegation points to a <u>hypothetical</u> circumstance in which the Compensation Committee Defendants might arguably have served as fiduciaries "to the extent that" they had been charged with responsibilities or undertaken actions with respect to the ESOP, Plaintiffs nowhere allege that the Compensation Committee Defendants actually <u>had</u> any such responsibilities or actually <u>took</u> any such actions in connection with the ESOP.

Wholly contingent allegations like this, that depend on entirely theoretical facts, do not state a claim for relief.[12]  This statement (which is more properly characterized as an argument of law than an allegation of fact) suffers from the same infirmity as Plaintiffs' other allegations.  It does not

---

[12]Plaintiffs might as well have alleged that the Compensation Committee Defendants were fiduciaries "<u>to the extent that</u>" they are so named in the plan documents.  They are not, so they were not -- and all of the contingent pleading in the world cannot suffice to make either that allegation (or this one) a valid claim for relief.

allege any present, existing fact to demonstrate that any of the Compensation Committee Defendants assumed a fiduciary role with respect to the ESOP. Accordingly, Plaintiffs ERISA claims against the Compensation Committee Defendants, with respect to the ESOP, must be dismissed.

### 3.     The Savings Plan

Unlike the Cash Balance Plan and the ESOP, the Compensation Committee of the Enron Board of Directors does have a limited, but well defined role and responsibility under the Enron Savings Plan. Section 16.1(a) of the Savings Plan provides that:

> Any amendment proposed to be made by the Plan shall first be considered by the Compensation Committee of the Board of Directors of Enron Corp. which shall have the sole power to approve and recommend to the Board of Directors of Enron Corp that an amendment to the plan be adopted . . . .

*See* Exh. "1" at § 16.1(a).[13] The Compensation Committee's role in considering and recommending amendments to the Savings Plan to the full Board is the sole responsibility and authority assigned to it under the plan documents. *Id.*

Federal courts have consistently held that the amendment of an ERISA plan is not a fiduciary function and that the power to amend does not impose fiduciary responsibilities. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (holding that members of employer board of directors owed no fiduciary duty in connection with amending ERISA plan because "plan sponsors who alter the

---

[13]On a motion to dismiss, "[t]he Court may also consider documents 'integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re BMC Sec. Lit.*, 183 F.Supp. 860, 883 (S.D. Tex. 2001). *Accord Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleading if they are referred to in the plaintiff's complaint and are central to her claim."). Here, Plaintiffs have referenced the Savings Plan document in their complaint, *see* TCC at ¶¶ 672, 676, 677, 696, 750, and 764, and this document, which created and governs the very plan on which Plaintiffs base much of their suit, is integral to Plaintiffs' complaint.

terms of a plan do not fall into the category of fiduciaries. . . . When employers undertake these actions, they do not act as fiduciaries, but are analogous to the settlors of a trust."); *accord Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444-45 (1999) ("Respondents' three fiduciary duty claims are directly foreclosed by *Spink*'s holding that, without exception, 'plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries.'"). Thus, the only role assigned to the Compensation Committee under the Savings Plan is one that, as a matter of law, does not create a fiduciary duty.

Given that the Compensation Committee's only role in connection with the Savings Plan gives rise to <u>no</u> fiduciary duty, Plaintiffs are left to create out of whole cloth a claimed "responsibility" that appears nowhere in, and is <u>inconsistent</u> with, the plan documents. In paragraph 674 of the Complaint, Plaintiffs allege that "<u>[o]n information and belief</u>, selection and monitoring of the [Administrative] Committee members was performed by the Compensation and Management Committee of the Board of Directors ("Compensation Committee"), Lay and others." *See* TCC at ¶ 674 (emphasis added).

This allegation is flatly inconsistent with the express terms of the plan. The Savings Plan documents clearly specify that selection and, if necessary, removal of Administrative Committee members is to be performed by <u>Enron</u>. *See* Exh. "1" at §§13.1 and 13.22 ("The general administration of the Plan shall be vested in the [Administrative] Committee <u>which shall be appointed by Enron Corp</u>. . . . At any time during he term of office, and for any reason, a member of the [Administrative] Committee <u>may be removed by Enron Corp.</u> with or without cause, and <u>Enron Corp. may in their discretion fill any vacancy</u> that may result therefrom."). That responsibility does not rest with the Compensation Committee of the Board of Directors -- whose duties under the

14

Savings Plan are expressly set forth <u>and limited to</u> reviewing and approving plan amendments. Indeed, the Savings Plan documents make clear that "[e]ach fiduciary with respect to the Plan <u>shall have only those specific powers, duties, responsibilities and obligations as are specifically given him under the Plan</u>." *Id.* at ¶ 15.2 (emphasis added).

The unsupported, half-hearted, "information and belief" allegation that the Compensation Committee was responsible for selection and removal of Administrative Committee members directly contradicts the Savings Plan documents. Yet it is the sole reed on which rests Plaintiffs' entire claim that Compensation Committee Defendants occupied a fiduciary role in connection with the Savings Plan.[14] Because this allegation is contrary to the express terms of the Savings Plan document, it should not be accepted as true for purposes of this motion to dismiss and should not prevent the dismissal of Plaintiff's ERISA claims against the Compensation Committee Defendants. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000) ("In reviewing a 12(b)(6) motion . . . [t]he court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court.").

Moreover, even if it was not contradicted by the plain terms of the Savings Plan documents, Plaintiffs' allegation -- stated <u>only</u> "on information and belief" -- could not save its Savings Plan claim from dismissal because Plaintiffs have alleged no facts to support their conclusory allegation.

---

[14]The only other references connecting the Compensation Committee or the Compensation Committee Defendants to the Savings Plan are those discussed above in connection with the Cash Balance Plan and the ESOP. As described above, these references allege no facts demonstrating that any of the Compensation Committee Defendants assumed a fiduciary role with respect to the Savings Plan by having responsibility for or exercising authority over such plan.

15

Plaintiffs' ERISA claims are based on allegations of fraud,[15] as such they are required to meet the pleading standards set forth in Rule 9(b).[16]

Under Rule 9(b), "where allegations are based on information and belief, the complaint must set forth the factual basis for such belief." *Thompson*, 125 F.3d at 903. Here, Plaintiffs have set forth no factual basis for their belief that, contrary to the <u>express</u> terms of the Savings Plan, the Compensation Committee assumed a role (that had otherwise been assigned to Enron) and became responsible for the selection and removal of Administration Committee Members. Instead, Plaintiffs have merely alleged this unsupported conclusion as fact.

Even if Rule 9(b) did not apply to Plaintiffs' ERISA claims, and it does, this allegation would not support a claim against the Compensation Committee Defendants. This is precisely the type of "<u>unwarranted</u> deduction of fact" that the Fifth Circuit has instructed is "not admitted as true by a motion to dismiss." *Guidry*, 954 F.2d at 281 (emphasis added). Accordingly, because Plaintiffs have failed to properly allege any fact showing that any of the Compensation Committee Defendants assumed a fiduciary role with respect to the Savings Plan by having responsibility for or exercising authority over such plan, Plaintiffs ERISA claims against the Compensation Committee Defendants, with respect to the Savings Plan, must be dismissed.

---

[15]Among other things, the Compensation Committee Defendants are alleged to have fraudulently failed to disclose material facts concerning the financial condition of Enron and to have fraudulently concealed acts or omissions of fiduciaries of the Savings Plan. *See* TCC at ¶ 780. Moreover, the overall thrust of Plaintiffs claims, including their ERISA claims, is that the defendants were engaged in a massive conspiracy "<u>to mislead and defraud</u> Enron employees, shareholders, potential investors, and the securities market as to, *inter alia*, the value of Enron's stock." *Id.* at ¶ 136 (emphasis added).

[16]*See* Section II, *supra*, for a discussion of the applicability of Rule 9(b) to the causes of action asserted here by Plaintiffs.

**B.     No Allegation of a Breach of Any Alleged Fiduciary Duty**

Even if the Court were to accept as true Plaintiffs' unsupported "information and belief" allegation that, contrary to the express terms of the plan documents, the Compensation Committee was responsible for the selection and removal of Administration Committee Members, Plaintiffs' ERISA claims against the Compensation Committee Defendants would still fail because Plaintiffs have alleged no breach of any fiduciary duty that could arise from this role.

It is well established that if persons "have no power with respect to a plan other than to appoint the plan administrators and the trustees, then their [ERISA] fiduciary duty extends only to those functions." *Sommers Drug Stores Co. v. Corrigan Enter., Inc.*, 793 F.2d 1456, 1460 (5th Cir. 1986), *cert. denied*, 479 U.S. 1034 (1987) (Sommers I) (emphasis added). *Accord* Dept. of Labor, Interpretive Bulletin 75-8, 29 CFR § 2509.75-8, Question D-4 (2002). Here the only power that the Compensation Committee Defendants are (ineffectually and improperly) alleged to have had with respect to the Savings Plan was the hypothetical power to appoint the plan administrators. *See* TCC at ¶ 674. Even if this unsupported and contradicted allegation is accepted as true, it establishes at most that the Compensation Committee Defendants may have had a very limited fiduciary duty with respect to appointing plan administrators for the Savings Plan. *Sommers I*, 793 F.2d at 1460. As described in more detail below, however, Plaintiffs have alleged no breach of any such duty.[17]

---

[17]Given that Plaintiffs' claims against the Compensation Committee Defendants are secondary in nature (in that the Compensation Committee Defendants are alleged, at most, to have breached their alleged fiduciary duties by failing to appoint an Administrative Committee that would not breach its own fiduciary duties), the Compensation Committee Defendants are not liable unless one or more of the Administrative Committee members actually breached a fiduciary duty. Accordingly, if the Court dismisses Plaintiffs' breach of fiduciary duty against each of the members of the Administrative Committee, the Court should likewise dismiss Plaintiffs' ERISA claims against the Compensation Committee Defendants.

1.      **Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim for Breach of Fiduciary Duty under the Standard Established by the Fifth Circuit in *Sommers***

The Fifth Circuit has directly addressed whether a corporate director, whose only responsibility in connection with a company's ERISA plan is the power to appoint plan fiduciaries, can be liable for an appointee's use and disposition of plan assets. In *Sommers Drug Stores Co. v. Corrigan Enter., Inc.*, 793 F.2d 1456, 1457-60 (5th Cir. 1986), *cert. denied*, 479 U.S. 1034 (1987) (*Sommers I*), the court held that in the exact circumstances alleged here by Plaintiffs, a director can be liable <u>only</u> if she directly caused the allegedly defalcating fiduciary to relinquish its independent discretion, and instead to follow the course prescribed by the director, in taking the complained of action. Plaintiffs have not alleged those facts here.

