IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION, | §<br>§<br>§ | MDL 1446 |

| | | |
|---|---|---|
| PAMELA M. TITTLE, on behalf of herself and a class of persons similarly situated, ET AL., | §<br>§<br>§<br>§ | |
| Plaintiffs | § | |
| VS. | §<br>§ | CIVIL ACTION NO. H-01-3913<br>CONSOLIDATED CASES |
| ENRON CORP., an Oregon Corporation, ET AL., | §<br>§<br>§ | |
| Defendants. | § | |

## OPINION AND ORDER CERTIFYING TITTLE CLASSES

The above referenced proposed class action is grounded in the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.* After the Court's dismissal of claims under the Racketeer Influenced and Corrupt Organization Act and Texas common law civil conspiracy and negligence, and the Court's approval of a series of partial settlements,[1] Plaintiffs in *Tittle, et al. v. Enron Corp., et al.* currently allege under ERISA sections 409(a) and 502(a), 29 U.S.C. §§ 1109(a) and

---

[1] The Court has given final approval to settlements with the Administrative Committee Settling Defendants, the Officer and Director Settling Defendants, Arthur Andersen LLP, and David Duncan. Plaintiffs have dismissed their claims against all other former employees of Arthur Andersen, LLP. The Court has recently given preliminary approval to Plaintiffs' settlement with Northern Trust Company.

1132(a)(2), breaches of fiduciary duties relating to two Enron Corporation ERISA plans, the Enron Corporation Savings Plan (401(k)) and the Enron Corporation Employee Stock Ownership Plan (ESOP),[2] against the two remaining Defendants, Jeffrey Skilling and Kenneth Lay.

Pending before the Court is *Tittle* Plaintiffs' motion for class certification (#447) under Federal Rule of Civil Procedure 23(a) and (b).  The motion was heard by the Court on January 12, 2006.

Objections have been filed by Kenneth Lay, but not by Jeffrey Skilling.  Lay states that he "agrees that many of the issues raised by Plaintiffs' four ERISA counts asserted under § 502(a)(2), 29 U.S.C. § 1132(a)(2), can and should be accorded class treatment under Federal Rule of Civil Procedure 23(b)(1)," but argues *inter alia* that "special issues regarding causation and/or damages in each of these ERISA counts will require individualized treatment, thus suggesting that the ERISA claims be maintained as a class action only with respect to those issues suitable for uniform treatment."[3]  #489 at 1.  He also contends that the definitions of

---

[2] Copies of the plans are filed as exhibits 1 and 2 to #459 (Declaration of Steve W. Berman in Support of *Tittle* Plaintiffs' motion for Class Certification).

[3] Lay maintains that "while it is nominally 'plan losses' for which recovery is being sought, those losses can only be calculated by making some kind of analysis of purchases, sales, contributions and losses in individual participant accounts."  #489 at 3 n.5.  He points out as an example the difference between Charles Prestwood's alleged loss of $1,000,000 and Michael McCown's of $15,000.  Lay

the two classes are overly broad and include people who could not have been adversely affected by conduct charged against Defendants or who may even have made a profit selling their stock at some point during the class period. Lay also objects that the classes improperly include the plans themselves in contravention of the statute, section 502, which specifies that only the Secretary of Labor, a participant, beneficiary or fiduciary may bring actions for relief under section 409.

There are three remaining Counts asserting claims for breach of fiduciary duty against Skilling and Lay.  Count I, on behalf of both plans, asserts against the two remaining Defendants, *inter alia*, breach of fiduciary duty for inducing and mandating the acquisition and/or retention of Enron stock by the plans even though Defendants knew Enron's financial status was not accurately reflected in its financial statements; Count III, on behalf of the Savings Plan, against Lay and Skilling, for breach of co-fiduciary duty for enabling other Plan fiduciaries to breach their duties by

---

argues that if the Court finds that it was a fiduciary breach to accept employer contributions in matching stock after a particular date, each participant's loss would vary according to the amount he contributed because the amount of the  match relates to that sum. #489 at 3. He further claims that many participants' claims will require individual evidence about the investment strategy and state of mind of the participant.  Regarding age restrictions on participants seeking to transfer Enron matching stock to another fund in the Savings Plan, Lay insists that damages would be recoverable only to the extent that a participant demonstrates that the restriction actually prevented him from transferring the matching stock to another fund, the time when it would have been effected, and what fund it would have been transferred to.  *Id.* at 6.

failing to diversify the assets in the plans; and Count V, on behalf of both plans, against Enron Director Defendants Lay and Skilling, for breach of fiduciary duty for failing to monitor the investing fiduciaries and failure to disclose to them material facts about Enron's financial situation.   Plaintiffs assert that the plans, and indirectly their participants and beneficiaries, lost hundreds of millions of dollars because of these breaches, and they seek recovery of those monetary losses to the plans.[4]

In light of the court's approval of several partial settlements, Plaintiffs now seek to certify only two of the original four proposed classes, with respect to Counts I, III, and V of Plaintiffs' Second Amended and Consolidated Complaint (#667),[5] pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1),(2), and/or (3), against Defendants Skilling and Lay:

> 1. ERISA claims on behalf of the Savings Plan
> Class, defined as "The Enron Corp. Savings
> Plan ('The Savings Plan' or the '401K Plan')
> and all participants and beneficiaries who

---

[4] Plaintiffs' complaint also seeks equitable relief under § 502(a)(3) in the form of an injunction against Lay and Skilling to enjoin them from further violations of their duties and responsibilities with respect to the two plans, but this relief as to Lay and Skilling is moot now.

[5] Plaintiffs have represented that they have abandoned that part of their Count V claim against Skilling and Lay on behalf of the Cash Balance Plan only because partial settlements have otherwise caused Plaintiffs to decide not to pursue class certification of the Cash Balance Class and the Phantom Stock Class.

held beneficial interest in Enron stock purchased or held by the Savings Plan during the period from January 20, 1998 through December 2, 2001"; and

2. ERISA claims on behalf of the ESOP Class, defined as "The Enron Corp. Employee Stock Ownership Plan (the 'ESOP') and all participants and beneficiaries who held beneficial interest in Enron stock held by the ESOP who are or were participants or beneficiaries of the ESOP during the period from January 20, 1998 through December 2, 2001."

Named defendants and members of Enron's senior management are excluded from both classes.

Currently Plaintiffs name the following plan participants/beneficiaries as potential class representatives for the two classes: Pamela M. Tittle (Savings Plan), Betty Joyce Clark (Savings Plan and ESOP); Steve Lacey (Savings Plan); Thomas O. Padgett (Savings Plan and ESOP); Charlie Prestwood (Savings Plan and ESOP); Catherine Stevens (Savings Plan); Wayne Stevens (Savings Plan); Gary Scott Dreadin (Savings Plan and ESOP); Fannette Perry (Savings Plan and ESOP); Janice Farmer (Savings Plan); John L. Moore (Savings Plan and ESOP); Norman L. Young (Savings Plan and

ESOP); Michael McCown (Savings Plan); Patrick Campbell (Savings Plan); Roy Rinard (Savings Plan), and Roger W. Boyce (ESOP).[6]

### Standing and Breach of Fiduciary Duty Under ERISA

The controlling pleading is Plaintiffs' Second Amended and Consolidated Complaint (#667).  For a detailed discussion of the law of fiduciary and co-fiduciary liability under ERISA, see #635 at 30-178.  Application of that law to Counts I and V is discussed *id.* at 261-81, and to Count III, *id.* at 289-98.

Under ERISA § 3(1), 29 U.S.C. § 1002(21)(A)(iii), "fiduciary" is defined functionally: "a person is a fiduciary to [an ERISA plan] to the extent (I) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  Moreover, "[a] person is a fiduciary only with respect to those portions of a plan over which he exercises discretionary authority or control."  *American Fed'n of Unions Local 102 Health and Welfare Fund v. Equitable Life Assurance Soc'y of the United States*, 841 F.2d 658, 662 (5th Cir. 1988).  A fiduciary may also be formally designated by the plan terms: § 402(a)(2) of ERISA, 29 U.S.C. § 1102(a)(2), defines a "named fiduciary" as "a fiduciary who is named in the plan instrument, or who, pursuant to a procedure

---

[6] With the settlement, dismissal and abandonment of a number of claims, most of Lay's objections to the designated class representatives (#489 at 9-22) are moot.  Those that are not are addressed subsequently.

specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly."[7]

The Second Amended and Consolidated Complaint at 140-155 identifies the fiduciaries of the Savings Plan and the ESOP Plan and the alleged breaches, both fiduciary and co-fiduciary.