In *Sommers*, a corporate director was sued for breach of fiduciary duty in connection with a plan fiduciaries' sale of stock. *Id.* The director's sole responsibility in connection with the ERISA plan at issue was to participate in the appointment of plan fiduciaries. *Id.* In rejecting the claim against the defendant director, the Fifth Circuit held that, although members of the board of directors were fiduciaries with respect to selection of the plan's investment trustee, these board members "could be found fiduciaries with respect to the sale of the trust's stock <u>only</u> if they controlled the trustee's decision to sell," and that such control could not be inferred "merely from defendants' power to appoint the trustees." *Id.* at 1460. The Fifth Circuit went on to hold that such control could be found "only if the defendants, either through the use of their positions or otherwise, caused the trustees to relinquish their independent discretion in deciding whether to sell the Trust's stock and to follow instead the course prescribed by the defendants." *Id.*

The holding in *Sommers* is directly applicable to this case and precludes Plaintiffs' breach

of fiduciary duty claims against the Compensation Committee Defendants. Here, just as in *Sommers*, the only claimed connection between the plan and the director defendants is the "information and belief" allegation that the directors were charged with selecting the plan fiduciaries. Here, just as in *Sommers*, Plaintiffs' complaints arise out of the use and disposition of plan assets, in that the entire foundation of Plaintiffs' claims is the investment fiduciaries' alleged misconduct in investing or permitting the investment of plan assets in Enron stock. Finally, here, as in *Sommers*, Plaintiffs' claims fail because they have not and cannot allege that any of the Compensation Committee Defendants caused the plan fiduciaries "to relinquish their independent discretion" in deciding to make and/or permit the complained of investments in Enron stock, and to "follow instead the course prescribed by" the Compensation Committee Defendants. *Id.*

Plaintiffs make no attempt to follow *Sommers* binding requirements. Instead they attempt to circumvent *Sommers* by recharacterizing their claims as ones for alleged failures to appoint qualified fiduciaries or failures to monitor them. *Sommers* makes clear, however, that those allegation do not state a claim for relief when the wrong complained of is the use and disposition of plan assets by a named fiduciary.

Plaintiffs cannot avoid the fact that their claims turn on the activities of fiduciaries other than the Compensation Committee Defendants. Importantly, Plaintiffs do not allege the Compensation Committee Defendants exercised any direct control over those other fiduciaries in connection with the use and disposition of plan assets. Plaintiffs' allegations -- which are devoid of any suggestion of <u>actual</u> control over the fiduciary who made the complained of decisions -- fly in the face of *Sommers*. To accept them would "vitiate the notion of limited responsibility established by . . . ERISA." *Id. Accord Gelardi v. Pertec Comp. Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985)

("Once Pertec appointed the Plan Administrator and gave him control over the Plan, Pertec was no longer a fiduciary because it retained no discretionary control over the disposition of claims.")

### 2. No Allegation of Fiduciary Responsibility in Connection with Actions of Investing Fiduciary

In considering the scope of any fiduciary duty Plaintiffs may seek to impress upon the Compensation Committee Defendants, it is also important to note that the Savings Plan has <u>two</u> named fiduciaries: an Administrative Committee (referred to in the plan documents as the "Committee") and a Trustee (the "Trustee"). Each is charged with two separate and distinct sets of responsibilities. The Committee is charged with general administration of the plan, but not management or investment of plan assets. *See* Exh. "1" at § 13.1 (emphasis added) ("the Committee shall be the Plan 'administrator' and shall be the 'named fiduciary' with respect to the general administration of the Plan (<u>except as to the investment of the assets of the Trust Fund</u>)."). In contrast, the Trustee is charged with management and investment of plan assets. *Id.* at § 14.1(a) (emphasis added) ("The Trustee shall be the 'named fiduciary' <u>with respect to the investment of the Trust Fund's assets</u>. . . . <u>As a means of administering the assets of the Plan</u>, the Company [Enron] has entered into as Trust Agreement with the Trustee.").

The distinction is important because it is the Trustee that invests Plan assets, and Plaintiffs do <u>not</u> allege that the Compensation Committee Defendants had any power to appoint, much less any control over, the Trustee. Instead, Plaintiffs' sole "appointment" allegation is their flawed "information and belief" suggestion concerning the appointment of the Administrative Committee -- which does not invest plan assets. *Id.* at § 14.1. As a result, Plaintiffs have not alleged any facts that would give rise to a claim that the Compensation Committee Defendants had any <u>control over</u> the

Trustee's alleged failure to invest the Plan's assets properly.

That Plaintiffs have alleged no such duty is clear from a review of Paragraph 780 of Plaintiffs' Complaint. That paragraph sets forth the breaches of fiduciary duty that are attributed to the Compensation Committee Defendants. None involves the Administrative Committee, much less the appointment of the members of the committee; instead, each allegation involves and is centered on the Trustee, the fiduciary charged with investing and managing plan assets, as to whom the Compensation Committee is not alleged to have had any power of appointment or control. The duties alleged are:

> (i)    appointing fiduciaries to manage Plan assets who these Defendants knew or should have known were not qualified to loyally and prudently manage the Plans' assets;
>
> (ii)    failing to adequately monitor the investing fiduciaries' investment of Plan assets;
>
> (iii)    failing to adequately monitor the Plans' other fiduciaries' implementation of the terms of the Plans, including but not limited to the investment of Plan assets;
>
> (iv)    failing to disclose to the investing fiduciaries material facts concerning the financial condition of Enron that they knew or should have known were material to loyal and prudent investment decisions concerning the use of Enron stock in the Plans and/or with respect to the implementation of the terms of the Plans; and
>
> (v)    failing to remove fiduciaries who they knew or should have known were not qualified to loyally and prudently manage the Plans' assets.[18]

TCC at ¶ 780 (emphasis added). Plaintiffs have alleged no facts (not even improperly alleged facts)

---

[18]Subsections (vi) through (viii) of paragraph 780 contain allegations related to asserted breaches of an alleged co-fiduciary duty. These are addressed in the following section of this motion.

that establish a fiduciary duty for the Compensation Committee Defendants with respect to the appointment of the Trustee, much less with respect to the Trustee's investment and management of plan assets. Plaintiffs' ERISA claims for breach of fiduciary duty must, therefore, be dismissed even in the unlikely event the Court finds that Plaintiffs have adequately alleged some fiduciary role for the Compensation Committee Defendants in connection with the Administrative Committee.

### C.    No Allegation of a Breach of Any Alleged Co-Fiduciary Duty

A prerequisite for co-fiduciary liability is that the defendant owed a fiduciary duty under the Plan in question. *See* ERISA § 405, 29 U.S.C. § 1105(a) (emphasis added) ("In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of a fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances . . . ."); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 352 (5th Cir. 1989) (*Sommers II*) (defendants held not to be fiduciaries "could not be liable as co-fiduciaries."). As set forth in section II(A)(1), *supra*, Plaintiffs have failed to allege the existence of any fiduciary duty on the part of the Compensation Committee Defendants under any of the plans at issue here. Consequently, these defendants can have no co-fiduciary liability under section 405. Moreover, for the reasons stated below, even if Plaintiffs' contradicted and conclusory, "information and belief," allegation that the Compensation Committee Defendants played a role in connection with the appointment of the Savings Plan administrators is credited, Plaintiffs can still not state a breach of co-fiduciary duty claim against the Compensation Committee Defendants.[19]

---

[19]Given that Plaintiffs' breach of co-fiduciary duty claims against the Compensation Committee Defendants are based upon the Compensation Committee Defendants having known of and participated in, conceded, or failed to take steps to remedy another fiduciary's alleged breach

22

1.    **Plaintiffs Have Failed to Allege Facts Sufficient to State a Claim for Breach of Co-Fiduciary Duty under the Standard Established by the Fifth Circuit in *Sommers***

As explained in section III(B)(1), *supra*, in *Sommers* the Firth Circuit held that the limited fiduciary duty arising out of a corporate director's role in appointing plan fiduciaries does not extend to the use or disposition of plan assets <u>unless</u> the director exercised direct control over the plan fiduciary who is alleged to have made improper use of plan assets. *Sommers I*, 793 F.2d at 1460. (directors "could be found fiduciaries with respect to the sale of the trust's stock <u>only</u> if they controlled the trustee's decision to sell," and such control could not be inferred "merely from defendants' power to appoint the trustees."). In *Sommers II*, the Fifth Circuit went further and held that a director whose sole fiduciary relationship with an ERISA plan is his involvement in appointing plan fiduciaries, and who exercises no direct control over a plan fiduciary alleged to have made improper use of plan assets, can also have no <u>co-fiduciary</u> liability in connection with the defalcating fiduciary's alleged breach. *Sommers II*, 883 F.2d at 352.

As the Fifth Circuit explained, in these circumstances, because a director has no fiduciary duty in connection with the alleged improper use and disposition of plan assets "any 'participation in an act or omission of another fiduciary' or 'knowledge of a breach by another fiduciary' would be irrelevant." *Id.* (quoting ERISA § 405, 29 U.S.C. § 1105, co-fiduciary liability provisions). Because Plaintiffs' have not alleged that any Compensation Committee Defendant exercised direct control over any Enron plan fiduciary in connection with the complained of actions, as is required

---

of duty, the Compensation Committee Defendants can have no ERISA liability unless the one or more of the plan fiduciaries is properly alleged to have breached such a duty. Accordingly, if the Court dismisses Plaintiffs' breach of fiduciary duty claims against each of the other alleged plan fiduciaries, the Court should likewise dismiss Plaintiffs' ERISA claims against the Compensation Committee Defendants.

23

to establish a co-fiduciary claim under *Sommers*, Plaintiffs' breach of a co-fiduciary claims against

the Compensation Committee Defendants must be dismissed.

> **2.    No Allegation of Knowledge of a Breach of Duty by an Alleged Co-Fiduciary**

Plaintiffs' allegations in support of their claim against the Compensation Committee

Defendants under section 405 of ERISA consist entirely of a group allegation that Enron Corp. and

each of the Compensation Committee Defendants breached an alleged co-fiduciary duty by:

> (i)    knowingly participating in the <u>investing fiduciaries'</u> breaches
> by accepting the benefits of those breaches, both personally and on
> behalf of the Company, knowing of those breaches;
>
> (ii)   knowingly undertaking to conceal acts and omissions of <u>those
> fiduciaries</u>, knowing they constituted fiduciary breaches; and
>
> (iii)  failing to remedy <u>those fiduciaries'</u> breaches, having
> knowledge of them.

TCC at ¶ 780.  These allegations simply recite, without factual support, the elements of section 405.

*Compare id. with* 29 U.S.C. § 1105(a)(1) and (3).  As such they are facially inadequate to state a

claim.  *See Vulcan Material Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir.  2001)

(dismissing claim that merely "faithfully recites" the relevant standard but "does no more than that");

*Haber v. Brown*, 774 F. Supp. 877, 879 (S.D.N.Y. 1991) (dismissing ERISA claim that "simply . .

. incorporat[ed] terms directly from the statute").

Moreover, the thrust of Plaintiffs' complaints, as they regard the actual fiduciaries to the

plans, is that the investment fiduciaries allegedly continued to invest and/or permit the investment

of plan assets in Enron stock when they knew, should have known or should have investigated

allegations that Enron stock was overvalued.   Any claim that the Compensation Committee

24

defendants are liable for the breach of a co-fiduciary duty based on that allegation[20] must allege that each of these defendants was aware that Enron stock was overvalued. Nowhere in their Complaint do Plaintiffs allege that any of the Compensation Committee Defendants had such knowledge.