ERISA does not expressly delineate the specific duties of a fiduciary, but relies on the common law of trusts, especially overlapping duties of loyalty, diversification of plan assets, adherence to plan documents, and satisfying the prudent man standard. *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 293-94 (5th Cir. 2000), *citing* ERISA § 404(a), 29 U.S.C. § 1104(a)(1). ERISA plan fiduciaries, acting in their capacity as fiduciaries, under 29 U.S.C. § 1104(a)(1)(A)-(D) have (1) a duty of complete loyalty to act solely in interests of the participants and beneficiaries; (2) a duty to act with care, skill, prudence and diligence regarding

---

[7] For example, the Administrative Committee and Northern Trust Company, the Plans' trustee, are named fiduciaries under the Plans. Both Plans provided that Enron Corporation was responsible for appointment of the Administrative Committee and thus had the responsibility and authority to monitor the Administrative Committee Members. The Complaint alleges that the Enron Director Defendants, including Skilling and Lay, "are the natural person who acted on behalf of Enron Corp. in carrying out its selection and monitoring duties under the Savings and ESOP Plans." #667 at 141 ¶ 407. The Savings Plan also made Enron responsible for appointing its Plan Trustee and therefor monitoring that Trustee and the Trustee's monitoring of the prudence of Enron stock as a Plan investment.

investigating and managing the investment of plan assets under the circumstances then prevailing that a prudent man, acting in like capacity and with a single minded devotion to plan participants and beneficiaries, would use; (3) a duty to diversify to minimize loss unless it is clearly prudent not to diversify; and (4) a duty to follow the documents governing the plan to the extent that they are consistent with ERISA.[8]   *Id.*, *In re Enron Corp. Securities, Derivative and "ERISA" Litig.*, 284 F. Supp. 2d 511, 546-49 (S.D. Tex. 2003). "A trustee is held to something stricter than the morals of the marketplace.  Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (N.Y. 1928), *quoted by Pegram v. Herdrich*, 530 U.S. 211, 224-25 (2000), and *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000). While ERISA allows a plan fiduciary to play multiple roles, "ERISA

---

[8] *See, e.g., Herman v. NationsBank Trust Co. (Georgia)*, 126 F.3d 1354, 1368 (11th Cir. 1997)(fiduciary was "obligated to determine whether the plan provisions . . . were contrary to ERISA" and to fulfill his duties to act prudently and solely in the interests of the plan participants), *cert. denied*, 525 U.S. 816 (1998); *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir. 1995)(where the plan language "constrains the [fiduciaries'] ability to act in the best interest of the beneficiaries," it is "inconsistent with ERISA" and with the common law of trusts and must not be followed), *cert. denied*, 516 U.S. 1115 (1996); *Eaves v. Penn*, 587 F.2d 453, 459 (10th Cir. 1978)("While an ESOP fiduciary may be released from certain Per se violations on investments in employer securities . . ., the structure of [ERISA] itself requires that in making an investment decision of whether or not a plan's assets should be invested in employers [*sic*] securities, an ESOP fiduciary, just as fiduciaries of other plans, is governed by the 'solely in the interest' and 'prudence' tests of §§ 404(a)(1)(A) and (B).").

does require . . . that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram*, 516 U.S. at 497, *citing Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999).

Plaintiffs have alleged that Skilling and Lay, when they knew or should have known that the Plans', and indirectly the participants' and beneficiaries', Enron holdings might or would be decimated under the prevailing circumstances, breached their fiduciary duties *inter alia* by (1) failing to provide participants with complete and accurate information concerning the risks of placing or maintaining their retirement savings in Enron stock; (2) failing to eliminate or reduce the amount of Enron stock that served as an investment option for Plans when a prudent and loyal fiduciary would have done so; (3) failing to monitor the competence and performance of the fiduciaries; and (4) proceeding with the lockdowns, which prevented plan participants from trading in their plan accounts while the price of Enron stock sank.[9] Skilling and Lay allegedly conspired to mask the true financial condition of Enron and used Plaintiffs' retirement plans as part of an unlawful course of conduct, targeting Enron employees and converting the assets of the ERISA plans.  The fiduciary duty to act in a prudent

---

[9] The Second Amended and Consolidated Complaint asserts that the lockdown ("freeze" or "blackout") of the ESOP began on or around October 17, 2001 and was lifted on November 14, 2001, while the lockdown of the Savings Plan was in effect from October 26, 2001 until November 14, 2001.  #667 at 163-64.

manner solely in the interests of the class is a legal duty owed to the class of persons generally and exists regardless of what the participants or beneficiaries did or might have done.

Section 409(a) imposes liability on fiduciaries that breach their fiduciary duties, specifying as relief available to the ERISA plan, that such party

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

Section 1105, 29 U.S.C. § 1105 provides for co-fiduciary liability where a fiduciary

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Plaintiffs have adequately alleged that Skilling and Lay were liable for breaching their duties as fiduciaries and co-fiduciaries with respect to the Savings Plan and the ESOP.  #635 at 261-81, 289-98; #667 at 16-17, 44-69, 140-155, 158-162, 165-67, 170-72.[10]

---

[10] Page numbers are those typed on the bottom of pages of the instruments, not to the electronic page numbers.

With respect to standing, Section 502(a) authorizes civil actions brought *inter alia* by "a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2).

Relief obtained under section 502(a)(2), 29 U.S.C. § 1132(a)(2), goes to the plan rather than to individual plan participants. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 140, 142 n.9 (1985); *Matassarin v. Lynch*, 174 F.3d 549, 566 (5th Cir. 1999)(holding that for standing under § 502(a)(2) and *Russell*, a plaintiff must assert a claim whose remedy would inure to the benefit of the plan as a whole), *cert. denied*, 528 U.S. 1116 (2000).[11]

─────────────────

[11] *See also Milofsky v. American Airlines, Inc.*, 404 F.3d 338, 343-44 (5th Cir. 2005)(affirming district court's dismissal of plaintiffs' claims of breach of fiduciary duty under ERISA and finding that only a subset of plan participants brought suit and were affected by the alleged breach of fiduciary duty; "[a]lthough proceeds would be paid to the plan as an entity, the fact that they are channeled exclusively into the accounts of the plaintiff class benefits only a subsection of the plan, which cannot be said to benefit the plan as a whole as required under § 502(a)(2)"), *rehearing en banc*, 442 F.3d 311 (5th Cir. 2006).

In *Milofsky v. American Airlines, Inc.*, 404 F.3d 338, two pilots brought a class action against American Airlines and its hired benefits consulting firm under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for violation of fiduciary duties in misrepresenting how and when the pilots' individual accounts in an ERISA pension plan would be transferred, following acquisition of their previous employer by American Airlines, to a new plan (the "$uper $aver Plan") and in failing to effect such a transfer in a timely and prudent manner, with transfer time varying with different accounts, resulting in substantial losses to their individual accounts as the stock of their previous employer floundered. 404 F.3d at 341. The plaintiffs asserted, "[A]ll the individual accounts of plaintiffs and other members of the Class sustained damages" and "[as a result . . . the value of the plaintiffs' individual accounts under the

$uper $aver Plan, immediately following the transfer, was less than what it would have been had the money been transferred as promised." *Id.* at 343 n.12.  They requested restoration of those losses be paid to the $uper $aver Plan and that the damages be "allocated among plaintiffs' *individual* accounts proportionate to *plaintiffs' losses*." *Id.* at 343.

Writing for the majority of a divided panel and taking a minority view, noting that § 409 of ERISA allows actions only where the recovery sought "benefits the plan as a whole, as distinguished from an individual beneficiary," Judge Jerry E. Smith opined that "this suit concerns individualized relief for the particularized harm suffered by a subset of plan participants ["the plaintiff class"] and does not seek to vindicate the rights or interests of the plan as a whole"; "Although proceeds would be paid into the plan as an entity, the fact that they are channeled exclusively into the accounts of the plaintiff class benefits only a subsection of the plan, which cannot be said to benefit the plan as a whole as required under § 502(a)(2)."  404 F.3d at 343-44.  Judge Smith concluded, "We cannot adopt an interpretation that would allow a plaintiff, merely by praying that relief pass through the plan into individual accounts, to eviscerate the standing requirement imposed by § 502(a)(2) by engaging in a legal fiction that the suit benefits the plan as a whole." *Id.*, at 344.

Chief Judge Carolyn King dissented in part

> from the majority's unprecedented holding that participants in an individual account plan lack standing under § 502(a)(2) of ERISA to recover losses to the plan under § 409 of ERISA for a fiduciary breach unless *all* plan participants would benefit from the litigation. ERISA governs two types of pension plans: (1) individual account plans such as the 401(k) plan at issue here, and (2) defined benefit plans. . . . The majority's holding means that those participants in individual account plans who are unfortunate enough to be forced to litigate in the Fifth Circuit will be unable to recover monetary losses to the plans caused by fiduciary breaches when fewer than all plan participants would benefit from the litigation, thereby  limiting recovery to the equitable relief available under § 502(a)(3)of ERISA.  To deprive plan participants in such circumstances of a § 409 remedy for breach of fiduciary duty effectively nullifies Congress' intent to provide a high level of protection to any and all plan participants from fiduciary abuse.  The majority's holding finds no support in the two cases it cites, and it squarely conflicts with the one other circuit court to have directly addressed this issue.

Thus Lay's objection that loss causation is an individual issue that cannot support class certification is incorrect. Because under ERISA § 409, a plaintiff can only sue for compensatory

---

404 F.3d at 347-48.

The Fifth Circuit subsequently granted an *en banc* rehearing of the case.  418 F.3d 338 (5th Cir. 2005).  Under Fifth Circuit Rule 41.3, "Unless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."

On rehearing *en banc,* the Fifth Circuit without explanation decided *inter alia* that under notice pleading and standards for Rule 12(b)(6), dismissal was not proper at this stage of the litigation and that plaintiffs were entitled to further development of their breach of fiduciary duty claims.  442 F.3d at 313 (per curiam).  Thus the divided panel's is no longer precedent within the Fifth Circuit.