While each of the Compensation Committee Defendants is alleged to have signed various Enron Corp. registration statements incorporating financial statements that were later restated, *see* TCC at ¶¶ 211, 216, 226, and 234, Plaintiffs do not allege that any of the Compensation Committee Defendants knew at the time of their issuance or at any relevant time thereafter that these financial statements were inaccurate. Likewise, while each of the Compensation Committee Defendants is alleged to have sold shares of Enron Corp. during the class period, *see* TCC at ¶ 655, Plaintiffs allege no suspicious circumstances regarding the Compensation Committee Defendants sales and the amounts sold by these defendants rebut any argument that the sales could support an inference of scienter.[21] Indeed, many of the Plaintiffs' allegations against the Compensation Committee Defendants Directors are actually exculpatory, in that they allege that certain critical information either was not communicated to or was concealed from the Outside Directors by other Defendants.[22]

---

[20]As Plaintiffs acknowledge by their pleadings, an essential element of their breach of co-fiduciary duty claim is that each of the Compensation Committee Defendants had knowledge of a fiduciary's breach. *See* TCC at ¶ 780; *see also* 29 U.S.C. 1105(a)(1) and (3).

[21]The Compensation Committee Defendants incorporate by reference herein Section II(B) of their Motion to Dismiss, filed in the companion *Newby* matter, relating to sales of Enron shares by the Outside Directors.

[22]*See, e.g.*, First Amended and Consolidated Complaint ¶ 523 ("V&E did nothing to insure that Enron's Board of Directors was informed that Kopper was assuming control for Fastow."); *id.* ¶ 524 ("Enron's Executive Committee of the Board of Directors had been informed that there would be an outside equity interest in Chewco that was sufficient to avoid consolidation.").

25

The only references in Plaintiffs' Complaint that allege, however inadequately, that the Compensation Committee Defendants knew of the alleged fraudulent overvaluation of Enron stock are Plaintiffs' collective references to the combined knowledge and activities of the "Enron Insider Defendants." As discussed in Section II, *supra*, these unspecific, shotgun allegations are wholly inadequate to give the Compensation Committee Defendants fair notice. *See, e.g., Coates v. Heartland Wireless Comms., Inc.*, 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) ("Plaintiffs must properly plead wrongdoing and scienter as to each individual defendant . . . .").

In sum, the Compensation Committee Defendants and this Court are left to guess at what possible set of facts could establish co-fiduciary liability for these defendants. This manner of pleading is plainly inadequate to state a claim for which relief can be granted. The pleading requirements imposed by the federal rules are designed to ensure that the defendant receives "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 48. "More is required from the complaint than legal conclusions masquerading as factual conclusions." *Vulcan*, 238 F.3d at 387. Plaintiffs here substitute legal conclusions for facts. Their claims should, therefore, be dismissed.

The inadequacy of Plaintiffs' allegations regarding the Compensation Committee Defendants is all the more acute in light of the requirements of Rule 9(b).[23] Although Plaintiffs allege in conclusory fashion that the Compensation Committee Defendants fraudulently participated in and attempted to conceal the breaches of fiduciary duty of others, Plaintiffs do not allege the necessary "who, what, when, where, and how" of these allegations. *Thompson*, 125 F.3d 903. Accordingly,

---

[23]Because Plaintiffs' claims sound in fraud, Rule 9(b) applies. *See* Part II and note 12, *supra*.

The only references in Plaintiffs' Complaint that allege, however inadequately, that the Compensation Committee Defendants knew of the alleged fraudulent overvaluation of Enron stock are Plaintiffs' collective references to the combined knowledge and activities of the "Enron Insider Defendants." As discussed in Section II, *supra*, these unspecific, shotgun allegations are wholly inadequate to give the Compensation Committee Defendants fair notice. *See, e.g., Coates v. Heartland Wireless Comms., Inc.*, 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) ("Plaintiffs must properly plead wrongdoing and scienter as to each individual defendant . . . .").

In sum, the Compensation Committee Defendants and this Court are left to guess at what possible set of facts could establish co-fiduciary liability for these defendants. This manner of pleading is plainly inadequate to state a claim for which relief can be granted. The pleading requirements imposed by the federal rules are designed to ensure that the defendant receives "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 48. "More is required from the complaint than legal conclusions masquerading as factual conclusions." *Vulcan*, 238 F.3d at 387. Plaintiffs here substitute legal conclusions for facts. Their claims should, therefore, be dismissed.

The inadequacy of Plaintiffs' allegations regarding the Compensation Committee Defendants is all the more acute in light of the requirements of Rule 9(b).[23] Although Plaintiffs allege in conclusory fashion that the Compensation Committee Defendants fraudulently participated in and attempted to conceal the breaches of fiduciary duty of others, Plaintiffs do not allege the necessary "who, what, when, where, and how" of these allegations. *Thompson*, 125 F.3d 903. Accordingly,

---

[23]Because Plaintiffs' claims sound in fraud, Rule 9(b) applies. *See* Section II and note 12, *supra*.

because Plaintiffs' allegations of breach of a co-fiduciary fail to state any factual basis on which relief can be granted against the Compensation Committee Defendants, these claims should be dismissed.

## IV.  PLAINTIFFS' RICO CLAIMS AGAINST THE OUTSIDE DIRECTORS SHOULD BE DISMISSED

Plaintiffs also purport to assert a variety of RICO claims against the Outside Directors.  In doing so, Plaintiffs ignore the absolute bar against their claims imposed by the Private Securities Litigation Reform Act amendments to RICO, as well as the requirements of fair notice and particularity embodied in Rules 8 and 9(b).

Section 1964 provides a civil remedy for violations of RICO, stating that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . ." 18 U.S.C. § 1964.  Plaintiffs have alleged violations of subsections (a), (c), and (d) of § 1962.  To state a claim under any of these subsections, the plaintiff must allege:

> (1)      a *person* who engages in

> (2)      a *pattern of racketeering activity*

> (3)      connected to the acquisition, establishment, conduct, or control of an *enterprise*.

*Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995) (emphasis).  In addition, a civil RICO plaintiff must satisfy two additional elements -- injury and causation.  *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998).  Even if these elements are met, Plaintiffs still must meet the remaining substantive requirements of subsections (a), (c), and (d).  *See Crowe*, 43 F.3d at 203.  The Fifth Circuit has "reduced those subsections to their simplest terms to mean that:

> (a)      a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;

* * *

    (c)     a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and

    (d)     a person cannot conspire to violate subsections (a), (b), or (c)."

*Crowe*, 43 F.3d at 203.

      Plaintiffs have utterly failed to plead these elements against the Outside Directors -- much less to plead them in a manner that satisfies the Rule 8 requirement of fair notice and the Rule 9(b) requirement of particularity. *See* Part II, *supra*. Enforcement of these pleading requirements is of critical importance with respect to RICO claims, given that "[c]ivil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir. 1991). Specifically, "[t]he very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees." *Id.* Far from satisfying the pleading requirements of fair notice and particularity, Plaintiffs' RICO claims against the Outside Directors appear to be an afterthought. Plaintiffs do not even <u>mention</u> the Outside Directors as targets of the RICO claim in their introduction to the complaint. TCC at ¶ 5. Nor do Plaintiffs make any allegations against the Outside Directors in the remainder of the complaint that would support a RICO claim, as is set forth in more detail below.

      But before analyzing Plaintiffs' utter inability to plead a RICO claim, the Outside Directors will first establish that a complete legal bar requires dismissal of Plaintiffs' RICO claim: the PSLRA's amendment to RICO, which bars all RICO claims based on conduct actionable as securities fraud.

A.    **Plaintiffs' RICO Claims Are Barred by the PSLRA**

1.    **The PSLRA Amendment to RICO Expressly Bars RICO Claims Based on Conduct Actionable as Securities Fraud**

In 1995, Congress enacted § 107 of the PSLRA, which amended RICO to prohibit the assertion of RICO claims based on conduct that would have been actionable as securities fraud:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, <u>except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.</u>

18 U.S.C. § 1964(c) (emphasis added). The legislative history of § 107 makes clear Congress' intent to remove not only securities fraud per se as a predicate act under RICO, but also *any* predicate acts, such as mail or wire fraud, "if such offenses are based on conduct that would have been actionable as securities fraud." *ABF Capital Management v. Askin Capital Management*, 957 F. Supp. 1308, 1319 (S.D.N.Y. 1997) (quoting S. Rep. No. 98, 104th Cong. 1st Sess. (June 19, 1995), [1995 Transfer Binder] Fed. Sec. L. Rep. (C.C.H.) ¶ 85,629 at 86,767). The sponsors of the PSLRA believed that prohibiting RICO claims based on conduct that would also be actionable under the securities laws was necessary to protect the securities law reforms enacted under the PSLRA. *Krear v. Malek*, 961 F. Supp. 1065, 1075-76 & n. 16 (E.D. Mich. 1997).[24]

Without exception, courts have given the PSLRA's amendment of § 1964(c) an expansive interpretation in order to effectuate its goal of "completely eliminating the so-called treble damage

---

[24]The Outside Directors also incorporate, as if set forth in full, the arguments supporting dismissal under the PSLRA made in Defendant Rebecca Mark-Jusbasche's 12(b)(6) Motion to Dismiss All Claims Asserted Against Her ("Mark-Jusbasche Brief").

blunderbuss of RICO in securities fraud cases." *Bald Eagle Area School Dist. v. Keystone Financial, Inc.*, 189 F.3d 321, 327-28 (3rd Cir. 1999) (quotations omitted). To this end, the PSLRA bars any RICO claim based on alleged "fraud in connection with the purchase or sale of securities," including any conduct taken to further or conceal the alleged fraud. *Bald Eagle Area School Dist.*, 189 F.3d at 330 (quotations omitted). The PSLRA bars RICO claims based on such conduct even if the RICO plaintiffs do not themselves assert claims under the securities laws. *See, e.g., Burton v. Ken-Crest Services, Inc.*, 127 F. Supp. 2d 673 (E.D. Pa. 2001). Indeed, the PSLRA bar applies even if the RICO plaintiffs are themselves unable to assert claims under the securities laws. *Howard v. America Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (holding plaintiffs' RICO claims based on allegations that AOL fraudulently misrepresented revenues and profits, used improper accounting practices, and illegally sold stock at a profit were barred by the PSLRA, even though plaintiffs themselves lacked standing to bring securities fraud claims); *Florida Evergreen Foliage v. E. I. DuPont de Nemours and Co.*, 165 F. Supp. 2d 1345, 1357 (S.D. Fla. 2001) (rejecting argument that PSLRA bar applies only if securities fraud claims could be brought by the RICO plaintiffs themselves).

The PSLRA also bars RICO claims based on allegations, like those made by Plaintiffs in this case, that they were induced to "hold" Enron stock, where the Defendants' alleged conduct allegedly caused both the purchase and retention of the stock. *See ABF Capital Management v. Askin Capital Management*, 957 F. Supp. 1308, 1319 (S.D.N.Y. 1997); *Mezzonen, S.A. v. Wright*, 1999 WL 1037866 n.5 (S.D.N.Y. 1999) ("[W]here the *same* fraud induces both the purchase and the retention of the security, the purchaser may sue under [Securities and Exchange Act] section 10(b) and Rule 10b-5.").