The majority of courts addressing the issue have disagreed with the *Milofsky* panel's conclusions.  In particular, in *Kuper Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995), the appellate court held that a subset of plan participants may sue for breach of fiduciary duty.   Moreover in *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 240, 235 (3d Cir. 2005), the Third Circuit, agreeing with Judge King's dissent in *Milofsky*, held that the plaintiffs could sue on behalf of their ERISA plan to recover money damages for breach of fiduciary duty even though the alleged violations affected only a subset of plan participants.  The panel wrote,

> Section 1109 allows the Plan to recover "*any losses*" from a breach of fiduciary duty. . . . The fiduciary's liability is not limited to plan "losses that will ultimately redound to the benefit of all participants." The Plan held Schering-Plough stock as an asset and that asset was greatly reduced in value allegedly because of breaches of fiduciary duty.  This clearly was a "loss" to the plan within the meaning of § 1109.  Just as the fact that the assets at issue were held for the ultimate benefit of Plaintiffs does not alter the fact that they were held by the Plan, so, too, the fact that Plaintiffs may have to show individual reliance on the defendants' alleged misrepresentations to prevail on some claims does not mean they do not seek recovery for Plan losses.

420 F.3d at 235-36.

damages for breach of fiduciary duty in a representational capacity for losses to the assets of the Plan as a whole, and because Plaintiffs have alleged that they sue to recover losses suffered by the two Plans on behalf of the Plans, the loss causation issue is whether Defendants' alleged breaches of fiduciary duty caused a loss to the two Plans,[12] not to individual defendants.  *See, e.g., DiFelice v. U.S. Airways, Inc.*, No. 1:04CV889, 2006 WL 763657, *3, 6, 10 (E.D. Va. March 22, 2006)(Determining whether the fiduciary "breached its fiduciary duty, thereby causing losses to the Plan, does not require each member of the class to establish individualized loss causation.  The loss causation burden can be satisfied simply by proving that there was a fiduciary breach, and that but for the breach, the Plan's assets would have been greater."), *citing In re Electronic Data Systems Corp.*, 224 F.R.D. 613, 623 (E.D. Tex. 2004), and *Dardaganis v. Grace Capital, Inc.*, 889 F.2d 1237, 1243 (2d Cir. 1989).  The alleged breach of fiduciary duty in the Savings Plan affected all participants and beneficiaries because they all received matching contributions in the form of Enron stock and Enron stock comprised more than half of

---

[12] Plaintiffs point out that although participants had the ability to direct the Plan's fiduciaries to purchase Enron stock for the Plan and to have it allocated to their individual accounts in exchange for funds which had been contributed to the Plan from their salaries, "the nature of the Savings Plan was such that the Plan itself and not participants actually bought, held and owned the Enron stock in the Plan."  #448 at 19, *citing* First Consolidated and Amended Complaint (#145) ¶ 740.

the plan's assets.  The ESOP Plan by its nature invested in the employer's stock.  Moreover, the alleged breach of fiduciary duty in Defendants' failure to diversify holdings applies to all plan participants and beneficiaries.[13]  (Thus even if the panel opinion in *Milofsky* had not been vacated, the facts here are distinguishable from those in *Milofsky*.)  So, too, do the claims of breach of fiduciary duty for inducing and mandating the acquisition and/or retention of Enron stock by the plans and for failing to monitor the investing fiduciaries and failure to disclose to them material facts about Enron's financial situation.  The purported breaches of fiduciary duty therefore were common to all members of the proposed classes and allegedly caused injury to the plans as a whole.[14]  For the same reason Lay's objection that the definitions of the two classes are overly broad and include people who could not have been adversely affected by conduct charged against

---

[13] *See Steinman v. Hicks*, 352 F.3d 1101 (7th Cir. 2003)(claim of breach of fiduciary duty for failure to diversify plan assets inured to benefit of plan as a whole because it targeted all plan participants; but dismissed because ESOP plan mandated investment in employer's stock).

[14] *See also Milofsky*, 404 F.3d at 344 n.16 ("We stop short, however, of saying that there is no standing [under ERISA's § 502(a)(2)] unless all plan participants would benefit from the litigation.  The central question, in the context of an individual plan, is whether the suit inures to the benefit of the *plan*, which occurs whenever all plan participants would directly benefit (by all having increased balances in their individual accounts) or when the suit seeks to vindicate the rights of the plan as an entity when the alleged fiduciary breaches targeted the plan as a whole-- whether the suit is filed by all plan participants or only a subset thereof.").

Defendants or who may even have made a profit selling their stock at some point during the class period are not relevant.

The Court does note that while both Class Periods extend through December 2, 2001, under 29 U.S.C. § 109(b), "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." *See, e.g., Bannistor v. Ullman*, 287 F.3d 394, 405 (5th Cir. 2002). Thus Skilling cannot be held liable for any breach of fiduciary duty to the Plans in the period after his resignation became effective in August 2001.

Lay has questioned whether the plans, which are included in Plaintiffs' class definitions, have standing to sue under section 502 for breach of fiduciary duty.

Under 29 U.S.C. § 1132(d), "An employee benefit plan may sue or be sued under this chapter as an entity." Section 502(e), 29 U.S.C. § 1132(e)(1), states that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary [of Labor] or by a participant, beneficiary, or fiduciary," while § 502(a)(3), 29 U.S.C. § 1132(a)(3)(ii), provides that "a participant, beneficiary, or fiduciary" has standing to enforce any ERISA provision.[15] "[A] federal court has no jurisdiction to hear a civil action under

---

[15] Thus the issue is one of both jurisdiction and of standing.

ERISA that is brought by a person who is not a 'participant, beneficiary, or fiduciary.'" *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir. 1994), *citing Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27 (1983).

There is a split of authority regarding whether an ERISA plan has standing to sue for breach of fiduciary duty under 29 U.S.C. § 1132(d)(1). Some courts have limited standing to those entities expressly listed in the statute, which are very narrowly construed and do not include a plan. *See, e.g., Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 (2d Cir. 1983)(holding that section 1132(e)(1) does not authorize a plan to sue under ERISA, but only those entities expressly enumerated in the provision), *cert. dismissed*, 463 U.S. 1233, *cert. denied*, 464 U.S. 845 (1983); *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 473 (10th Cir. 1990)("Although [ERISA] has a broad remedial purpose, only participants, beneficiaries, and fiduciaries of the employee benefit plan may avail themselves of its protections."), *cert. denied*, 498 U.S. 898 (1990); *Local 159, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 983 (9th Cir. 1999)(holding that § 1132(d)(1) does not confer federal jurisdiction to plans bringing ERISA suits), *citing Steen v. John Hancock Mutual Life Ins. Co.*, 106 F.3d 904, 917 (9th Cir. 1997); *Blue Cross & Blue Shield v. Bell*, 596 F. Supp. 1053, 1058 (D. Kan. 1984)(following *Pressroom*), *aff'd*, 798 F.2d 1331 (10th Cir. 1986); *Via Christi Regional Medical Center, Inc.*, 361 F. Supp.2d 1280,

1290 (D. Kansas 2005).  Other courts, when the plan is named as a plaintiff, have looked at the makeup of the litigant and found a fiduciary within.  *Saramar Aluminum Co. v. Pension Plan for Employees of Aluminum Indus. & Allied Indus.*, 782 F.2d 577, 581 (6th Cir. 1986)("The Plan, as the party before the court, necessarily includes those who must act for the plan to administer it and to effectuate its policies," and because the Plan's administrators exercised discretionary control over the Plan, "the Plan as a party, then, comes under the ERISA definition of a 'fiduciary'"); *Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Ins. Co.*, 698 F.2d 320, 325, 326 (7th Cir. 1983)("ERISA confers on pension plans standing to sue for breach of fiduciary obligations under ERISA" and "[t]he participants, the trustees and the plan itself all have standing to complain" of such violations).

In *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1287-89 (5th Cir. 1988), Judge Edith Jones, writing for a unanimous panel, discussed the conflict among courts in construing an ERISA plan's standing to sue under § 502 and stated, "Where Congress has defined the parties who may bring a civil action founded on ERISA, we are loathe to ignore the legislature's specificity.  Moreover, our previous decisions have hewed to a literal construction of § 1132(a)."  *Id.* at 1288-89 (and cases cited therein).  Judge Jones suggested that "[w]e may prefer the reasoning of the Second Circuit without endorsing the particular result it reached" in *Pressroom* ("courts are not to infer a grant

of jurisdiction absent a clear legislative mandate," and the silence of ERISA's legislative history indicates that the enumerated parties in §§ 1132(a) and (e)(1) should be viewed as an exclusive grant of jurisdiction). *Id.* at 1288, *citing Pressman*, 700 F.2d at 888. Judge Jones observed that the Second Circuit in *Pressman* denied standing to a pension fund in that action because it concluded that a plan is not a fiduciary, but she specifically refrained from embracing the same conclusion: "We express no opinion on the standing of pension funds under § 1132." *Id.* at 1288, 1289 n.10. *See also id.* at 1288 n.4 (noting that the Sixth and Seventh Circuits have held that pension plans have standing to sue under certain circumstances under § 1132(d), and stating, "We express no opinion on the standing of a plan under § 1132." *Id.*, *citing Peoria*, 698 F.2d at 326 ("pension plans have standing to sue under ERISA for breach of fiduciary duty"), and *Michigan United Food and Commercial Workers' Unions v. Baerwaldt*, 767 F.2d 308 (6th Cir. 1985)("a pension fund has standing to sue for declaratory relief that a state statute was preempted by ERISA."), *cert. denied*, 474 U.S. 1059 (1986). Furthermore, Judge Jones pointed out that in *American Federation of Unions, Local 102 v. Equitable Life Ass. Soc. of the U.S.*, 841 F.2d 658, 665-66 (5th Cir. 1988), a Fifth Circuit panel decided it was not necessary to address the issue of a union pursuing an ERISA claim because three other enumerated parties had joined as plaintiffs. 845 F.2d at 1289 n.11. Moreover, ten years after *Hermann*, in *Louisiana Bricklayers &*

*Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller General Masonry Contracting Co.*, 157 F.3d 404, 406 n.3 (5th Cir. 1998), the Fifth Circuit looked "through" the named plaintiff plan to find a fiduciary trustee as the real party bringing suit: "As fiduciaries, the trustees of a multiemployer benefit plan may maintain a cause of action under section 502(a)(3) of ERISA."