The PSLRA bar of RICO claims is so broad that *in every one* of the 11 published cases in

which the PSLRA bar was an issue, the bar was found to apply and the RICO claim was dismissed.[25]

### 2. Plaintiffs RICO Claims Are Thinly Veiled Securities Fraud Claims Barred by the PSLRA

Plaintiffs' RICO claims in this case are based on conduct that would be actionable under the securities laws and are therefore barred by the plain language of the PSLRA amendment to RICO. Plaintiffs' RICO claims are based on Plaintiffs' allegation that certain Defendants carried out a "massive scheme to mislead and defraud Enron employees, shareholders, potential investors, <u>and the securities market as to, *inter alia*, the value of Enron's securities</u>." TCC at ¶ 136 (emphasis added). Plaintiffs allege certain Defendants carried out this scheme by using "Off-Balance-Sheet-Partnerships" and other Special Purpose Entities to artificially enhance Enron's profits and to hide its debts. TCC Parts at V-(E), ( F). Plaintiffs also allege that certain Defendants filed materially false statements with the SEC and made fraudulent statements regarding Enron's financial situation to the securities markets and directly to Enron employees in an effort to convince them that Enron stock was a good investment. TCC at Parts V-(B) and (C). Plaintiffs further allege that Enron's financial statements from December 31, 1997 through June 30, 2001 were "materially false and misleading and violated GAAP and SEC regulations." TCC at Part V-(G). Plaintiffs also contend

---

[25]*See Columbraria v. Pimenta*, 110 F. Supp.2d 542, 548 (S.D. Tex. 2000); *Howard v. America Online, Inc.*, 208 F.3d 741, 749-50 (9th Cir. 2000); *Bald Eagle Area School Dist. v. Keystone Financial, Inc.*, 189 F.3d 321, 329-30 (3rd Cir. 1999); *Cyber Media Group, Inc. v. Island Mortgage Network*, 183 F. Supp.2d 559, 579 (E.D.N.Y. 2002); *Burton v. Ken-Crest Services, Inc.*, 127 F. Supp. 2d 673, 675-77 (E.D. Pa. 2001); *Florida Evergreen Foliage v. E. I. DuPont de Nemours and Co.*, 165 F. Supp. 2d 1345, 1356-59 (S.D. Fla. 2001); *In re Ikon Office Solutions*, 86 F. Supp. 2d 481, 484-87 (E.D. Pa. 2000); *Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 370-71 (D.N.J. 1999); *Krear v. Malek*, 961 F. Supp. 1065, 1072-78 (E.D. Mich. 1997); *ABF Capital Management v. Askin Capital Management*, 957 F. Supp. 1308, 1318-22 (S.D.N.Y. 1997); *Rowe v. Marietta Corp.*, 955 F. Supp. 836, 844-48 (W.D. Tenn. 1997). These cases do not include RICO actions that were filed prior to the effective date of the PSLRA and thus were not subject to the PSLRA bar. *See, e.g., Mathews v. Kidder, Peabody & Co. Inc.*, 161 F.3d 156 (3rd Cir. 1998).

that by fraudulently inflating the value of Enron stock, the Enron Insider Defendants, with the help

of Arthur Andersen, Vinson & Elkins, and the Investment Banker Defendants, were able to "loot"

Enron by selling Enron stock at inflated prices and paying themselves large bonuses:

> [T]he Enron Insider Defendants had, as their ultimate objective in
> conducting the affairs of Enron and related enterprises, their own
> personal enrichment above all else.  To accomplish this objective,
> they utilized every device possible to make Enron look successful to
> the public and to Enron's employees, while they looted the company
> at every opportunity.

TCC at ¶ 157.  Finally, Plaintiffs allege that Defendants injured Plaintiffs and the members of the

proposed class because Defendants purportedly "induced Enron's 24,000 employees to invest in and

retain Enron stock in their retirement plans."  TCC at ¶ 3.

The securities fraud claims asserted in *Newby* are based on the very same allegedly fraudulent

scheme to inflate the value of Enron stock, using the same Special Purpose Entities, the same

allegedly false financial statements, the same allegedly false reports to the SEC, and the same alleged

fraudulent misrepresentations to the securities market and to Enron's employees.  *See* Mark-

Jusbasche Brief at V.A.2.  In fact, the *Tittle* plaintiffs are expressly alleged to be a part of the *Newby*

securities class action:  "Plaintiffs bring this action [the *Newby* case] on behalf of all persons who

purchased Enron securities including . . . Enron employees who purchased Enron stock individually

or for their 401(k) retirement plans during the Class Period."  NCC at ¶ 986 (emphasis added).  *See*

*also* NCC at ¶  4 (class allegation concerning losses by "public investors -- [such as] Enron

employees who purchased Enron stock for their 401(k) retirement accounts").  Furthermore, both

the *Newby* Complaint and the Consolidated Complaint in this case repeatedly liken Defendants'

alleged scheme to fraudulently inflate the value of Enron's stock to a "pyramid" or "Ponzi" scheme.

*Compare* NCC at ¶ 18 (alleging Enron was "Ponzi scheme") *with* TCC at ¶ 3 (referring to scheme to "prop[] up [Enron's] pyramid"). Finally, Plaintiffs in this case expressly contend that each of the four predicate acts alleged in support of their RICO claims was undertaken to further Defendants' alleged pyramid scheme. *See* TCC at ¶ 791 (alleged violation of § 664); TCC at ¶ 795 (alleged violation of § 1341 and 1343); TCC at ¶ 796(a) (alleged violation of § 2314); TCC at ¶ 796 (alleged violation of § 1512(b)(2)). *See generally* Mark-Jusbasche brief at V.A.2 (incorporated herein by reference).

Plaintiffs' RICO claims are inescapably based on conduct that is "actionable" as securities fraud; a lawsuit, the *Newby* case, has <u>actually</u> been filed on behalf of these Plaintiffs alleging securities fraud claims based on the alleged conduct made the basis of <u>this</u> suit. Plainly, the conduct relied on by Plaintiffs is asserted, in *Newby*, to be "actionable as fraud in the purchase of securities." 18 U.S.C. § 1964(c). Accordingly, no matter how the claim is labeled, its assertion as a RICO claim is barred by the PSLRA as a matter of law. *See generally* Mark-Jusbasche Br. at V.A.3, 4. Plaintiffs' RICO claims must therefore be dismissed.

### B.    Plaintiffs Have Not Adequately Alleged a Pattern of Racketeering Activity

Plaintiffs' RICO claims should also be dismissed because Plaintiffs have failed to allege that the Outside Directors engaged in a "pattern of racketeering activity." Under RICO, a "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering. 18 U.S.C. § 1961(5). This element has been construed to require a showing of "two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *H.J. Inc. v.*

*Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Heller Financial, Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 524-25 (5th Cir. 1996)). The "pattern of racketeering" element thus includes three parts: (1) "racketeering activity," (2) relationship, and (3) continuity. Of critical importance, Plaintiffs must allege that <u>each</u> of the Outside Directors engaged in a pattern of racketeering. *See Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). Because Plaintiffs do not and cannot properly allege all -- or even some -- of the elements of a pattern of racketeering activity with respect to <u>each</u> of the Outside Directors, <u>individually</u>, their claims against every one of them must be dismissed.

### 1.    Plaintiffs Have Failed to Allege Adequately "Racketeering Activity"

Plaintiffs purport to allege violations of the following statutes as "racketeering activity": 18 U.S.C. § 664 (embezzlement of plan assets); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. 1512(b)(2) (obstruction of justice); and 18 U.S.C. § 2314 (interstate transportation offenses). Plaintiffs also allege that the Defendants committed predicate acts by aiding and abetting or conspiring to commit violations of these provisions. Nevertheless, Plaintiffs fail to adequately plead that the Outside Directors committed any predicate acts. First, as previously explained, Plaintiffs cannot plead a claim under RICO as a matter of law, because their RICO claims are based upon a purported fraud in the sale or purchase of securities, which is expressly excluded from the scope of RICO. *See* 18 U.S.C. § 1964(c).

Second, because all of the predicate acts purportedly pleaded against the Outside Directors are based on fraud,[26] Rule 9(b) requires that they be pleaded with particularity as to <u>each</u> defendant.

---

[26]*See U.S. v. Andreen*, 628 F.2d 1236, 1241 (9th Cir. 1980) (holding that "embezzlement" under § 664 encompasses the ***fraudulent*** appropriation of the property of another by one in lawful possession thereof" and that "[t]he act to be criminal must be willful, which means an act done with

*See Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). A complaint does not allege a pattern of racketeering if it "simply treats all the defendants as one; such 'lumping together' of defendants is clearly insufficient to state a RICO claim . . . ." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998). Furthermore, Plaintiffs' attempt to satisfy the RICO pleading requirements by simply mouthing a laundry list of predicate acts does not suffice. *See Toms v. Pizzo*, 4 F. Supp. 2d 178, 183 (W.D.N.Y. 1998). Likewise insufficient are "[b]oilerplate allegations which essentially restate the elements of a claim, without any factual support for each element." *Id.* *See Goren*, 156 F.3d at 730.

Despite this clear authority, Plaintiffs make no effort to plead, with specificity, the particular facts establishing that Charles LeMaistre (or any other director of Enron) committed a predicate, racketeering act. Nor do they allege specifically the facts establishing that John Duncan (or any other director) participated in a pattern of racketeering activity.

Rule 9(b) requires more than global allegations like those made by Plaintiffs. Individuals should not be stigmatized as "racketeers" on a whim -- particularly when, in doing so, Plaintiffs utterly disregard their obligation to plead the facts supporting their "in terrorem" claim with particularity. Where, as here, the plaintiff fails to properly allege all elements of a predicate act which could serve as the basis of a pattern of racketeering activity, dismissal of the plaintiff's RICO claim under Rule 12(b)(6) is proper. *See Atkins v. Hibernia Corp.*, 182 F.3d 320, 326 (5th Cir. 1999)

---

a *fraudulent intent* or a bad purpose or an evil motive"); *U.S. v. Richards*, 204 F.3d 177, 207 n.13 (5th Cir. 2000) (mail fraud and wire fraud require showing of scheme to defraud); *U.S. v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (requiring proof of fraudulent intent for claims under 18 U.S.C. § 2314). *See also* 18 U.S.C. § 1512(b)(2) (essentially precluding person from committing fraud on court by inducing any person to withhold or destroy evidence with the intent of impairing its use in an official legal proceeding).

(affirming dismissal of RICO claim under Rule 12(b)(6) where plaintiffs failed to allege all elements of mail fraud); *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1118-19 (D.C. 1991) (affirming dismissal of plaintiffs' RICO claims where plaintiffs failed to plead elements of mail fraud and obstruction of justice under § 1503).

As set forth in more detail in this section, Plaintiffs' allegations here are wholly inadequate to allege that the Outside Directors engaged in predicate acts for the following reasons:

* Although all of Plaintiffs' claimed predicate acts require scienter, Plaintiffs have failed to plead that <u>any</u> Outside Director acted with intent.

* Although Plaintiffs' claimed predicate acts require proof of a wrongful taking of money or property in which the Plaintiff has an ownership interest, Plaintiffs have not pleaded that such a taking occurred.

* Plaintiffs have not adequately pleaded other critical elements required to state a claim for each of their predicate acts.

* The Fifth Circuit has also held squarely that aiding and abetting and conspiracy are not cognizable predicate acts under RICO, so Plaintiffs' RICO claim fails on that basis as well.

a.    **Plaintiffs Have Not Alleged any Predicate Act Because They Have Failed to Plead that the Outside Directors Acted with Scienter**

Scienter is an element of all of the predicate acts alleged by Plaintiffs.[27]  Although scienter may be averred generally under Rule 9(b), conclusory allegations that defendants possessed fraudulent intent are nevertheless insufficient. *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  Rather, "[t]o plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Tuchman*, 14 F.3d at 1068.[28]  Furthermore, "Plaintiffs must properly plead wrongdoing and scienter as to each <u>individual</u> defendant . . . ." *Coates v. Heartland Wireless Comms., Inc.*, 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) (emphasis added).