Here the participants and beneficiaries bringing suit are clearly among the enumerated parties in the statute's grant of jurisdiction, so that Lay's objection that the class includes the plan need not be resolved under *American Federation of Unions*. Furthermore, if plan fiduciaries under the rubric of the two plans are involved in bringing the suit, the matter appears moot under *Louisiana Bricklayers*.

The Court concludes that Plaintiffs and proposed class members, as participants in, or beneficiaries of, the Enron Corporation Savings Plan and/or the Enron Corporation Employee Stock Ownership Plan, suing on behalf of those plans, meet statutory standing requirements to sue under § 502(a)(2).

Finally, Lay has objected that the classes are overbroad, and certain class representatives are seeking to represent class members not in the same plans, i.e., some class representatives "do not fall within or share the injuries of the class which they purport to represent" because during the Class Period they were not participants in or beneficiaries of the ERISA Plan[s] whose members they seek to represent. In *Forbush v. J.C. Penney Co.*, 994 F.2d

1101 (5th Cir. 1993)(2-1), the majority of the panel reversed a district court's denial of class certification for failure to satisfy the typicality and commonality requirements in an action against J.C. Penney for overestimating social security offsets to four different employee pension plans in violation of ERISA where the plaintiff/class representative was a participant in only one. The Fifth Circuit held that a class should be certified because the plaintiff successfully alleged a concrete injury to herself to establish constitutional standing and therefore had only to satisfy the requirements for class certification under Rule 23 for class representatives.  The majority identified as the common issue "whether Penney's alleged overestimation of social security benefits violates ERISA's nonforfeiture provisions. . . . Framed in this manner, Forbush has met the commonality requirement despite the fact that four different pension plans are involved."  994 F.2d at 1106.  Similarly it ruled,

> It is true that much of the putative class is covered by plans other than the one applicable to Forbush, but Forbush has framed her challenge in terms of Penney's general practice of overestimating social security benefits.  Her claim is therefore typical and thus provides no basis for suspecting she will not adequately represent the interests of the class.

*Id.*  In *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998), the Sixth Circuit held that a class representative must first establish individual constitutional standing, i.e., a "case or controversy" between himself and the defendant within the meaning of Article III by alleging "a distinct and palpable injury

to himself," and "he  will be able to represent a putative class, including absent class members, [if] he is able to meet the additional criteria encompassed in Rule 23." *Id.* at 423, *citing Cooper v. University of Texas at Dallas*, 482 F. Supp. 187 (N.D. Tex. 1979), *aff'd*, 648 F.2d 1039 (5th Cir. 1981), and Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 2.05 (3d ed. 1992).  The panel reversed a district court opinion that Fallick lacked standing under Article III of the  Constitution to represent participants in a number of health insurance plans administered or insured by Nationwide on the grounds that the district court had confused the requirements of Article III and Rule 23.  *Id.* at 421. The panel stated, "[T]he district court overlooks several apposite decisions of courts both in this Circuit and others that hold that an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Id.* at 422, *citing the following: Forbush*, 994 F.2d 1101; *Misch v. Community Mut. Ins. Co.*, 1995 U.S. Dist. LEXIS 5059 (S.D. Ohio Feb. 15, 1995); *Sutton v. Medical Serv. Assoc. of Pennsylvania*, 1993 U.S.  Dist. LEXIS 9763 (E.D. Pa. 1993); and *Doe I v. Guardian Life Ins. Co. of America*, 145 F.R.D. 466 (N.D. Ill. 1992).  *See also In re Louisiana-Pacific Corp. ERISA Litig.*, No. Civ. 02-1023-KI, 2003 WL 21087593, *4-5 (D. Or. Apr. 24, 2003); *Davis v. Bailey*, No. CIVA05CV00042WYD-OES, 2005 WL 3527286, *2 (D. Colo. Dec, 22, 2005).

In *Tittle* Plaintiffs sue the same Defendants for the same wrongful conduct that caused losses to both plans, and thus class representatives who demonstrate concrete injury and status as a participant or beneficiary of one Enron plan may represent class members in both because, as will be shown, they do satisfy the requirements of Rule 23.

## Prerequisites for Class Certification Under Rule 23

### I.  General Principles

Under Federal Rule of Civil Procedure 23(c)(1)(A) and (B), the court must "determine by order whether to certify the action as a class action" and, if it determines that it should do so, "define the class and the class claims, issues, or defenses" in the order certifying the class.  The court has wide discretion in determining whether to certify a class, but that discretion must be exercised within the bounds of Rule 23.  *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 570 (S.D. Tex. 2000), *citing Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).  The district court's decision to certify a class will only be reversed for abuse of discretion or application of incorrect legal standards.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999), *cert. denied*, 528 U.S. 1159 (2000).

In the process of determining whether a class should be certified, the court is required to conduct a rigorous analysis of Federal Rule of Civil Procedure 23's prerequisites.  *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982);

*Castano*, 84 F.3d at 740.  "Class certification hearings should not be mini-trials on the merits of the class or individual claims," but nevertheless the court must go beyond the pleadings and examine the evidence to understand the claims, defenses and relevant facts and applicable substantive law to make a meaningful certification decision.  *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)("The plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification."), *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).  The Fifth Circuit has stated that *Eisen* does not support "the view that a district court must accept, on nothing more than pleadings, allegations of elements central to the propriety of class certification under rule 23."  *Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 311-12 (5th Cir. 2005).  Where the facts that must be considered for a Rule 23 determination overlap with the facts relating to the merits, they may be reviewed even where the resulting court findings might also coincidentally overlap.  *Id.* at 312 (but warning that "'[t]he findings made for resolving a class action certification motion serve the court *only* in its determination of whether the requirements of Rule 23 have been demonstrated'"), *citing and quoting Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004).  In addition, the court, though not reaching the merits, must consider how plaintiffs' claims will be tried, individually or on a class basis.  *Castano*, 84 F.3d at 744.

As the movants for class certification here, Plaintiffs bear the burden of demonstrating that a class action is appropriate and that all requirements of Rule 23 are satisfied.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001), *clarified*, 279 F.3d  313 (5th Cir. 2002).

## II.  Rule 23(a)

Rule 23(a), setting forth part of the "Prerequisites to a Class Action," provides,

> One or more members of a class may sue or be sued as class representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

## A.  Numerosity

The Court finds that for both classes and Counts I, III, and V, the numerosity requirement, which has not been seriously challenged, has been easily satisfied by Plaintiffs' reasonable and basically uncontested estimate at the hearing, easily shown by reference to Plan records, of up to 20,000 class members,[16] i.e., Enron employees who participated in or are beneficiaries of the two plans, whose assets were affected, and who are clearly so numerous that joinder of all members is impracticable, i.e., extremely

---

[16] Counsel for Northern Trust estimated between 16,000-20,000.

difficult or inconvenient. *Henry v. Cash Today, Inc*., 199 F.R.D. 566, 569 (S.D. Tex. 2000).

**B.   Commonality**

Commonality's undemanding test is satisfied by Plaintiffs' showing that there are questions of law or fact common to the class and that resolution of at least one issue will affect all or a significant number of class members. *Henry*, 199 F.R.D. at 569, *citing Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993); *In re Electronic Data Systems Corp. Sec. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex. 2005), *aff'd*, 429 F.3d 125 (5th Cir. 2005). "[T]he appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs." *In re IKON Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 465 (E.D. Pa. 2000). Here shared issues of law and fact satisfying the commonality requirement, relating to all counts and common to all plan participants in both classes, include whether Defendants were fiduciaries within the meaning of ERISA; whether ERISA was violated by the ERISA Defendants' alleged acts and omissions; whether Defendants breached fiduciary duties owed to the class by failing to act prudently and solely in the interest of the class and the plans; for Count V whether Defendants Lay and/or Skilling breached a duty to monitor the competence and performance of the plan administrators; whether Defendants satisfied their duty to disclose under ERISA; whether Defendants' fiduciary duties mandated that they act in contravention of certain provisions of the respective

plans; and whether the Plans were damaged by the alleged breaches of fiduciary duty.  The resolution of these issues will not depend upon which plan participant sues on behalf of each Plan, but are common to all members of the class.