Plaintiffs, however, make nearly all of their attempted scienter allegations collectively, with

---

[27]*See U.S. v. Richards*, 204 F.3d 177, 207 (5th Cir. 2000) (holding wire fraud requires proof of intent to harm, which may be established by intent to defraud for personal gain); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) (holding that § 1343 and § 2314 require proof of scienter); *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 431 n. 93 (5th Cir. 1990) ("Scienter is an essential element of a § 664 violation."); *U.S. v. Todd*, 108 F.3d 1329, 1330 (11th Cir. 1997) (§ 664 requires proof of "specific intent to deprive the plan of its funds"); *U.S. v. Rico Indus., Inc.*, 854 F.2d 710, 712 (5th Cir. 1988) (mail fraud requires proof of "the specific intent to commit fraud"); *U.S. v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (§ 2314 requires proof of fraudulent intent); 18 U.S.C. § 1512(b)(2) (requiring that defendants act to induce a person to withhold evidence from an official proceeding or to alter, destroy, or conceal evidence with intent to impair its integrity or availability for an official proceeding).  *See also* footnote 31, *infra*.

[28]Although *Melder* and *Tuchman* were securities fraud cases, their analysis of the adequacy of scienter pleadings has been applied in the RICO context. *See, e.g., Republic of Panama*, 119 F.3d at 949 (dismissing RICO claims where plaintiff's "factual allegations do not give rise to a strong inference that these defendants possessed the requisite factual intent" for alleged predicate acts of wire fraud under § 1343 and transportation of stolen property under § 2314) (citations and quotations omitted); *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 131 (S.D.N.Y. 1999) (holding that plaintiff was required but failed to allege facts supporting a "strong inference of fraudulent intent" to establish mail and wire fraud as RICO predicate acts); *Morin v. Trupin*, 711 F. Supp. 97, 110 (S.D.N.Y. 1989) (holding plaintiffs must plead facts giving rise to strong inference of scienter in RICO case).

respect to the "Compensation Committee" or "Defendants" or the "Enron Insider Defendants." Such collective pleading is improper. It fails to give any of the Outside Directors fair notice of the purported basis for the claims against each of them. Enforcement of this rule is particularly important where, as here, collective references like "Defendants" and "Enron Insider Defendants" encompass at least 29 differently situated persons with widely varying access to information and different involvement in the transactions at issue. *See* TCC at ¶¶ 64-93 (defining "Enron Insider Defendants" as 29 different Defendants holding different positions at different Enron entities or on the Enron Board). Plaintiffs' claims should be dismissed for that reason alone.

Plaintiffs' only allegations that directly address the Outside Directors' knowledge or scienter actually negate it. For example, Plaintiffs plead that the restatements of certain Enron financial statements indicate that the Board must have concluded that the original statements contained an error "discovered subsequent to their issuance." TCC at ¶ 422. Furthermore, Plaintiffs allege that the Board of Directors was not told of certain matters -- such as that Kopper was assuming control of Chewco for Fastow -- that Plaintiffs contend were critically important. TCC at ¶ 523. Finally, Plaintiffs contend that the Board was given allegedly misleading information. For example, they allege that "Enron's Executive Committee of the Board of Directors had been informed that there would be an outside equity interest in Chewco that was sufficient to avoid consolidation." TCC at ¶ 524 (emphasis added).

In any event, neither Plaintiffs' collective allegation of scienter, nor their (very few) allegations against specific individuals are sufficient to plead an "inference of fraud" to support scienter. A plaintiff can plead "an inference of fraud" to support scienter in two ways: (1) by alleging facts that show a defendant's motive to commit fraud, and (2) by identifying conscious

behavior by the defendant. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018-19 (5th Cir. 1996); *Tuchman*, 14 F.3d at 1069.

First, Plaintiffs do not plead a "motive" to defraud sufficient to give rise to an inference of scienter. Although Plaintiffs make the following allegations that appear to be designed to allege "motive," all are insufficient as a matter of law:

(1)    Plaintiffs allege generally that the Enron Insider Defendants acted "to maintain an artificially high stock price," TCC at ¶ 791, and that "[w]hile publicly promoting employees to purchase and/or retain Enron stock, these defendants were cashing in on enormous quantities." TCC at ¶ 655.

- Plaintiffs do not allege, however, that any <u>Outside Director</u> was promoting Enron stock to Enron employees. The only allegations on this issue pertain to other defendants. *See* footnote 43, *infra*.

- In any event, allegations that corporate officers or directors acted to "inflate[] the value of their shares and options" are insufficient to give rise to an inference of scienter. *Melder*, 27 F.3d at 1102; *Tuchman*, 14 F.3d at 1068. Indeed "[i]f such an allegation was sufficient to meet a plaintiff's pleading burden, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *In re Party City Securities Litig.*, 147 F. Supp. 2d 282, 314 (D.N.J. 2001) (quotations omitted).

(2)    Plaintiffs allege that the Outside Directors sold shares of Enron stock. TCC at ¶ 76-83. "[A]lthough 'unusual' or 'suspicious' stock sales by corporate insiders may constitute circumstantial evidence of scienter, . . . insider trading is suspicious <u>only</u> when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from the undisclosed inside information." *In re Silicon Graphics Inc.*, 183 F.3d 970, 986 (9th Cir. 1999) (quotations omitted).

- Plaintiffs here make no attempt to allege suspicious circumstances with respect to each of the Outside Directors's sales. In fact, the stock sales of the individual Outside Directors are so inauspicious in timing and amount that they do not give rise to an inference of scienter. *See generally* Newby Motion to Dismiss at Part III.B. (incorporated herein by reference).[29]

---

[29]References to the "Newby Motion to Dismiss" are to the Motion to Dismiss of Defendants Robert A. Belfer, Norman P. Blake, Jr., Ronnie C. Chan, John H. Duncan, Joe H. Foy, Wendy L.

(3)    Plaintiffs allege generally that the Enron Insider Defendants were looting the company by awarding themselves lavish bonuses and unusual and lavish compensation.  TCC at ¶ 157, 658-59.

- Plaintiffs do not, however, name the Outside Directors as among the Defendants who are accused of awarding themselves such bonuses or compensation.  *See, e.g.*, TCC at ¶ 657-59.

- In any event, allegations that corporate officers or directors or directors acted to "increas[e] compensation for themselves" are insufficient to give rise to an inference of scienter.  *Melder*, 27 F.3d at 1102; *Tuchman*, 14 F.3d at 1068.

(4)    Plaintiffs allege generally that the Enron Insider Defendants were purportedly motivated to protect Enron's financial soundness and credit rating: specifically, they allege that the Enron Insider Defendants acted "to save Enron money," "to maintain demand for Enron stock and hence maintain an artificially high stock price,"  TCC at ¶ 791; "to make Enron appear more attractive to employees and investors and to secure better credit ratings to decrease the cost of capital," TCC at ¶ 197; and to protect its credit rating and avoid dilution from the issuance of additional equity, TCC at ¶ 284.

- Fifth Circuit law is clear that allegations that the corporation would benefit from the alleged fraud by "successfully bring[ing] to fruition the offerings" or that the corporation would receive  more for its shares to be issued in an offering are insufficient to give rise to an inference of scienter.  *Melder*, 27 F.3d at 1102.

- Likewise, allegations that the defendant desired to satisfy investors and lenders as to the company's financial soundness or desired to maintain the company's credit rating are an insufficient motive to give rise to an inference of scienter.  *In re Party City Securities Litig.*, 147 F. Supp. 2d 282, 314 (D.N.J. 2001).

Unable to show motive, Plaintiffs' allegations also fall far short of the "more stringent standard" for establishing fraudulent intent: "conscious behavior." *See Tuchman*, 14 F.3d at 1068, 1069.  To satisfy this burden, Plaintiffs must "allege . . . facts that show that [the defendant's] statements were belied by his *actual knowledge* of contradictory facts." *Id.* at 1069.  Conclusory

---

Gramm, Robert K. Jaedicke, Charles A. LeMaistre, John Mendelsohn, Jerome J. Meyer, Paulo Ferraz Pereira, Frank Savage, John Wakeham, Charles E. Walker, and Herbert S. Winokur.

allegations that the defendants "knowingly did this or recklessly did that" are insufficient. *Lovelace*, 78 F.3d at 1019; *Melder*, 27 F.3d at 1102-03. Allegations that the true facts were known by the defendants or recklessly disregarded, or that the defendants, because of their positions, knew or had access to the true facts, are also insufficient. *See Melder*, 27 F.3d at 1103. Plaintiffs must allege that the defendants "knew that their statements . . . were materially false or misleading when made." *Tuchman*, 14 F.3d at 1070 (emphasis added). *See Lovelace*, 78 F.3d at 1020 n.4; *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 524-25 (5th Cir. 1993).

Plaintiffs, with no facts to plead to support their claims that the directors are racketeers, are left to parrot the very allegations found wanting in *Melder* and *Tuchman*. Plaintiffs liberally sprinkle their complaint with conclusory allegations that the "Enron Insider Defendants had "knowledge" or acted "willfully" or "intentionally"[30] -- but such "magic words" do not create an inference of scienter in the absence of allegations of facts that show that each individual Outside Director knew of facts contrary to what he or she said. *See Tuchman*, 14 F.3d at 1069. Plaintiffs' allegations that certain Outside Directors signed various registration statements also do not establish scienter. TCC at ¶ 211,

---

[30] *See, e.g.*, TCC ¶ 791 (alleging embezzled by "intentionally investing and continually reinvesting Plan assets in Enron stock"), ¶ 793 (alleging embezzled by "willfully convert[ing] Plan assets to their own use and/or the use of others within the meaning of Section 664 by intentionally investing and continuously reinvesting Plan assets in Enron stock that the Enron Insider Defendants knew was worth a mere fraction of the price the Enron Insider Defendants cause the Plans to pay for it. In this way, the Enron Insider Defendants intentionally 'misused or abused' the property entrusted to them for their own gain and profit and/or knowingly used the Plans' assets, "); TCC ¶ 795 (alleging generally that "[p]laintiffs were an intended target" of the alleged mail and wire fraud and that alleged mail and wire frauds "were intended to further the unlawful scheme and conspiracy alleged herein"); TCC ¶ 796 (alleging generally that "various of the Enron Insider Defendants knowingly, intentionally and corruptly persuaded and attempted to persuade their respective employees with the intent to cause" them to withhold or destroy documents "with the intent to impair" their use in official proceedings); TCC ¶ 796(a) (alleging generally that the Enron Insider Defendants transmitted money in interstate commerce "knowing the same to have been converted or taken by fraud").

216, 226, 234. *See Kennilworth Partners v. Cendant Corp.*, 59 F. Supp. 2d 417, 428 (D.N.J. 1999) ("Plaintiffs also allege scienter to the CUC directors because they signed the Cendant Form 10-K and had access to facts in their roles as directors of officers of Cendant or CUC. These arguments have also been rejected by the Courts.");[31] *Coates*, 26 F.Supp. 2d at 916 (holding allegations that defendants signed prospectus insufficient to plead scienter).