## C.  Typicality

Similarly not demanding, the test for typicality is satisfied if the class representatives' claims or defenses are typical of, but not necessarily identical to, those of the class; class representatives should have the same interests and have suffered the same injuries as others in the class, and the representatives' and class members' claims need only share the same essential characteristics, i.e., arise from a similar course of conduct and share the same legal theories.  *Henry*, 199 F.R.D. at 569; *Electronic Data*, 226 F.R.D. at 565.  *See also Koch v. Dwyer*, No. 98 Civ. 5519 (RPP), 2001 WL 289972, *3 (S.D.N.Y. Mar. 23, 2001)("'Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events and each class member makes similar arguments to prove the defendant's liability'"); *In re IKON Office Solutions, Inc.*, Nos. MDL 1318, 00-87, 191 F.R.D. 457, 463 (E.D. Pa. 2000)("Usually, a plaintiff's claim is typical of a class if it challenges the same conduct as would the putative class. . . . Even quite significant factual differences will not defeat typicality so long as the legal theory upon which plaintiffs seek redress is the same as those they seek to represent."); *White v. Sundstrand Corp.*, No. 98 C 50070, 1999 WL 787455, *3 (N.D. Ill. Sept. 30, 1999)("A

claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'").

Here Plaintiffs' shared breach-of-fiduciary-duty claims arose from the same alleged course of conduct by Defendants as part of a larger fraudulent scheme, the duties owed by each alleged fiduciary to the plan and its participants and beneficiaries are the same, and the kind of damage suffered by the plans is the same.

Here each of the claims arises from the same event or course of conduct, and each is based on the same legal theory, i.e., breach of fiduciary duty under ERISA § 409.  Plaintiffs here have alleged a scheme and a course of conduct by Defendants that defrauded investors and led to the decimation of their ERISA plan retirement savings.  Generally Plaintiffs have asserted that Enron employees were a central target of Defendants' scheme, involving the creation of complex partnerships and Special Purpose Entities ("SPEs"), extensive "off-book" transactions, and tricky accounting to conceal debt and to add and artificially inflate false profits on Enron's books, while personally enriching themselves.  The false accounting misrepresented Enron's actual financial condition and allowed Defendants to pay Enron's employees compensation in the form of worthless Enron stock and, through Defendants' promotional efforts, to convince the employees to accept and hold Enron stock in their ESOP and Saving Plan Accounts, rather than diversify or

place retirement funds in safer investments.  Not only did the
scheme allow Defendants to pay employees with Enron stock rather
than cash, but restrictions on the stock in the plans limited the
plan participants' ability to alienate their share and helped
protect Enron's stock from dramatic price drops when the Company
disclosed bad news, according to the complaint.

Moreover, "given the representative nature of suit pursuant to
ERISA 502(a)(2)," each plan participant/class member's claims are
"necessarily typical of those of the rest of the class." *DiFelice
v. U.S. Airways, Inc.*, No. 1:04CV889, 2006 WL 763657, *6 (E.D. Va.
March 22, 2006). "'There can be no conduct or claims conflicts
[among Plaintiffs or between Plaintiffs and the Plan] because each
class member is bring[ing] suit on the Plan's behalf, not as an
individual.  In effect, class members, as the Plan's advocates, are
each bringing the exact same suit.'"  *DiFelice*, 2006 WL 763657 at
*6, *quoting In re Electronic Data Systems Corp.*, 224 F.R.D. 613,
623 (E.D. Tex. 2004).  "Thus, individual issues of loss causation
do not predominate, indeed are not relevant, unless and until it
becomes necessary to allocate any Plan recovery to participants."
*DiFelice*, 2006 WL 763657 at *6.

Claims need not be completely identical to satisfy typicality
requirements.  *James v. City of Dallas, Texas*, 254 F.3d 551, 571
(5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002).  Here the
factual variations are minor while the course of conduct challenged
and the legal theories are shared:  Plaintiffs' claims of breached

fiduciary duties against Lay and Skilling as plan fiduciaries or co-fiduciaries are all based (1) on Defendants' conduct during unique events occurring prior to the planned lockdowns, during which none of the participants had access to their accounts and which affected both plans, (2) on the terms of the two plans, and (3) on alleged conflicts between those fiduciary duties and instructions in the plans.

Furthermore, Count I alleges that the Savings Plan's fiduciaries breached their duty to participants and beneficiaries by offering them, indeed mandating that they invest in, Enron stock within the plans when the fiduciaries and co-fiduciaries knew or should have known that it was an imprudent investment. Plaintiffs emphasize that the Savings Plan was not a § 404(c)[17] plan that had to comply with regulations of the Department of Labor under 29 U.S.C. § 670, and therefore the Plan's fiduciaries are liable for the investment decisions they made with respect to the Plan's assets, including decisions made in whole or in part by the Plan participants. Second Amended and Consolidated Complaint (#667) at 140, ¶¶ 403-404. Moreover, § 5.16(a) of the Savings Plan[18] directed the Plan's Committee to invest Enron's matching

---

[17] Section 404(c) provides that if a plan participant exercises independent control over his account's investments, then "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c)(1)(B).

[18] Ex. B to Berman Declaration (#459).

contributions "primarily" but not exclusively in shares of Enron stock. *See also* #667 at 148, ¶433. In other words the Committee had discretion in the investment of those contributions, but breached their fiduciary duties by causing or allowing the Plan to invest them in Enron stock when they knew or should have known it was not prudent to do so. Defendants further allegedly breached their fiduciary duties by maintaining a restriction that barred participants from directing the fiduciaries to sell the Enron stock allocated to their accounts until they reached the age of fifty, even though a prudent, disinterested fiduciary would not have done so.

Plaintiffs further assert, with respect to Count III's allegation of failure to diversify assets in the Savings Plan, that if the fiduciaries had prudently diversified the Plan assets as required by the Savings Plan documents,[19] the Plan would not have been dangerously over-weighted in Enron Stock, as it was, and would not have failed. They allege that as a result of the fiduciaries' failure to follow the terms of the plan, the Savings Plan, and indirectly the Savings Plan participants and beneficiaries, suffered losses in the hundreds of millions of dollars.

---

[19] Plaintiffs point out that the governing documents did not contain a provision permitted under 29 U.S.C. § 1104(a)(2) exempting Defendants from the duty to diversify. The Plan Document expressly stated that the provision imposing various fiduciary duties including the duty to diversify "shall control over any contrary, inconsistent or ambiguous provisions contained in the Plan." Berman Decl., Ex. 1 at XV.1.

Similarly Plaintiffs contend that Defendants breached their fiduciary duties to participants in the ESOP by causing or allowing the ESOP to invest in Enron stock when they knew or should have known that doing so was not prudent and by maintaining two restrictions, i.e., (1) that only participants over 50 with at least five years of service could roll their Enron stock into the Savings Plan or an individual retirement account and then convert it to other investments and (2) that they had only once-a-month access to their accounts, when a prudent, disinterested fiduciary would not have done so.

Plaintiff represent that from the beginning to the end of the Savings Plan lockdown (Oct. 26, 2001-November 14, 2001), Enron stock lost more than one-third of its value, while from the beginning to the end of the ESOP lockdown (October 16-November 14, 2001, Enron stock lost two-thirds of its value.  #448 at 25, *citing* Complaint ¶¶ 724-25.

The Court finds such shared allegations meet the typicality requirement even where some facts regarding individual participants varied.

**D.  Adequacy**

The court examines the zeal and competence of the class representatives' counsel and the class representatives' willingness, experience, and ability to handle class actions, to take an active role in and control of the litigation, to protect the interests of the absent members to determine if there is fair

and adequate representation of the interests of the class. *Henry*, 199 F.R.D. at 569; *Electronic Data*, 226 F.R.D. at 566, *citing Berger*, 257 F.3d at 479-82. Even where there is no proof that the class representatives and their counsel are inadequate, the court may not presume that they are; the party seeking certification must demonstrate that they are adequate. *Berger*, 257 F.3d at 481. The court must also determine if there are any conflicts of interest between the named plaintiffs and the class they seek to represent, which would make the class representation inadequate. *Berger*, 257 F.3d at 480. "[B]ecause absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Id.*

Here common interests shared by the class representatives and class members have been demonstrated in the satisfaction of the commonality and typicality tests. Declarations of the named class representatives demonstrate that they are highly motivated and committed to prosecuting this action on behalf of the plans and the plans' participants and beneficiaries, who have lost substantial sums in their retirement plan investments in Enron stock under the same circumstances. Even if they lack sophistication as investors, their declarations demonstrate that they understand the purpose of the lawsuit and their responsibilities as class representatives. As indicated in

footnote 6 of this opinion, most of Lay's specific objections to the named class representatives are moot. Moreover, under the facts alleged here, as a matter of law they can represent the putative class members from the plan other than the one for which they are participants or beneficiaries. *See* pp. 21-24 of this opinion. The Court finds that Plaintiffs do not have interests antagonistic to those of the class.

The Court has previously found counsel qualified and experienced. *See* instruments #47, 83, 104, and 105.