Finally, Plaintiffs do not allege that any individual Outside Director knew that any purported misrepresentations were false at the time they were made. Rather, Plaintiffs' attempts in this regard consist largely of allegations that <u>Enron</u> has implicitly recognized that certain of its prior financial statements were misleading by recently restating them.[32] But "[t]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, <u>without more, does not establish scienter</u>. The party must know that it is publishing materially false information or . . . must be severely reckless." *Fine v. American Solar King Corp.*, 919 F.2d 290, 297 (5th Cir. 1990) (emphasis added). *See*

---

[31]Since Plaintiffs do not allege they purchased any securities pursuant to these registration statements -- which were offerings of debt, <u>not</u> stock -- the relevance of this allegation is not apparent.

[32]*See* TCC at ¶ 208 ("In fact, these 1998 results were materially false and misleading due to defendants' failure to cause Enron to include $107 million in losses of partnerships which had improperly not been consolidated. Defendants have now caused Enron to admit it was improper not to include these losses and restate its results."); TCC at ¶ 220 ("[D]efendants have now caused Enron to admit that its 1999 results were false and misleading since it failed to include $153 million in losses from its JEDI and Chewco partnerships and $95 million in losses from a subsidiary (LJM Cayman LP ("LJM1")), which, pursuant to GAAP, should have been consolidated into Enron's financial statements . . . ."); TCC at ¶ 258 ("[T]he Blockbuster deal was based on wildly inaccurate projections, the contract was not 'a great transaction for Enron broadband services,' and Enron had to reverse profits it had booked on the Blockbuster deal."); TCC at ¶ 280 (November 8, 2001 Form 8-K allegedly disclosing that it would restate each of its annual financial statements since the one for the year ending December 31, 1997); TCC at ¶ 422 (alleging that because restatements of prior financial statements were made, rather than a "change in estimate," the financial statements must have been "false and misleading when issued").

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1020-21 (5th Cir. 1996). Even assuming that

restatements constitute an admission that the original financial statements were misleading -- which

the Outside Directors dispute[33] -- nothing in these allegations suggests that each of the Outside

Directors knew <u>at the time the financial statements were originally issued</u> that they contained any

misleading information.

In sum, Plaintiffs have failed to plead -- as to each individual director -- a critical element

of their claimed predicate acts: scienter. Their RICO claims should therefore be dismissed.

> **b.** **Plaintiffs Have Not Alleged any Predicate Act Because They Have Not Alleged an Actionable Taking of Money or Property in Which They Had an Ownership Interest**

With the exception of obstruction of justice, the second element common to Plaintiffs'

claimed predicate acts is the unlawful taking of property or funds belonging to the plaintiff.[34]

Plaintiffs allege that they were deprived of two types of pension benefits: (1) their employee

contributions, *see, e.g.*, TCC at ¶ 159, 792, 794, and (2) Enron's contribution to the pension funds,

*id.* at ¶¶ 792, 794, which include Savings Plan matching contributions, *id.* at ¶ 161; ESOP

contributions, *id.* at 169, Cash Balance Plan, *id.* at ¶¶ 183-86; and phantom stock, *id.* at ¶ 193

---

[33]"A corporation does not <u>admit</u> that previous SEC filings are misleading every time it amends or updates language in new filings." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1020-21 (5th Cir. 1996).

[34]*See U.S. v. Todd*, 108 F.3d 1329, 1330 (11th Cir. 1997) (requiring proof that funds were embezzled "from an employee benefit plan" in order to establish crime of embezzlement under 18 U.S.C. § 664); *United States v. Rico Industries, Inc.*, 854 F.2d 710, 712 (5th Cir.1988) (mail fraud requires proof of scheme to defraud, which "must be aimed at the property rights of the victim"); *U.S. v. Richards*, 204 F.3d 177, 207 n.13 (5th Cir. 2000) (because of similarity in mail and wire fraud statutes, they should be analyzed in same way); 18 U.S.C. § 2314 (requiring proof of either (1) the transmission in interstate commerce of money "stolen, converted or taken by fraud," or (2) "a scheme or artifice to defraud [a] person . . . of money or property having a value of $5,000 or more . . . ."). *See* Part IV.B.1.c.(i)(B), *infra* (discussing "taking" requirement under § 664).

(referred to collectively in this section as "Enron contributions").[35]  With respect to both types of

pension benefits, however, Plaintiffs have failed to allege that the Outside Directors engaged in any

wrongful "taking" actionable as a predicate act under RICO.

### i.    Employee Contributions

With respect to the employee contributions, Plaintiffs can allege no actionable taking.

Theoretically, Plaintiffs could attempt to allege that their employee contributions were taken in one

of two ways:  either (1) they were defrauded out of them -- that is, they were tricked into spending

the contributions on what they contend was overvalued Enron stock -- or (2) they were taken by the

Outside Directors for their own benefit.  Plaintiffs do not allege anywhere in the complaint that the

Outside Directors wrongfully took Plaintiffs' employee contributions for their own benefit.

Plaintiffs attempt only -- and  inadequately -- to allege the former theory.  They do so by claiming,

in conclusory fashion, that they were defrauded into spending the employee contribution portion of

their pension plans on allegedly overvalued stock.  *See, e.g.*, TCC at ¶¶ 792, 794, 795.  Such

allegations are the essence of a securities fraud claim.  The PSLRA, as demonstrated earlier, forbids

their use as a predicate act to support a RICO claim. *See* 18 U.S.C. § 1964(c). *See generally* Part

IV.A., *supra.*

---

[35]To the extent that Plaintiffs are attempting to argue that they were deprived of their
employee contributions and vested ESOP shares because they failed to sell their Enron stock,
Plaintiffs' own allegations fail to allege adequately that the Outside Directors engaged in such a
taking:  "Like Savings Plan participants and beneficiaries, ESOP participants were encouraged to
hold their over-valued Enron stock by the conduct of Andersen, Lay, Skilling, Causey and the other
individuals named in this Complaint." TCC at ¶ 177.  Although Plaintiffs spend numerous other
paragraphs of their Complaint accusing other defendants of purportedly encouraging Plaintiffs to buy
and hold Enron stock, the Plaintiffs make no allegation that the Outside Directors did so. *See, e.g.*,
footnote 43, *infra*.

### ii.     Enron Contributions

Nor can Plaintiffs allege an actionable taking with respect to Enron's contributions to the pension funds.  Plaintiffs make no attempt to argue that they had an ownership right in the these Enron contributions that was capable of being wrongfully taken.  In fact, Plaintiffs' complaint with respect to these plans is not that the Outside Directors took Plaintiffs' Enron stock after it was given to them; rather it is that Plaintiffs would, in hindsight, have preferred that Enron made its contributions in cash instead of Enron stock.  *See, e.g.*, TCC at ¶¶ 190, 194.   The law is clear, however, that a company has no obligation to make pension fund contributions at all, or to make them in any particular form.  *See Smith v. Contini*, 205 F.3d 597, 602 (3d Cir. 2000) ("ERISA neither mandates the creation of pension plans nor in general dictates the benefits to be afforded once a plan is created.").  Indeed, the plan documents relied on by Plaintiffs make clear that Enron had "the right and power to discontinue contributions to the Plan, terminate the Plan . . . at any time . . . ."  Exh. "1" at ¶ 17.1.   Accordingly, Plaintiffs have not alleged that they had any ownership interest in the Enron contributions that was capable of being wrongfully taken in violation of 18 U.S.C. §§ 664, 1341, 1343, or 2314.[36]

---

[36]Indeed, Plaintiffs recognize as much with respect to their claim under § 2314 for purported interstate transportation offenses:  they allege only that the employee contributions were converted, and do not allege that the Enron contributions were wrongfully taken.  *See* TCC at ¶ 796(a) (alleging that "the Savings Plan participants' contributions to the Savings Plan and/or investment in stock offered by the Savings Plan" were "converted or taken by fraud").

     c.     **Plaintiffs Have Not Alleged a Predicate Act Because They Have Failed to Plead Other Critical Elements Specific to Each of Their Claimed Predicate Acts[37]**

     i.     **Plaintiffs Have Failed to Plead that the Outside Directors Committed Embezzlement in Violation of § 664**

Plaintiffs first allege collectively that the "Enron Insider Defendants" violated 18 U.S.C. § 664. Section 664 subjects to criminal liability "[a]ny person who embezzles, steals or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, . . . or other assets of any . . . employee pension benefit plan . . . ." 18 U.S.C. § 664. The elements of a § 664 violation are that the defendant (1) embezzled, (2) funds, (3) from an employee benefit plan, (4) with specific intent to deprive the plan of its funds. *U.S. v. Todd*, 108 F.3d 1329, 1330 (11th Cir. 1997).[38]

Plaintiffs have not alleged that any of the Outside Directors "embezzled" any funds under § 664 -- indeed, Plaintiffs do not even mention any of the Outside Directors by name, but merely make this allegation vaguely and collectively against the "Enron Insider Defendants." *See* TCC at ¶¶ 790-794. These collective, generalized allegations are wholly insufficient to comport with the requirements of fair notice and Rule 9(b). *See Williams v. WMX Technologies, Inc.*, 112 F.3d 175,

---

[37]With the exception of obstruction of justice, all of Plaintiffs' alleged predicate acts require proof of a misrepresentation or fraudulent scheme. *See* footnote Part IV.B.1.C.i., ii., iv., *infra*. To the extent that the Court finds that no such misrepresentation or fraudulent scheme has been pleaded in this case, *see* Certain Defendants' Joint Brief Relating to Enron's Disclosures, then Plaintiffs' RICO claims likewise fail. *See Atkins v. Hibernia Corp.*, 182 F.3d 320, 326 (5th Cir. 1999) (affirming dismissal of RICO claim under Rule 12(b)(6) based on failure to plead a misrepresentation).

[38]As previously established, Plaintiffs were required but failed to allege under § 664 that the Outside Directors acted with scienter and that they had any cognizable ownership interest in any funds or property supposedly taken. *See* Part IV.B.1.a.

179 (5th Cir. 1997); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) ("lumping together of defendants is clearly insufficient to state a RICO claim"); *Haber v. Brown*, 774 F. Supp. 877, 879 (S.D.N.Y. 1991) (dismissing ERISA claim for failure to plead facts supporting existence of fiduciary duty).

In any event, even the collective, generalized allegations fail to plead scienter, *see* Part IV.B.1.a., *supra*, as well as the element of "embezzlement" under § 664, because they fail to allege (1) that the Outside Directors ever had custody or control of the funds, or (2) that the Outside Directors appropriated such funds within the meaning of § 664.

**(A)    Plaintiffs Have Failed to Plead that the Outside Directors Had Custody of Plan Funds**

Plaintiffs have not pled that the Outside Directors violated § 664 because they have not pled a critical element of embezzlement: that the Outside Directors had custody or lawful possession of any Plan funds. *See Landry v. Air Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 431 (5th Cir. 1990) ("custody" or "lawful possession" are elements of § 664). "Absent a showing that [defendant], in his own right, was entrusted with Plan assets and had the power to authorize or control payments to himself or others, [plaintiff] has not pleaded a violation of section 664." *United Centrifugal Pumps v. Schotz*, No. C-89-2291 FMS, 1991 WL 274232, at *3 (N.D. Cal. June 12, 1991).