### Rule 23(b) Requirements

Because the Court finds that Rule 23(a) requirements are satisfied, it examines whether each of the classes is maintainable under one of Rule 23(b)'s three subsections. *Henry*, 199 F.R.D. at 569-70. Rule 23(b) authorizes certification of a class action

> if the prerequisites of subdivision (a) are satisfied, and in addition
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct of the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the class as a whole; or

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The Fifth Circuit has observed, "Under Rule 23, the different categories of class actions, with their different requirements, represent a balance struck in each case between the need and efficiency of a class action and the interests of class members to pursue their claims separately or not at all." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412 (5th Cir. 1998). The panel in *Allison* summarized,

> The (b)(1) class action encompasses cases in which the defendant is obliged to treat class members alike or where class members are making claims against a fund insufficient to satisfy all of the claims. . . . The (b)(2) class action, on the other hand, was intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary. . . . Finally, the (b)(3) class action was intended to dispose of all other classes in which a class action would be "convenient and desirable," including those involving large-scale, complex litigation for money damages.

*Id.*

The distinction between 23(b)(1)(A) and (b)(1)(B) is that 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class

members." *IKON Office Solutions*, 191 F.R.D. at 466. Moreover, "[c]ertification under either of these subsections constitutes a mandatory class" without an opt-out opportunity because otherwise a non-class member could pursue litigation that might prejudice class members. *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001). *See also Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991)9 "Because individuals may bring class actions to remedy breaches of fiduciary duty only on behalf of the plan, rather than themselves, the Court cannot allow participants or beneficiaries to opt out of this class."); *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, *8 (S.D.N.Y. Oct. 18, 2004)("There is no opportunity under any Rule 23(b)(1)(B) class action to opt out . . . ."), *clarified*, 2004 WL 2922083 (S.D.N.Y. Dec. 17, 2004).[20] The procedural safeguards provided under (b)(3), i.e., the absolute right to notice and right to opt out of the class, are not available to class members of a (b)(1) or (b)(2) class action, because these two classes are more cohesive and homogenous that classes certified under (b)(3), while the monetary remedies sought by a (b)(3) class are often related to disparate merits of individual claims of members with divergent interests. *Allison v. Citgo Petroleum Corp.*, 151 F.3d at 413.

---

[20]   Nevertheless, absent class members must be given notice of a proposed settlement and may move to intervene and file objections to it.

The Advisory Committee Note states that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust"; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999)(quoting Note for same proposition). *See, e.g., Godshall v. The Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, *3 (E.D. Pa. Dec. 1, 2004)("When a breach of fiduciary duty is at issue, any individual adjudication regarding the breach would necessarily affect the interests of others" and "[t]herefore it is appropriate to certify the class pursuant to Rule 23(b)(1)(B)."). A key issue in *Tittle* has been the exhaustion of insurance policy proceeds by some plaintiffs in early partial settlements, which adjudication would significantly affect the interests of other claimants if not part of a mandatory class. Moreover, because suits brought pursuant to § 502(a)(2) are representational or derivative, i.e., brought on behalf of the plan, "'ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.'" *DiFelice*, 2006 WL 763657 at *7, *citing In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)(*quoting Kolar v. Rite Aid Corp.*, No. Civ. A. 02-1229, 2003 WL 1257272, *3 (E.D. Pa. Mar. 11, 2003)). Thus certification under this provision is proper.

Certification under Rule 23(b)(1)(A) is also warranted.  Since under the substantive law of ERISA, as noted *supra*, ERISA plan participants can only seek relief on behalf of the plan for breach of fiduciary duty, if successful this action will impose obligations on defendants that are applicable to the plans, and thus on all participants and beneficiaries in the Savings Plan and the ESOP.  As pointed out by the court in *In re IKON Office Solutions, Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000), "[G]iven the risk of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief . . . . There is also risk of inconsistent dispositions that would prejudice the defendants; contradictory rulings as to whether IKON had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions."  *See also, e.g., Koch*, 2001 WL 289972 at *4; *In re Williams Companies ERISA Litig.*, 231 F.R.D. 416, 425-26 (N.D. Okla. 2005); *Rogers v. Baxter International, Inc.*, No. 04 C 6476, 2006 WL 794734, *10 (N.D. Ill. Mar. 22, 2006)("[C]laims arising under ERISA section 502(a)(2) are representative by their very nature. Consequently, a decision with respect to one Plan participant's claim necessarily implicates issues relevant to the adjudication of other participants' claims.  Claims brought by more than one plan participant therefore might place incompatible demands on

defendants . . . ."). *See also IKON Office Solutions*, 191 F.R.D. at 466; *Thomas v. SmithKline Beecham*, 201 F.R.D. 386, 397 (E.D. Pa. 2001).

For all these reasons, the Court finds that certification under both Rule 23(b)(1)(A) and (B) is appropriate here. *See generally IKON Office Solutions*, 191 F.R.D. at 466; *In re Williams Companies ERISA Litig.*, 231 F.R.D. 416, 424-25 (N.D. Okla. 2005); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 545-46 (E.D. Mich. 2004); *Rankin v. Rots*, 220 F.R.D. 511, 523 (E.D. Mich. 2004); *In re Electronic Data Systems Corp. "ERISA" Litig.*, 224 F.R.D. 613, 628 (E.D. Tex. 2004)(ERISA breach of fiduciary duty prudence claims certifiable under Rule 23(b)(1)(A) and (B)); *In re: ADC Telecommunications ERISA Litig.*, No. Civ. 03-2989ADMFLN, 2005 WL 2250782, *4-5 ( D. Minn. Sept. 15, 2005); 9 Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* Appendix II-B (4th ed. Nov. 2005).

Rule 23(b)(2) allows certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The Advisory Notes state that class certification under (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." The note "implies that the drafters of Rule 23 believed that at least some form or amount of monetary relief would be permissible in a

(b)(2) class action." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 & n.3 (5th Cir. 1998)("monetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or declaratory"), *citing Texaco v. Louisiana Land & Exploration Co.*, 995 F.2d 43, 44 (5th Cir. 1993). The Fifth Circuit has concluded that monetary relief "'predominates' under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case," thus triggering the need for the procedural safeguards of notice and opt out. *Id.* at 413. Therefore "(b)(2)'s predomination requirement serves essentially the same functions as the procedural safeguards and efficiency and manageability standards mandated in (b)(3) class actions. . . . [It] protects the legitimate interests of potential members who might wish to pursue their monetary claims individually . . . and . . . preserves the legal system's interest in [and the chief purpose behind the class action device of] judicial economy." *Id.* at 415, 414. Thus the *Allison* panel, recognizing restrictions on (b)(2) certification, held that

> monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. . . . By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief. . . . Ideally, incidental damages should be only those in which class members automatically

would be entitled once liability to the class (or
subclass) as a whole is established. . . . Moreover, such
damages should at least be capable of computation by
means of objective standards and not dependent in any
significant way on the intangible, subjective differences
of each class member's circumstances. Liability for
incidental damages should not require additional hearings
to resolve the disparate merits of each individual's
case; it should neither introduce new and substantial
legal or factual issues, nor entail complex
individualized determinations. Thus, incidental damages
will, by definition, be more in the nature of a group
remedy, consistent with the forms of relief intended for
(b)(2) class actions.

*Id.* at 415. The panel did concede that "as a matter of degree,
whether a given monetary remedy qualifies as incidental damages
will not always be a precise determination" and left it to the
discretion of the district court to decide "whether a monetary
remedy is sufficiently incidental to a claim of injunctive or
declaratory relief to be appropriate in a (b)(2) class action."
*Id.* at 416.

Plaintiffs argue that the predomination requirement for (b)(2)
certification is met here because Plaintiffs' breach of fiduciary
duty claims apply generally to the whole class and the remedy
sought would be plan-wide. Any benefit ultimately flowing to
individual plan participants and beneficiaries by recalculated
offsets or refurbished retirement savings through the Savings Plan
and/or the ESOP would "flow directly and incidentally" from the
declarative and injunctive relief obtained. *See, e.g., Bublitz v.
E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa

2001)(certifying Rule 23(b)(2) class in a breach of fiduciary duty case under ERISA).

Nevertheless the Court finds that the relief expressly sought under the Counts at issue is restoration of monetary loss to the plan; it is wholly monetary; and it is not incidental to any other remedy.  Moreover, as noted, the equitable relief sought in the Second Amended and Consolidated Complaint is moot.  Thus certification under Rule 23(b)(2) is not appropriate.

A class may be certified under Rule 23(b)(3) when "common questions predominate over any questions affecting only individual members (predominance requirement)" and "class resolution is superior to other available methods for fair and efficient adjudication of the controversy (superiority requirement)." *Henry*, 199 F.R.D. at 570.  In examining the predominance requirement of this Rule, the court should "inquire into the substance and structure of the underlying claims without passing judgment on their merits.  'Although 'the strength of a plaintiff's claim should not affect the certification decision,' the district court must look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.''" *Robinson v. Texas Automobile Dealers Assoc.*, 387 F.3d 416, 421 (5th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005).  Where a "common nucleus of operative fact" exists, the predominance factor is met. *Henry*, 199 F.R.D. at 572.

Furthermore, common issues predominate here: whether Defendants were plan fiduciaries; what duties were owed by them; whether Defendants breached those duties of loyalty and/or prudence; and whether the plans, and indirectly their participants and beneficiaries, were harmed by those breaches. The relief sought inures to the plans as a whole, as statutorily and judicially mandated.