In this case, Plaintiffs have not even attempted to allege that the Outside Directors were in custody or lawful possession of Plan assets. This is likely because both the law and the Plan documents required the Plans' assets to be held by specified trustees (not the Outside Directors) who had exclusive authority to manage and control the assets. *See* 29 U.S.C. § 1103(a); TCC at ¶ 63; Exh. "1" at ¶¶ 3.7, 14. Plaintiffs do not allege that any of the Outside Directors served as the Plans'

trustee, named fiduciaries, or investment managers. Indeed, Plaintiffs do not allege that the Outside Directors had any duty with respect to the Trustee or the investment and management of Plan assets. *See* Part III.B.2, *supra*. As previously explained, Plaintiffs have not even adequately alleged that any of the Outside Directors were fiduciaries of the Plans. *See* Part III.A., *supra*. At the very most, Plaintiffs have attempted to plead only that the four Outside Directors on the Compensation Committee -- LeMaistre, Blake, Duncan and Jaedicke, TCC at ¶ 95 -- had a hypothetical responsibility to appoint the Plan administrators.[39] *See* Part III.A., *supra*. Simply put, Plaintiffs nowhere allege that any of the Outside Directors had custody or lawful possession of Plan assets at any time. Plaintiffs have thus failed to plead a violation of § 664.

> **(B)    Plaintiffs Have Failed to Allege that Any of the Outside Directors "Embezzled" any Plan Assets**

Plaintiffs have likewise failed to allege that any of the Outside Directors "embezzled" any Plan assets. The embezzlement prong may be established by a showing that the defendant (1) used the property in an "unauthorized manner" or "fraudulently appropriat[ed]" the property, or (2) committed "intentional breaches of special fiduciary duties imposed by other statutes or the instruments governing the trust." *See Landry*, 901 F.2d at 431. Plaintiffs have alleged neither.

> **(1)    Plaintiffs Have Failed to Allege any Unauthorized Use or Fraudulent Appropriation**

First, the Plaintiffs do not allege that the Outside Directors "used" in an "unauthorized manner" or "fraudulently appropriated" anything. They allege no taking or misrepresentations at all by the Outside Directors. Plaintiffs' sole allegation regarding any "communication" by the Outside

---

[39]Indeed, Plaintiffs do not even attempt to plead that the Outside Directors who were not on the Compensation Committee were fiduciaries.

Directors is their signature on certain registration statements in connection with Enron debt offerings. Plaintiffs do not allege, however, that they purchased such debt offerings or relied on the registration statements, or even that the Outside Directors knew of any alleged misrepresentations in the registration statements.

Even the generalized, collective allegations against the Enron Insider Defendants fail to allege adequately that any of these defendants "used in an unauthorized manner" or "fraudulently appropriated" Plan assets. Plaintiffs contend that the Plan assets were embezzled, converted, or abstracted by the Enron Insider Defendants by "investing and continuously reinvesting Plan assets in Enron stock, whether at the direction of participants induced to invest their salary deductions in company stock or involving the investment of company matching contributions in company stock." TCC at ¶ 792. *See* TCC at ¶¶ 791, 793, 794. An allegation that Plan assets were transferred from one form of investment to another does not constitute a legally cognizable taking under § 664. *See Mehling v. New York Life Ins. Co.*, 163 F. Supp. 2d 502, 508 (E.D. Pa. 2001). In *Mehling*, the defendants moved 401(k) pension plan assets into the company's own institutional mutual funds, purportedly for corporate and personal gain. *Id.* The *Mehling* court dismissed the plaintiffs' RICO claims alleging violations of § 664 on the ground that Plaintiffs had not alleged embezzlement, holding that their allegation that "Plan assets were *transferred* from one form of investment to another," was insufficient to plead "that there was a 'taking' or 'appropriation.'"[40] *Id.*

_____

[40]Furthermore, the alleged investments in Enron stock cannot be embezzlement or conversion because they were made with the authorization of the parties involved. *See, e.g.*, *United Centrifugal Pumps v. Schotz*, No. C-89-2291 FMS, 1991 WL 274232, at *3 (N.D. Cal. June 12, 1991). *Cf. Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir. 1991). *See generally* Defendant Kenneth L. Lay's Motion to Dismiss and Brief in Support at V.C.1.a. ("Lay Brief"). Here, Plaintiffs affirmatively allege that Enron stock investments were made in the Plans either at the ***request*** of Plaintiff participants themselves or pursuant to the matching contributions

Plaintiffs' collective, generalized allegation that "the Enron Insider Defendants knew [Enron stock] was worth a mere fraction of the price the Enron Insider Defendants caused the Plans to pay for it" is likewise insufficient to state a claim that the Enron Insider Defendants violated § 664. TCC at ¶ 793. *See* TCC at ¶ 791. Plaintiffs do not allege that the Outside Directors knew that Enron stock was purportedly overvalued. In any event, the investment of Plan funds in overvalued stock does not constitute embezzlement or conversion. *See Ris v. Bedell*, 699 F. Supp. 429, 435-36 (S.D.N.Y. 1988) (holding that accountants' overvaluation of loan collateral, on which plan relied in making loan, did not constitute embezzlement despite allegation that accountants should have known of overvaluation); *U.S. v. Furst*, 886 F.2d 558, 566 (3d Cir. 1989) (holding there was no violation of § 664 where "purchase price did not exceed the price at which stock in those companies then traded").

> ### (2)    Plaintiffs Have Failed to Allege an Intentional Breach of a Special Fiduciary Duty

Plaintiffs have likewise failed to allege that the Outside Directors embezzled Plan assets by intentionally breaching any special fiduciary duties imposed by other regulatory statutes or governing instruments. *See Landry*, 901 F.2d at 431. As previously established, Plaintiffs have failed to allege adequately any intent by the Outside Directors, *see* Part IV.B.1.a., *supra*, much less any intent to breach any fiduciary duties imposed by regulatory statutes or Plan instruments. Furthermore, Plaintiffs have not adequately alleged -- because they cannot -- that the Outside Directors who were

---

prescribed by the Plan. TCC at ¶¶ 793-94. While Plaintiffs may contend they should not have been allowed to select Enron stock as an investment, or accept it as compensation, *see, e.g.*, TCC at ¶¶ 9, 163, 177, 694 and 794, they make no allegation that the Outside Directors made representations that induced them to purchase Enron stock.

on the Compensation Committee owed any fiduciary duties with respect to the Plans. *See* Part III.A., *supra*. At most, the only duty that the Outside Directors on the Compensation Committee are even <u>arguably</u> alleged to have owed was a duty to select the Plan Administrators. *See id.* There is absolutely no allegation that any such duty extended to the investment of Plan assets. *See* Part III.A., B.2., *supra*. Certainly, Plaintiffs have made no allegations whatsoever suggesting that the Outside Directors who were not on the Compensation Committee owed any fiduciary duties to the Plan. Accordingly, Plaintiffs have failed to plead that any Outside Director embezzled Plan assets by breaching any special fiduciary duties imposed by regulatory statutes or governing instruments.

> ### ii.   Plaintiffs Have Failed to Plead that the Outside Directors Committed Mail or Wire Fraud in Violation of § 1341 and § 1343

Plaintiffs also allege collectively that the Enron Insider Defendants engaged in a variety of uses of the mail and wires in violation the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. Recognizing that "[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice," courts are especially cautious when the predicate acts alleged to support a RICO claim are mail and wire fraud. *Anderson v. Foundation for Advancement, Educ. and Employment of American Indians*, 155 F.3d 500, 506 (4th Cir. 1998). Such caution is particularly appropriate where, as here, Plaintiffs purport to rely on "hundreds, if not thousands, or separate instances of" uses of the wires and mails that either are not alleged at all or, when alleged, wholly fail to meet the requirements of fair notice and Rule 9(b).

The elements of mail and wire fraud are :

> (1)    a scheme to defraud by means of false or fraudulent representation,
>
> (2)    interstate or intrastate use of the mails to execute the scheme,

(3)    the use of the mails by the defendant connected with the scheme, and

(4)    actual injury to the plaintiff.

*In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993). *See U.S. v. Richards*, 204 F.3d 177, 207 & n.

13 (5th Cir. 2000) ("[Because] the mail fraud and wire fraud statues use the same relevant language,

[courts] analyze them the same way."). Mail fraud and wire fraud also require proof of a specific

intent to defraud. *Richards*, 204 F.2d at 207; *Rico Indus.*, 854 F.2d at 712. Finally, a plaintiff must

also show how the allegedly fraudulent mail and wire communications "could plausibly be viewed

as advancing a scheme to defraud." *Pyramid Securities Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114,

1118 (D.C. 1991). As previously established, Plaintiffs have wholly failed to allege that the Outside

Directors had an intent to defraud, or that Plaintiffs were deprived of property or funds in which they

had a legal right. *See* Parts IV.B.1.a., b.ii.; Part IV.E.2., *infra*. As set forth below, Plaintiffs'

pleadings are likewise insufficient to establish other critical elements of mail and wire fraud against

the Outside Directors.

To plead their mail and wire fraud claims, Plaintiffs were required but failed to plead with

the particularity the content of the mail or wire fraud communications, how the communications

furthered the allegedly fraudulent scheme, and the alleged role of each defendant in the purportedly

fraudulent scheme. *See, e.g., Old Time Enters., Inc. v. International Coffee* Corp., 862 F.2d 1213,

1218 (5th Cir. 1992) (dismissing mail and wire fraud claims that did "not indicate the content of the

communications or how or in what manner they violated these statutes"); *Goren v. New Vision, Int'l,*

*Inc.*, 156 F.3d 721, 729-30 (7th Cir. 1998) (dismissing mail and wire fraud-based RICO claims

because the complaint "lump[ed] together" the defendants and "failed[ed] to specify the time, place

and content of any of the misrepresentations attributed to these defendants"); *Beauford v. Helmsley*,

740 F. Supp. 201, 213 (S.D.N.Y. 1990) (dismissing RICO claim that "fails to particularize the roles of the [thirty-five] individual defendants in perpetrating the allegedly fraudulent acts, as is required by Rule 9(b)," since "[t]his sort of general pleading does not give each defendant 'fair notice' of what he or she did to further the fraudulent scheme").

In this case, the only mail and wire fraud allegations that actually name the Outside Directors are similarly insufficient to plead mail and wire fraud violations.  Plaintiffs allege only that certain of the Outside Directors used the wires and mails to plan the offering or sale of Enron debt securities.  *See* TCC ¶ 795(a)(xxiv), (xxvi), (xxvii).  Plaintiffs make no attempt to allege the content of these communications or how they violated the mail and wire fraud statutes.  Nor do they explain how they were in furtherance of any purported scheme to defraud.  Indeed, on their face, the allegations pertaining to the registration statement do not appear to be in furtherance of any scheme to defraud Plaintiffs: the registration statements pertained to offerings of Enron debt securities, *see id.* and Plaintiffs do not allege that they were attempting to purchase any Enron debt securities.  Accordingly, Plaintiffs' allegations as to the alleged use of wires and mails in connection with debt offerings are insufficient to state a claim against the Outside Directors for violations of the mail and wire fraud statutes.

Nor are Plaintiffs' general, collectivized allegations of mail and wire fraud sufficient to state a claim.  In their laundry list of purported mail and wire fraud allegations, Plaintiffs refer generically to "oral and written representations made by the Enron Insider Defendants."  TCC at ¶ 795.  Plaintiffs then list (or in some cases, generally characterize without detail) any conceivable communication that might have been transmitted by mail or wire, claiming that each "constitutes a separate violation of 18 U.S.C. § 1341 or 18 U.S.C. § 1343."  TCC at ¶¶ 795, 795(a)(i)-(xlix).