Nevertheless, Ken Lay argues that Count I's inducement and misrepresentation claims require individualized proof of detrimental reliance and are therefore not amenable to class treatment. Moreover, the statements identified in the complaint are variously attributed to Lay, Skilling and other Enron officers and ERISA Defendants and were issued to plan participants in seven different employee meetings, unidentified issues of an in-house publication, two internal memoranda, and investor meeting attended by only some employees, and intranet communications. Furthermore he objects, plan participants obtained information about Enron from many other sources.

The Court notes that the allegations for breach of fiduciary and co-fiduciary duty against Skilling and Lay, *inter alia*, in Count I, which is titled "INDUCING AND MANDATING THE ACQUISITION AND RETENTION OF ENRON STOCK IN THE SAVINGS PLAN AND THE ESOP," are not limited to claims that they promoted investment in Enron stock and induced plan participants to purchase and/or retain Enron stock

in their investment accounts through alleged misrepresentations.[21]

---

[21] Count I of the Second Amended and Consolidated Complaint (# 667 at 159-60) asserts that all Defendants breached fiduciary and co-fiduciary duties owed to Plaintiffs and the Savings and ESOP Plans

by: (I) allowing Savings Plan participants the ability to direct the Plan's fiduciaries to purchase Enron stock and have such stock allocated to their individual accounts in exchange for monies participants contributed to the Plan as deductions from their salaries; (2) inducing Savings Plan participants to direct the Plan's fiduciaries to purchase Enron stock and have such stock allocated to their individual accounts in exchange for monies contributed to the Plan by participants; (iii) causing and allowing the Savings Plan to purchase or accept Enron's matching contributions to the Savings Plan in the form of Enron stock; (iv) imposing and maintaining age and other restrictions on the ability of the participants to direct the Savings Plan's fiduciaries to transfer Savings Plan and ESOP assets out of Enron stock; and (v) inducing the Savings Plan and ESOP participants to direct or allow the Plans' beneficiaries to maintain the Plans' investments in Enron stock--and with respect to subparagraphs i-v herein, taking or allowing such actions all at a time when Enron, the Enron ERISA Defendants, Northern Trust, and Lay and Skilling knew or should have known that Enron stock was not a prudent investment options for the Plans, and, thus, that such actions were contrary to ERISA, and that any Plan terms allowing or requiring the actions should have been disregarded.

The complaint further asserts that they also breached fiduciary and co-fiduciary duties

in the following ways: (1) Enron, Lay, Skilling, and the other Director Defendants who participated in the appointment of Plan fiduciaries failed to provide material information regarding the financial condition of Enron to the Administrative Committee members that Defendants knew or should have known was necessary for the prudent administration of the Plans; (ii) Enron, Lay, Skilling, the other Director Defendants, and the Administrative Committee members failed to provide material information regarding the financial condition of Enron to participants and beneficiaries that Defendants

The Court agrees with Lay that the predominance requirement, which is more stringent than the tests for typicality and commonality,[22] is not satisfied with respect to the element of reliance in Plaintiffs' allegations of misrepresentation and

> knew or should have known, through prudent investigation, was a threat to the Plans, and that participants and beneficiaries needed in order to make informed decisions about investing in Enron stock, failed to correct misinformation, and, with respect to Lay, Skilling, and Olson, in particular, provided false information regarding the same; (iii) Administrative Committee members, including but not limited to Olson and Prentice failed to investigate the prudence of continuing to invest and hold Plan assets in Enron stock despite red flags and warnings regarding Enron's financial condition and malfeasance, and Northern Trust failed to investigate the advisability of continuing to follow directions to purchase Enron stock in order to ensure that the action was in compliance with ERISA as well as the Plans; and (iv) Enron and the Administrative Committee members faced a direct conflict of interest with respect to the continued use of Enron stock as an investment option in the Plan, and in monitoring the continued prudence of matching employee contributions in Enron stock in light of the circumstances alleged in the Complaint.

*Id.* at 166-67.

[22] Commonality requires that there merely be one or more common issues of law or fact, which test has clearly been met here. Therefore even if there are claims of affirmative misrepresentation, with individualized reliance issues, the commonality requirement may be satisfied. *See, e.g., In re William Companies ERISA Litig*, 231 F.R.D. 416, 421-22 (N.D. Okla. 2005), *quoting IKON Office Solutions*, 191 F.R.D. at 465 ("[d]efendants' position also ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs."). Similarly, for typicality (all class members' claims arising from the same alleged facts and circumstances and sharing same legal theories), "individualized inquiry of each class member concerning what misrepresentation each was subject to and any actions *taken by that individual* as a result of such misrepresentation" is not relevant. *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 544 (E.D. Mich. 2004).

inducement because reliance is a matter of individualized proof. *See, e.g., Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation*, 334 F.3d 365, 384 (3d Cir. 2003)(for a cause of action for breach of fiduciary duty for misrepresentation a plaintiff must show that (1) the defendant was a fiduciary acting as a fiduciary, (2) the defendant made a misrepresentation, (3) the misrepresentation was material, and (4) plaintiff detrimentally relied on the misrepresentation); *Ince v. Aetna Health Management, Inc.*, 173 F.3d 672, 676 (9th Cir. 1999); *In re Electronic Data Systems Corp. ERISA Litig.*, 224 F.R.D. 613, 629-30 (E.D. Tex. 2004)("Although there is not a Fifth Circuit case that addresses the standards for materiality and reliance in an ERISA breach-of-fiduciary-duty class action for misrepresenting plan investment options,[23] extending the Fifth Circuit's rationale

---

[23]   In the context of discussing certification under Rule 23(b)(3) of a class alleging breach of fiduciary duty through imprudent management and misrepresentation that caused losses in plaintiffs' investment in the employer's stock, the *Electronic Data* district court, *id.*, noted that in the fact-specific analysis of the Fifth Circuit in *Martinez v. Schlumberger*, 338 F.3d 407, 428 (5th Cir. 2003)(holding that the employer had no fiduciary duty to affirmatively disclose to its employees possible changes to an ERISA benefit plan nor a potential early retirement offer), the Fifth Circuit identified what constitutes a "material" misrepresentation by asking "whether there is a substantial likelihood that a reasonable person in the plaintiffs' position would have consider the information an employer-administrator allegedly misrepresented important in [making his decision.]." The Fifth Circuit also required the court to consider "'whether *the employee* knew or should have been aware of other information,'" which would involve individualized assessments.   *Id.* (emphasis added), *citing Martinez*, 338 F.3d at 428.   The *Electronic Data* court concluded, "Because recovery on their Misrepresentation Claim requires individualized proof of materiality and reliance, the

in similar contexts leads to the conclusion that such a claim will raise individual issues that predominate over common issues.   A plaintiff must establish reasonable and detrimental reliance upon a material misrepresentation to recover for breach of fiduciary duty based on misrepresentations."), *citing Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir. 1997); *Rogers v. Baxter*,, 2006 WL 794734 at *12.[24]

Nevertheless, a good portion of the breach of fiduciary and co-fiduciary duty claims do not rest on alleged representations made by Skilling and Lay to the plan participants:   instead they relate to the fiduciary duties of care, investigation, prudence, and diversification, retaining employer matching contributions in Enron stock, appointment of the Plan fiduciaries, failure to continually monitor those administering the plans, charges of disloyalty in acting in their own self-interest.   These claims are amenable to class treatment under Rule 23(b)(3).

---

Court finds that individual issues will predominate, and the claim is unsuited for class certification under Rule 23(b)(3)."   *Id.*

[24] The general rule of the Fifth Circuit is when individual reliance is an element of a claim, class certification is not appropriate.   *Electronic Data*, 224 F.R.D. at 630, *quoting Sandwich Chef, Inc. v. National Ins. Co.*, 319 F.3d 205, 219 (5th Cir. 2003)("Cases that involve individual reliance fail the predominance test."), *cert. denied*, 540 U.S. 819 (2003), and *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880, 882-83 (5th Cir. 1973)("If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action .").

Nevertheless, for reasons discussed below, because the Court certifies the classes under Rule 23(b)(1), if upheld by the Fifth Circuit, the failure to meet the predominance standard for reliance in misrepresentation and inducement claims is not relevant.[25]

Rule 23(b)(3) also mandates that a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3)(A)-(D) identifies four factors for the court to weigh in addressing the issue of superiority: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the

---

[25] The Court is aware that courts are divided about under which provision class actions asserting breach of fiduciary claims in ERISA actions similar to the one here should be certified. *See, e.g., Nelson v. IPALCO Enterprises, Inc.*, No. IPO2-477CHK, 2003 WL 23101792, *10-11 (S.D. Ind. Sept. 30, 2003)(finding certification under 23(b)(1) inappropriate because issues of individualized relief based on the existence of individual accounts and individual investment decisions and individualized issues of reliance and causation; also possibility of inconsistent results among claims of different members of proposed class). For classes certified under 23(b)(1) see *IKON Office Solutions*, 191 F.R.D. at 466; *In re Williams Companies ERISA Litig.*, 231 F.R.D. 416, 424-25 (N.D. Okla. 2005); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 545-46 (E.D. Mich. 2004); *Rankin v. Rots*, 220 F.R.D. 511, 523 (E.D. Mich. 2004); *In re Electronic Data Systems Corp. "ERISA" Litig.*, 224 F.R.D. 613 (E.D. Tex. 2004)(ERISA breach of fiduciary duty prudence claims certifiable under Rule 23(b)(1)(A) and (B)); *In re: ADC Telecommunications ERISA Litig.*, No. Civ. 03-2989ADMFLN, 2005 WL 2250782, *4-5 ( D. Minn. Sept. 15, 2005); 9 Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* Appendix II-B (4th ed. Nov. 2005).

litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." These factors are all clearly met here. The interest of individual class members in controlling prosecution of their claims is minimal because the claims are brought on behalf of the plans. At present there is no other litigation pending asserting these ERISA breach of fiduciary duty claims, but if the classes are not certified, there are likely to be thousands. Efficiency is clearly served here because Defendants' alleged course of conduct and fraudulent scheme affected the two plans and all their participants and beneficiaries, a class action avoids multiple individual actions and trials on the same liability issues, it is economically feasible and economically and judicially efficient for plan participants and beneficiaries, especially those with limited resources, to bring all the claims on behalf of the plans in one action in one forum, and the mandated plan-wide relief makes a class action the superior method to pursue. A class action would be fairer than individual actions before different judges in different fora. Because the claims will be tried to the bench, moreover, management is simpler.