For purposes of showing predicate acts of wire or mail fraud, Plaintiffs apparently attribute each of these "hundreds, if not thousands of separate instances" of mail and wire fraud to one or more unspecified members of a collection of over 1,850 Defendants (nearly 1,800 of whom are simply identified as "Andersen Does"). TCC at ¶¶ 130, 795, and 795(a)(i)-(xlviii). In most instances, Plaintiffs completely fail to specify the content of the mail or wire fraud communications, how the communications furthered the allegedly fraudulent scheme, the alleged role of each defendant in the purportedly fraudulent scheme, and what they obtained thereby. TCC at ¶ 795(a)(i)-(xlix). To the extent that Plaintiffs attempt to point to allegations elsewhere in the Consolidated Complaint, it will not aid their case against the Outside Directors: the allegations pertaining to alleged communications in connection with employee meetings, employee newsletters, Enron partnerships or financing vehicles make no mention of the Outside Directors. *See, e.g.,* TCC at ¶¶ 240-63, 284-397. Plaintiffs, in short, do not even <u>attempt</u> to meet their pleading burden against the Outside Directors as it pertains to mail and wire fraud. The Plaintiffs thus fail to state a claim for mail and wire fraud as RICO predicate acts.

### iii. Plaintiffs Have Failed to Plead that the Outside Directors Committed Obstruction of Justice in Violation of § 1512(b)(2)

Plaintiffs generally allege that "various of the Enron Insider Defendants" engaged in obstruction of justice in violation of 18 U.S.C. § 1512(b)(2).[41] *See* TCC at ¶ 796. Plaintiffs allege

---

[41]Section 1512(b)(2) subjects to criminal liability anyone who "knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to -- (1) cause or induce any person to -- (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; [or] (B) alter destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding . . . ." 18 U.S.C. § 1512(b)(2).

only a bare bones recital of the statutory terms, with no explanation of what each of the Outside Directors purportedly did to obstruct justice.  *See* TCC at ¶ 796.  When Plaintiffs do allege facts to support their obstruction of justice claim, it is clear they are not asserting that the Outside Directors engaged in such conduct.  For example, in the introduction to their complaint, Plaintiffs make clear that the Andersen defendants are the focus of the obstruction of justice claim:

> In an apparent effort to hide its role in the scheme to defraud and the conspiracy, Andersen then destroyed the documents concerning its role in the Enron debacle even after it was on notice that the Securities and Exchange Commission was conducting an investigation into transactions it had helped engineer and that federal subpoenas had and/or would be issued for such documents.

TCC at ¶ 5.  Likewise, when Plaintiffs provide further detail about the alleged obstruction of justice, they make no mention of the Outside Directors, but rather focus exclusively on the alleged destruction of documents by the Andersen-related defendants.  *See* TCC at ¶¶ 457-75.  Because "there is no factual reference whatsoever supporting or explaining these allegations" that "defendants engaged in witness tampering or any other act obstructing justice," plaintiffs have failed adequately to adequately plead obstruction of justice.  *Toms*, 4 F. Supp. at 184.

### iv.    Plaintiffs Have Failed to Plead that the Outside Directors Committed Interstate Transportation Offenses in Violation of § 2314

Plaintiffs also assert as predicate acts that the "Enron Insider Defendants" engaged in interstate transportation offenses under two separate provisions of 18 U.S.C. § 2314.  Plaintiffs fail, however, to state a claim under either provision of § 2314.

**(A)    Plaintiffs Have Failed to Allege that the Outside Directors Committed the Crime of Interstate Transportation of Fraudulently Obtained Property**

Plaintiffs first assert a violation of the first paragraph of § 2314, which forbids the interstate transportation of fraudulently taken property. *See* 18 U.S.C. § 2314; *U.S. v. McIntosh*, 280 F.3d 479, 483 (5th Cir. 2002). The elements of this crime consist of (1) causing the interstate transportation of (2) money, securities, or other property value at $5,000 or more, (3) with knowledge that such items "have been stolen, converted, or taken by fraud." *See McIntosh*, 280 F.3d at 483. Plaintiffs' allegations against the Outside Directors, however, are limited to a general, one-sentence allegation made collectively against the "Enron Insider Defendants," the Accounting Defendants and/or Andersen and certain of the Investment Banking Defendants. TCC at ¶ 796(a). This sentence asserts only that these Defendants

> transmitt[ed] or transfer[ed] in interstate commerce money, of the value of $5,000 or more, knowing the same to have been converted or taken by fraud, consisting of Savings Plan participants' contributions to the Savings Plan and/or investment in stock offered by the Savings Plan.

TCC at ¶ 796(a). Plaintiffs never otherwise mention the Outside Directors. This conclusory statement is wholly inadequate to state a claim against the Outside Directors.

First, while it is unnecessary for Plaintiffs to allege that the Outside Directors transported anything themselves, Plaintiffs nevertheless are required to allege that the Defendants "cause[ed] the interstate transportation." *See U.S. v. McIntosh*, 280 F.3d 479, 483 (5th Cir. 2002) (holding that evidence was sufficient to convict defendant, who solicited out-of-state investors to send money to Texas by fraudulent telephone solicitations for investments in oil and gas wells). Plaintiffs do not, however, allege that any Outside Director caused any Savings Plan participant to transport between

states a contribution to the Savings Plan or investments in stock offered by the Savings Plan. Nor do they allege how each Outside Director might have done so. Plaintiffs simply ignore their obligation to plead the role of each of the Outside Directors in purportedly causing such a transportation.

Second, as previously explained, Plaintiffs have failed to allege adequately that each of the Outside Directors acted with what the Fifth Circuit has characterized as "fraudulent intent" -- that each of the Outside Directors knew that the Savings' Plan participants' contributions or investment in stock offered by the Savings Plan had been converted or taken by fraud. *U.S. v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980). *See McIntosh*, 280 F.3d at 483. *See* Part IV.B.1.a., *supra*.

Finally, as previously explained, Plaintiffs have failed to allege adequately that the Savings' Plan participants contributions or investment in stock offered by the Savings Plan were in fact converted or taken by fraud. *See* Part IV.B.1.b., *supra*.

Because Plaintiffs have failed to allege that each -- or even any -- of the Outside Directors committed the crime of interstate transportation of stolen property, Plaintiffs may not rely on the first paragraph of § 2314 as a RICO predicate offense to support their substantive RICO claims.

      **(B)**      **Plaintiffs Have Failed to Allege that the Outside Directors Committed the Crime of Travel Fraud**

Plaintiffs next assert a violation of the second paragraph of § 2314, which forbids the interstate transportation of persons in the execution of a scheme to defraud. *See* 18 U.S.C. § 2314. The elements of this crime are (1) that the defendant devised a scheme (2) intending to defraud the victim of money or property of a minimum value of $5,000, and (3) that as a result of the scheme, the victim was induced to travel in interstate commerce. *U.S. v. Richards*, 204 F.3d 177, 206 (5th

Cir. 2000) (citing *U.S. v. Myerson*, 18 F.3d 153, 164 (2d Cir. 1994)).  Moreover, "[t]he statute is intended to reach the fraudulent scheme whereby the criminal is the efficient cause of the interstate transportation, . . . and requires the defendant to be a motivating force in the victim's transportation." *Myerson*, 18 F.3d at 164 (citations and quotations omitted).

Plaintiffs have again failed to plead required elements of this claim against the Outside Directors.  Plaintiffs limit their pleading to a general, one-sentence allegation made collectively against the Enron Insider Defendants, the Accounting Defendants and/or Andersen and certain of the Investment Banking Defendants.  TCC at ¶ 796(a).  The sentence asserts only that all of these Defendants (though Plaintiffs do not say how)

> transport[ed], caus[ed] to be transport[ed], or induce[ed] persons (namely, Enron employees) to travel in or be transported in interstate commerce in the execution or concealment of the wrongful scheme alleged herein, by causing Enron employees to travel to Houston, Texas, to attend meetings conducted by the Enron Insider Defendants at which ECSP participants were reassured that their 401(k) funds were safely invested and that they should hold and maintain their investments in Enron stock.  As alleged herein, such meetings were held on May 18, 1999; July 13, 1999; December 1, 1999; February 28, 2000; and October 3, 2000, among other dates.

TCC at ¶ 796(a).  This does not state a claim against the Outside Directors.

First, Plaintiffs make no attempt to allege that each of the Outside Directors devised a scheme to defraud Plaintiffs.  The "scheme" alleged by Plaintiffs involved inducing Enron employees to travel to Houston to attend certain employee meetings.  None of the Outside Directors, however, is alleged to have been involved in, planned, or even <u>aware</u> of those meetings.  To the contrary, Plaintiffs' only allegations on this subject are limited to claims pertaining to <u>other</u> Defendants, namely, Lay, Skilling, Sutton, and Olson.[42]  Allegations about other Defendants do not state a claim

---

[42]*See* TCC at ¶¶ 240 (Lay, Skilling, Olson), ¶ 241 (Lay, Skilling, and "other Enron officers"), ¶¶ 246-47 (alleging Lay and Skilling made statements at May 18, 1999 employee meeting); ¶ 247

that each of the Outside Directors devised a scheme to defraud Plaintiffs.

Second, as previously discussed, Plaintiffs have failed to allege that each of the Outside Directors had an intent to defraud, that there was any purported scheme to defraud in existence, or that the Outside Directors engaged in any taking of property in which Plaintiffs had an ownership right. *See* Parts IV.B.1.a., b.ii., *supra*.

Third, there is simply no allegation that Plaintiffs were induced to travel as a result of anything the Outside Directors did, much less as a result of any purported fraud by the Outside Directors. Plaintiffs thus utterly fail to allege that the Outside Directors were "the efficient cause of the interstate transportation." *Myerson*, 18 F.3d at 164.

Plaintiffs simply have not alleged that each -- or even any -- of the Outside Directors committed the crime of travel fraud. Plaintiffs therefore may not rely on the second paragraph of § 2314 as a RICO predicate offense.

### d.    Aiding and Abetting and Conspiracy Are Not Cognizable Predicate Acts Under § 1961

Fully recognizing that they have not and cannot allege that the Outside Directors engaged in any "racketeering activity," Plaintiffs allege that the Outside Directors "aided and abetted and/or conspired to commit violations" of §§ 664, 1341, 1343, 1512, and 2314. *See, e.g.*, TCC at ¶ 788(a)-(c), (d)(iv), (f)-(l), 789. 790  The Fifth Circuit has squarely rejected this claim. *See U.S. v. Martino*,

---

(alleging Lay and Skilling made statements at July 13, 1999 employee meeting); ¶ 248-50 (alleging Lay, Sutton, and Olson made statements at December 1, 1999 meeting); ¶ 252 (alleging Lay and Skilling made statements at February 28, 2000 meeting); ¶ 257 (alleging Lay made statements at employee meeting held after the second quarter of 2000); ¶ 259-60 (alleging Lay and Skilling made statements at October 3, 2000 employee meeting); ¶ 262 (alleging unspecified "Enron officers" made statements at January 2001 investor meeting attended by employees); ¶ 263 (alleging Lay and Skilling made statements at February 21, 2001 employee meeting).