Nevertheless this Court notes that there is strong precedent for the proposition that where a class is certifiable not only under Rule 23(b)(1) and/or Rule 23(b)(2), but also under Rule 23(b)(3), the court should certify it under (b)(1) or (b)(2). *See, e.g., Reynolds v. National Football League*, 584 F.2d 280, 284 (8th

Cir. 1978)("[W]hen the choice exists between (b)(1) and (b)(3) certification, generally it is proper to proceed under (b)(1) exclusively in order to avoid inconsistent adjudication or a compromise of class interests."), *citing inter alia Robertson v. National Basketball Assoc.*, 556 F.2d 682, 685 (2d Cir. 1977), and *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir, 1976); *see also Powell v. National Football League*, 711 F. Supp. 959, 969 (D. Minn. 1989).  In 2 *Newberg on Class Actions* § 4:20 (4th ed. 2005), the preference for class certification under Rule 23(b)(1) or (b)(2) over Rule 23(b)(3) is explained:

> [S]ubdivision (b)(3) is general so that it comprehends all class actions, and . . . subdivisions (b)(1) and (b)(2) represent specialized categories which clearly call for class action treatment.  The drafters of Rule 23 made significant distinctions between class actions certified under subdivisions (b)(1) and (b)(2) and those certified under subdivision (b)(3).  There is no mandatory notice to individual class members of the pendency of class actions certified under Rule 23(b)(1) or (b)(2), and class members in subdivisions (b)(1) and (b)(2) class actions do not have the right to opt out of the class action prior to a judgment on the merits [and thus avoid being bound by the judgment].

If actions certifiable under the first two subdivisions were certified under the general provision, (b)(3), which allows class members to opt out, "[t]his would permit the institution of separate litigation, thus unduly burdening the judicial system and directly contravening both the stated purpose of Rule 23(b)(1)(A) in protecting defendants against 'inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party

opposing the class' and the stated purpose of Rule 23(b)(1)(B) in protecting plaintiffs against 'adjudications with respect to individual members of the class which as a practical matter would be dispositive of the interest of other members . . . or substantially impair or impede their ability to protect their interests.'" *Id.*, *quoting Van Gemert v. Boeing Co.*, 259 F. Supp. 125, 130-31 (S.D.N.Y. 1966).

For all these reasons, the Court concludes that the two classes should be certified under Rule 23(b)(1).[26]

---

[26] As indicated, the Court finds certification under Rule 23(b)(1)(A) and (B) appropriate. This Court observes that the nature of Plaintiffs' breach of fiduciary duty claims relate to a common course of conduct by each of the Defendants that applies to the class as a whole, across the board, and that Plaintiffs seek relief on behalf of the Plans, not for individual claims. Nevertheless there is a line of cases that disagrees. These courts, agreeing that this Court's rationale is the best explanation for certifying breach of fiduciary duty claims under ERISA under Rule 23(b)(1), conclude that Rule 23(b)(1)(A)(allowing certification of a class where suits by individual members might result in inconsistent or varying judgments) does not apply to actions seeking compensatory damages, but only to cases seeking injunctive and declaratory relief. *See, e.g., In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545 (11th Cir. 1987)(and cases cited therein); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 n.7 (11th Cir. 2000), *cert. denied*, 531 U.S. 957 (2000); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001)(certification under Rule 23(b)(1)(A) is not appropriate in an action for damages), *amended and superseded on other grounds*, 273 F.3d 1266 (9th Cir. 2001); *Nelson v. IPALCO Enterprises, Inc.*, No. IPO2-477CHK, *10-11 (S.D. Ind. Sept. 30, 2003)("Rule 23(b)(1) may apply where the final decisions on the merits for all class members will be the same. The existence of the individual accounts and individual investment decisions, however, means that the correct decisions for different class members may be different. There are individual issues of reliance and causation, as well as some individual issues presented by affirmative defenses. The case therefore fits the profile for Rule 23(b)(3), which requires opt-out rights as well as a showing that common issues predominate and

that a class action is the superior method for resolving all claims.").

But see *Turner v. Bernstein*, 768 A.2d 24, 32 (Del. Ch. 2000)(" . . . Rule 23(b)(1) 'clearly embraces cases in which the party is obliged by law to treat the class members alike . . . [,]' including claims seeking money damages. In such cases 'the class members by definition have highly similar interests and generally are seeking damages and the enforcement or prohibition of some course of conduct by the opposing party that affects all of them much the same way. As a result, basically only one recovery is sought and the determination of the overall amount and the sum due each class member is not difficult.'")(*citing* 7A Charles Alan Wright, Arthur R. Miller, & Mary Kane, *Federal Practice and Procedure* §§ 1772 at 421-26, 1773 at 433-34, and 1789 at 41 (1986 and 2000 Supp.)). It is not the case in *Tittle* that a defendant would be found liable to some plaintiffs and not to others because they have been treated identically by the alleged breach of fiduciary duty, what one court referred to as "a defendant . . . provid[ing] unitary treatment to all members of the putative class." *Bunnion v. Consolidated Rail Corp.*, No. CIV. A. 97-4877, 1998 WL 372644, *13 (E.D. Pa. May 14, 1998). As noted 23(b)(1)(A) avoids possible prejudice to defendants while (b)(1)(B) avoids possible prejudice to potential class members. Because ERISA authorizes only plan-wide relief for breach of fiduciary duty claims, if a class is not certified, future plaintiffs might have no remedy; and inconsistent or contrary rulings on key issues, such as whether a defendant was a fiduciary or whether it breached its fiduciary duty, by different courts would prejudice the defendants. Moreover certification under Rule 23(b)(1) does not make obsolete subsection (b)(3). The Advisory Committee Note to Rule 23, "In the degree there is cohesiveness or unity in the class and the representation is effective, the need for notice to the class will tend toward a minimum." The difference in procedural safeguards (notice and opportunity to opt out) between (b)(1) and (b)(3) reflects the difference in cohesiveness and homogeneity of interests in the classes; (b)(3) reaches a class of members with divergent interests seeking monetary remedies related to disparate merits of their individual claims who might wish to pursue their claims in individual lawsuits, and thus are provided with notice and opt-out rights; while (b)(1) protects plaintiffs and defendants where the conduct of the defendant affects the putative class members as a whole and individual questions of reliance or causation are not divergent.

Should this opinion and order be appealed and should it be reversed by the Fifth Circuit for certifying the two classes under Rule 23(b)(1), this Court would find that the two *Tittle* classes are certifiable under Rule 23(b)(3) because common issues

Accordingly, for the reasons indicated above, the Court overrules the objections and

GRANTS *Tittle* Plaintiffs' motion for class certification. The following two classes are certified as to Counts I, III, and V of Plaintiffs' Second Amended and Consolidated Complaint (#667) pursuant to Fed. R. Civ. P. 23(a) and (b)(1):

(1) The Savings Plan Class, defined as "The Enron Corp. Savings Plan ('The Savings Plan' or the '401K Plan') and all participants and beneficiaries who held beneficial interest in Enron stock purchased or held by the Savings Plan during the period from January 20, 1998 through December 2, 2001"; and

(2) "The ESOP Class," defined as "The Enron Corp. Employee Stock Ownership Plan (the 'ESOP') and all participants and beneficiaries who held beneficial interest in Enron stock held by the ESOP who are or were participants or beneficiaries of the ESOP during the period from January 20, 1998 through December 2, 2001."

The Court further

---

predominate over individual ones (e.g., were Defendants fiduciaries, did they breach fiduciary duties, did they fail to provide information to plan participants, did they fail to monitor plan fiduciaries, etc.) and a class action is a superior method for adjudication, as discussed in the text. Nevertheless, as indicated, the claims based on misrepresentation and inducement would not be amenable to class treatment because of individualized issues relating to reliance.

ORDERS that the proposed class representatives shall serve as such for their respective classes, and that Steve W. Berman of Hagens Berman LLP and Lynn Lincoln Sarko of Keller Rohrback LLP shall serve as Co-Lead Counsel for Plaintiffs, assisted by other lawyers and firms listed in this Court's Order Appointing Lead Counsel, dated February 25, 2002 (#105).

**SIGNED** at Houston, Texas, this 7th day of June, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE