IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENRON CORP. SAVINGS PLAN, f/k/a | § | |
| ENRON CORP., an Oregon | § | |
| Corporation, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| HEWITT ASSOCIATES, L.L.C., | § | CIVIL ACTION NO. H-01-3913 |
| | § | |
| Defendant. | § | |
| | § | |
| PAMELA M. TITTLE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | |
| | § | |
| ENRON CORP., et al., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court in H-01-3913 *inter alia* is Plaintiffs Enron Creditors Recovery Corp. ("Enron") and the Administrative Committee of the Enron Corp. Savings Plan's ("Administrative Committee's)(collectively, "Plaintiffs'") motion to compel production of documents (#1420) responsive to Plaintiffs' June 10, 2008 requests for production.

Three cases (H-07-4081, H-08-1894, and H-08-2699), arising out of the dispute between Enron and Hewitt Associates, L.L.C. ("Hewitt") over Hewitt's role in the miscalculations that resulted

-1-

in an incorrect distribution of settlement funds to the *Tittle* beneficiaries, have been consolidated into *Tittle*, H-01-3913, in which original proceedings relating to the miscalculation first occurred.  Plaintiffs have filed a First Amended Complaint (duplicatively filed as #1428 and 1433), alleging various breach of contract, negligence and gross negligence claims, some in the alternative, against Hewitt.  The Court has diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as well as ancillary jurisdiction and jurisdiction under the All Writs Act, 28 U.S.C. § 1651, over this matter.

**I.  Enron and the Administrative Committee's Motion to Compel**

**A.  Plaintiffs' Contentions**

Plaintiffs assert that they served their First Request for Production of Documents (Ex. B to #1420) on Hewitt on June 10, 2008.  Under Fed. R. Civ. P. 34(b), Hewitt was required to serve written responses and objections to Plaintiffs' document requests within thirty days after being served with the request for production of documents, i.e., by July 10, 2008.  Under the Rule, Hewitt's failure to do so results in waiver of its objections, unless the court excuses that failure for good cause.  *See, e.g., Jones v. Tex. Youth Commission*, No. 9:07CV3, 2007 WL 4290000, *1 (E.D. Tex. Dec. 3, 2007)(Under Rule 34(b),[1] "[i]f the responding

---

[1]  Under Rule 34(b)(2)(A), if served with a request for production of documents, a party "must respond in writing within 30 days after being served.  A shorter or longer time may be

party does not plan to comply [with a request for production under
Rule 34], it must state the objection in a timely manner; otherwise
objections are waived."); *In re United States*, 864 F.2d 1153, 1156
(5th Cir. 1986)(the "general rule" is that when a party fails to
object timely to production requests, "objections thereto are
waived"); *Ordoyne v.McDermott, Inc.*, No. Civ. A. 99-3456, 2000 WL
1154616, *1 (E.D. La. Aug. 14, 2000)("Generally, in the absence of
an extension of time or good cause, the failure to file a written

_____

stipulated to under Rule 29 or be ordered by the court."
Furthermore, "[f]or each item . . ., the response must either state
that inspection and related activities will be permitted as
requested or state an objection to the request, including the
reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection to part of
a request must specify the part and permit inspection of the rest."
Fed. R. Civ. P. 34(b)(2)(C). Unlike Rule 33, which addresses
interrogatories, Rule 34 does not expressly state that the
responses and objections must be stated with specificity and be
timely or they are waived unless excused by the court for good
cause; nevertheless courts have found the procedures under both to
be the same. *See, e.g.,* 8A Charles Alan Wright, Arthur R. Miller,
and Richard L. Marcus, *Federal Practice & Proc. Civ. 2d* § 2204 (2d
ed. 1994)("the discovery rules constitute an integrated mechanism
and they must be read *in pari materia*."). *See also McLeod,
Alexander, Powell and Apffel v. Quarles*, 894 F.2d 1482, 1485 (5th
Cir. 1990)(With respect to required specificity, "We see no reason
to distinguish the standards governing responses to interrogatories
from those that govern responses to production requests."); *Hall v.
Sullivan*, 231 F.R.D. 468, 473-74 (D. Md. 2005)(holding that
"implicit within Rule 34 is the requirement that objections to
document production requests must be stated with particularity in
a timely answer, and that failure to do so may constitute waiver of
grounds not properly raised, including privilege or work product
immunity unless the court excuses this failure for good cause
shown."); *Drexel Heritage*, 200 F.R.D. at 258 ("although the plain
language of Rule 34 does not expressly provide for waiver when
objections are not stated, "Rule 34, like Rule 33(b)(4), requires
the reasons for objections to be explicitly stated. Therefore the
Court finds the waiver to be an implicit one.").

response in the time fixed by the rule constitutes a waiver of any objection.")(and the cases cited therein).

On July 10, 2008, Hewitt's attorney, Gregory J. Casas, faxed a one-paragraph letter (Ex. C to #1420) to Enron's attorney, Tynan Buthold, stating,

> As you know, Hewitt's Responses and Objections to the Plan's discovery would be due today. However, Hewitt has filed its Motion for Protective Order[2] and the Court has yet to rule on that Motion. While the Motion is pending, Hewitt will not respond to The Plan's discovery. Hewitt hereby reserves its rights to assert any and all objections to the Plan's discovery to Hewitt. Hewitt will fully assert those objections if ordered by the Court to respond to the pending discovery. Please contact me if you have any questions.

*Id.*

On July 18 and August 1, 2008, each of Plaintiffs' attorneys sent a letter to Hewitt reminding Hewitt of its obligation to respond. Exs. D and E to #1420. Plaintiffs informed Hewitt that its July 10th one-paragraph letter was insufficient to override the requirements of Federal Rules and that under relevant case law its filing of a motion for protection did not excuse it from its discovery obligations. Plaintiffs' attorneys, citing case law,

---

[2] Hewitt had filed a motion to quash discovery and motion for protective order (#26 in H-07-4081) on June 20, 2008, requesting "that the Court postpone Plaintiffs' Written discovery until after the Court has ruled on Hewitt's Motion to Dismiss" for lack of subject matter jurisdiction. The Plan responded (#28) on July 1, 2008, and Hewitt filed a Reply (#29) on July 3, 2008. On August 29, 2008, the Court denied the motion to dismiss and mooted the motion to quash and motion for protective order. #31 in H-07-4081, #1392 in H-01-3913.

also admonished Hewitt that a refusal to respond would constitute a waiver of any and all objections to Plaintiffs' discovery requests, including objections based on the attorney-client privilege. Ex. E. *See, e.g., Cleveland Indians Baseball Co. v. United States*, No. 96-CV-2240, 1998 WL 180623, *4 (N.D. Oh. Jan. 28, 1998)(The general rule of waiver for untimely objections "applies with equal force to all objections, including those based on attorney-client privilege or attorney work product"); *Compaq Computer Corp. v. Ergonome, Inc.*, No. Civ. A. H-97-1026, 2000 WL 345903, *1, 3 (S.D. Tex. Mar. 15, 2000)(finding waiver of untimely attorney-client privilege objections).  Plaintiffs maintain that Hewitt's conclusory statement that it has "reserve[d] its right to assert any and all objections to the Plan's discovery to Hewitt" (Ex. C) will not preserve any potential objections, as Plaintiffs informed Hewitt.  They also note that objections under Rule 34 must be specific. *McLeod, Alexander, Powell and Apffel v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).  Plaintiffs contend that Hewitt has not met that standard and has not preserved any objections to Plaintiffs' production requests.  Plaintiffs filed their motion to compel on October 29, 2008.

In response, in a letter dated July 25, 2008, Hewitt insisted that federal law allowed it not to respond to discovery requests where it had a pending motion for protective order and that a stay of discovery was proper where a dispositive motion raising purely

legal issues is pending before the court.  Ex. F, citing Fed. Rule Civ. P. 37(d)[3]; *Feist v. Jefferson County Commissioner Court*, 778 F.2d 250, 252 (5th Cir. 1985)(affirming district court decision to stay discovery until it could be determined whether the plaintiff stated claim upon which relief could be granted).  Plaintiffs disagree and maintain that the mere filing of a motion for protective order is insufficient to stay discovery and to preserve Hewitt's objections to the document production requests. *See, e.g., Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979)(pending motion for protective order did not excuse party's noncompliance with deposition notice); *Versage v. Marriott Intern., Inc.*, No.

---

[3] Fed. Rule Civil P. 37(d)(1)(A)(ii) provides that generally, "The court . . . may, on motion, order sanctions if . . . a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answer, objections, or written response."  Rule 37(d)(2) states, "A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, **unless the party failing to act has a pending motion for protective order under Rule 26(c)** [emphasis added by the Court].").

Plaintiffs object that Rule 37(d) addresses only Rule 37(b) discovery sanctions, which Plaintiffs are not seeking.  Rule 37 does not modify the deadline for responding to document requests or allow a party to satisfy its burden of response simply by filing a motion for a protective order.  Plaintiffs note that Hewitt cites no authority for its claim that Rule 37(d) preserves objections not timely made.

The Court notes that Rule 37(b) sanctions "can be imposed without an existing order to compel." *McLeod*, 894 F.2d at 1485. In *McLeod*, *id.*, the Fifth Circuit concluded,

> In general, where a party has received adequate notice that certain discovery proceedings are to occur by a specific date, and that party fails to comply, a court may impose sanctions without a formal motion to compel discovery from the opposing party.

6:05-cv-974-Orl-19JGG, 2006 WL 3614921, *7 (M.D. Fla. 2006)("The law is well established that the filing of a motion for protective order does not operate as an automatic stay of discovery.").

On September 29, 2008, 82 days after Hewitt's responses were due, Hewitt faxed a document entitled "Hewitt Associates, L.L.C.'s Response to Plaintiffs' First Requests for Production of Documents," but Plaintiffs complain that it was not accompanied by any document production and it did not state when Hewitt would begin producing documents. Ex. G. As of the date Plaintiffs filed their motion to compel, October 29, 2008, Plaintiffs had not received any documents from Hewitt.

Furthermore, Plaintiffs argue that Hewitt cannot demonstrate good cause for its delay in responding to Plaintiffs' document requests, so a finding of waiver is appropriate. *See, e.g., Paralikas v. Mercedes Benz, LLC*, No. CV 07-0918(ERK)(WDW), 2008 WL 111186, *1 (E.D.N.Y. Jan. 9, 2008)("In cases where, as here, no good cause has been shown for late response, a finding of waiver is appropriate."; *Doe v. District of Columbia*, No. Civ. A. 03-1789 (GK/JMF), 2005 WL 1787683, *5 (D.D.C. July 5, 2005)(same). Hewitt's two-and-a-half month delay is longer than others that have been held to justify waiver by the Fifth Circuit *See, e.g., Ordoyne*, 2000 WL 1154616 at *1 (finding waiver of objections where party responded twenty-two days late); *Felham Enters. (Cayman) Ltd. v. Certain Underwriters at Lloyd's*, No. Civ. A. 02-3588, 2004 WL

2360159, *2-3 (E.D. La. Oct. 19, 2004)(finding waiver of attorney-client and attorney work product privilege where objections were raised one month late); *Maloney v. Universalcom., Inc.*, No. Civ. A. 00-529, 2001 WL 8589, *1 (E.D. La. Jan. 3, 2001)(objections raised 45 days after response date were waived).  Plaintiffs charge Hewitt with deliberately ignoring the deadline for response, despite reminders and warnings from them.  They insist that Hewitt cannot claim inadvertence or good cause for its delay.

Plaintiffs also assert that Hewitt's failure to answer the document requests for more than three months is part of a broader pattern of delay, further warranting a finding of waiver here. *Compaq Computer Corp. v. Ergonome, Inc.*, No. Civ. A. H-97-1026, 2000 WL 345903, *3 (S.D. Tex. 2000).  Despite Hewitt's express admission in open court that it was responsible for misallocation of $22 million of the *Tittle* Plan assets,[4] Plaintiffs charge that Hewitt has tried to delay this action by raising unfounded jurisdictional objections and refusing to participate in discovery

_____

[4] Ex. A, Transcript of Proceedings, July 27, 2007, at pp. 18-20, Mr. Boies on behalf of Hewitt stated, [W]e're all here this afternoon because of a mistake my client [Hewitt] made."  He explained,

> What happened was that Hewitt's computer system--there was a flaw in old software; and rather than using the actual market price on January 1, 1998, the defect in the system took that price to what computer people call a default price, Your Honor.  It's not the actual price. It goes to--in this case I think it was $100 price, which is a plug figure.  Defect in the system.  Our mistake. We accept the responsibility for that.

until the Court had ruled on its objections.  In July 2007 Hewitt argued that this Court lacked personal jurisdiction over Hewitt to issue orders in connection with the *Tittle* settlement despite the fact that Hewitt allegedly served as Fund Administrator for the first tranche of the *Title* settlement of approximately $89 million, which was distributed in August and September of 2006 under the auspices of this Court; Hewitt collected more than $900,000 for its work as Fund Administrator; Hewitt maintains a permanent office complex in the Woodlands; and it used mostly Texas-based employees to perform the challenged allocation.  After the Court ruled that it did have personal jurisdiction over Hewitt, Hewitt argued that the Court lacked subject matter jurisdiction and refused to participate in discovery until the Court ruled against it on that issue.  Even then, Hewitt continued to delay producing documents. Plaintiffs urge the Court to find that Hewitt has waived all objections to Plaintiffs' document request.

Not only are Hewitt's objections untimely and thus waived, but many are unfounded, argue Plaintiffs.  Some responses suggest that Hewitt may be withholding responsive documents.  Thus if the Court denies their motion to compel, Plaintiffs urge the Court alternatively to overrule the objections in Exhibit G and require Hewitt to produce responsive documents.  They point to particular responses from Hewitt as meritless (#5, 6, 8, 15 and 16, 32, 36, 41 and 42, 44, and 45).  #1420 at 8-12.

**B.  Hewitt's Objections**

In response to the motion to compel, Hewitt asserts that Rule 37(d) states that a party's failure to answer discovery is excused if "the party failing to act has a pending motion for a protective order as provided by Rule 26."  Hewitt charges that it is Plaintiffs, not Hewitt, that have misconstrued the Rule when they argue that Rule 37(d) relates only to Rule 37 discovery sanctions, which they are not seeking here.  *Badalamenti v. Durham's Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990)("The plain terms of the rules of civil procedure show that a party served with a document request has four options:  (1) respond to the document request by agreeing to produce documents as requested (Fed. R. Civ. P. 34(b)); (2) respond to the document request by objecting (Fed. R. Civ. P. 34(b)); (3) move for a protective order (Fed. R. Civ. P. 26(c) and 37(d)); or (4) ignore the request."[5]).

Hewitt further asserts that Plaintiffs have provided no legal authority for the proposition that Hewitt waived its objections by filing a motion for a protective order.  Plaintiffs' cited cases are largely instances where the party opposing discovery did not answer within 30 days and did not move for a protective order.  *See*

---

[5] This Court highlights the fact that Hewitt fails to add the following two sentences in *Badalamenti*, which on their face support Plaintiffs' arguments that Rule 37(d) applies only to discovery sanctions: "If the party chooses the last option, he is subject to sanctions under Rule 37(d).  However, if the party responds to the document request, even if he responds by objecting, Rule 37(d) sanctions are not available."

*e.g., In re United States* and *Ordoyne*, which deal with appearance at a deposition, which, unlike a request for document production, is subject to Rule 30(b)(Placing the burden on proposed deponent to get an order, not just make a motion for a protective order.); *Hepperle*, 590 F.2d at 613 (also for noticed deposition and Rule 30(b) burden).

Not only do Plaintiffs have no legal support for their waiver argument, urges Hewitt, but their tactical request is patently unfair, since the first time they raised waiver as an issue was on October 29, 2008,[6] four months after the document request was made. Hewitt maintains that Plaintiffs were aware of Hewitt's discovery plan before the July 10, 2008 deadline, and they did not raise the waiver issue in their response to Hewitt's motion to quash discovery and motion for protective order, nor did they request guidance from the Court on the question.

Finally, Hewitt insists that its objections to the document request that were singled out by Plaintiffs, and which Hewitt goes over one by one, are meritorious.  It concludes that the Court should deny Plaintiffs' entire motion because Hewitt has produced the documents to which Plaintiffs are entitled and Plaintiffs have no legal support for their last-minute effort to deprive Hewitt of its proper discovery objections to the Plan's improperly broad

---

[6] This Court notes that the general rule regarding failure to respond to discovery requests results in waiver is well established and Hewitt should not need to be warned.

document requests.

## C.  Court's Ruling

### 1.  Waiver

There is substantial legal precedent supporting the general rule that if a party fails to respond in writing within thirty days of being served with a request for production of documents, it is appropriate for the court to find that the party's objections are waived, unless the court finds good cause and excuses that failure. *See, e.g., In re United States*, 864 F.2d at 1156 (The Fifth Circuit stated, "We readily agree with the district court that as a general rule, when a party fails to object timely to interrogatories, production requests or other discovery efforts, objections thereto are waived."); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, Civ. No. H-07-2426, 2008 WL 2036816, *5 (S.D. Tex. May 9, 2008)(and cases cited therein).  "'Any other result would . . . completely frustrate the time limits contained in the Federal rules and give license to litigants to ignore the time limits for discovery without any adverse consequences." *RE/MAX, id., quoting Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988), *quoting Slauenwhite v. Bekum Maschinenfabriken, GMBH*, 35 F.R. Serv. 2d 975 (D. Mass. 1983).

Nevertheless, waiver is not automatic; this Court has discretion to determine whether good cause exists to preclude waiver.  One factor frequently considered is whether the party that

-12-

failed to object timely to the request for production of documents acted in bad faith. *See, e.g., RE/MAX*, 2008 WL 2036816, at *5 ("Courts examine the circumstances behind the failure to file a timely response to determine 'whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance'; consider subsequent actions by the party to ascertain whether 'it was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner'; and take into account any resulting prejudice and the need to preserve the integrity of the rule; and may consider any lesser appropriate sanction. [citations omitted]"); *Scaturro v. Warren and Seat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995)("Rule 34 does not by its terms provide that objections will be deemed waived; rather a waiver appears to be more in the nature of a sanction for egregious conduct."); *Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 (D.C. Ill. 2001)("Acknowledging the harshness of a waiver sanction, courts have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver."). Indeed, one court has established a multifactor test, cited by a number of other courts, for determining whether good cause exists and waiver should be denied: "(1) the length of the delay or failure to particularize; (2) the reason for the delay or

failure to particularize; (3) whether there was any dilatory or bad faith action on the part of the party that failed to raise the objection properly; (4) whether the party seeking discovery has been prejudiced by the failure; (5) whether the document production request was properly framed and not excessively burdensome; and (6) whether waiver would impose an excessively harsh result on the defaulting party." *Hall v. Sullivan*, 231 F.R.D. at 474.  Regarding the fifth factor, the court noted that it may be "assisted by the cost-benefit balancing factors identified in Rule 26(b)(2)." *Id.* at n. 2.

The requirement that a written response to requests for production includes the assertion of any objections in a proper manner and appropriate documents.  *See, e.g., Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 542 (10th Cir. 1984)("[T]he applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the documents.")  As noted, Plaintiffs claim Hewitt's Response was totally inadequate and accompanied by no documents, and Hewitt failed to supplement that Response by the time Plaintiffs filed their motion to compel on October 29, 2008.  Rule 34(b) not only requires a party upon whom a request for production is propounded to respond in writing within 30 days, but it also requires that response to "state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is

-14-

objected to, in which event the reasons for the objection shall be stated."

Plaintiffs have raised the issue of a pattern of delay and obstruction by Hewitt.  In *RE/MAX*, the court observed,

> Courts examine the circumstances behind the failure to file a timely response to determine "whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance"; consider subsequent actions by the party to ascertain whether "it was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner"; and take into account any resulting prejudice and the need to preserve the integrity of the rules; and may consider any lesser appropriate sanction."

2008 WL 2036816 at *5, *citing Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 258 (M.D.N.C. 2001), and *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 346 F.R.D. 522, 526 (S.D. W. Va. 2007).

The Court finds that while Enron may justifiably believe that Hewitt has not been cooperative in this dispute, Hewitt does have the right to defend itself and present defenses and claims as the law permits, and it has done so.

In essence, Hewitt argues that its pending motion for protection excused its failure to respond and object to Plaintiffs' request for documents until after the Court ruled on its motion to dismiss.  There is a dearth of law addressing the issue and what exists is not clear on the issue.  In *Perry v. Golub*, 74 F.R.D. 360, 363 (D. Ala. 1976), the court ruled that the defendants' motion for protective order "does not alter the

situation ["that the defendants' failure to file timely objections to the Request for Production constituted a waiver of the objections"], since Rule 34 required that the point be raised by timely objections."), *quoting* 4A Moore's Federal Practice P 37.02, at 36-37 (2d ed. 1975)("The party served with the request must respond to it within the time limits set forth in the Rule, or object, stating the reasons for the objection.").  While it is obvious that moving for a protective order is an option in response to a request for document production, it is not as certain that mere pendency of such a motion constitutes good cause to avoid an obligation to respond timely in writing to the discovery request. *See* 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice & Proc. Civ. 2d* § 2213 at n.10, pointing out that

> the Advisory Committee Note to the 1970 amendment of Rule 34(b) says that the discussion in the note appended to Rule 33 is relevant to Rule 34 as well. 4, F.R.D. at 527. The note to Rule 33 says in part:  "As is true under existing law, the responding party who believes that some parts or all of the interrogatories are objectionable may choose to seek a protective order under new Rule 26(c) or may serve objections under this rule."

*Id., citing* Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 522 (West 1969 and 1970).  The Advisory Committee Notes to the 1993 Amendments to Rule 37(d) appear to require that the movant obtain an actual protective order from the court before it is relieved of its obligation to respond and object timely state,

-16-

> The last sentence of this subdivision is revised to clarify that it is the pendency of a motion for protective order that may be urged as an excuse for a violation of subdivision (d).  If the party's motion has been denied, the party cannot argue that its subsequent failure to comply would be justified.   In this connection, it should be noted that the filing of a motion under Rule 26(c) is not self-executing--the relief authorized under that rule depends on obtaining the court's order to that effect.

*See also* 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice & Proc. Civ. 2d* § 2037 at 492.  Hewitt's motion for protection, as noted, was unsuccessful; it failed to obtain a protective order.

Courts have substantial discretion in deciding when objections should be deemed waived.  Moreover, there is also a split among courts whether claims of privilege that are not timely asserted are waived.  *See, e.g., Ayers v. Continental Casualty Co.*, 240 F.R.D. 216, 222-23 (N.D. W. Va. 2007)(and cases cited therein); the Honorable William S. Duffy, Jr. and Jason E. Stach, "When must the interrogatories be answered?," 3 Bus. & Com. Litig. Fed. Cts. § 23:20 (2d 3d.).  Some have found they are automatically waived if not timely presented.  *See, e.g., Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005)(and cases cited therein).  Others weigh the particular circumstances and determine whether waiver is fair.  *Hall*, 231 F.R.D. at 474 (six- factor test for determining good cause); *Drexel Heritage*, 200 F.R.D. at 259; *Frontier-Kemper*, 246 F.R.D. at 526.  Egregious or flagrant conduct evidencing bad faith is significant in some courts' view.  *See,*

-17-

*e.g., Scaturro v. Warren and Sweat Mfg. Co., Inc.*, 160 F.R.D. 44, 46 (M.D Pa. 1995); *Day v. Boston Edison Co.*, 150 F.R.D. 16, 22 (D. Mass. 1993)(holding waiver of right to object on grounds of self-incrimination under Fifth Amendment where party engaged in "procedural gamesmanship and dilatory tactics).

The Court does not find evidence demonstrating that Hewitt has acted in egregious bad faith, nor that Plaintiffs were gravely prejudiced.  Furthermore, Hewitt's "Response to Plaintiff's First Requests for Production of Documents," faxed to Plaintiffs on September 29, 2008, was served within thirty days of the Court's denial of the motion for protective order on August 29, 2008. Given the harshness of a finding of waiver based on solely on untimeliness (about three months) and in light of the lack of clarity in the law about the effect of a pending motion for protective order, this Court is reluctant to impose such a sanction based on bad faith under these circumstances.

Nevertheless, even though Hewitt's Response was filed within thirty days of the denial of a protective order, given the amount of time that elapsed since service of the request for production (June 10, 2008), Hewitt's Response should have been adequately informative as well as sufficiently specific to comply with black letter law regarding responses and objections.

Thus the Court examines the relevant law and the adequacy of Hewitt's responses and objections to those requests for production

that are challenged by Plaintiffs.

As a general matter, Rule 26(b)(1) provides for two types of discoverable information:

> unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter  that is relevant to the claim or defense of any party. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.   Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.   All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

While the Federal Rules of Procedure do not define "relevant," courts turn to the definition in Federal Rule of Evidence 401: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   "'Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party, [citations omitted]'" *Merrill v. Waffle House, Inc,*, 227 F.R.D. 467, 470 (N.D. Tex. 2005).  The party resisting discovery bears the burden to clarify and explain its objections and to provide support for those objections.  *Id.* at 470-71, *also citing Scott v. Leavenworth Unified School District No. 453*, 190 F.R.D. 583, 585 (D. Kansas 1999)("When the discovery sought appears relevant, the party resisting discovery has the

burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance and defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.").

"[B]oilerplate objections are not acceptable"; "specific objections are required in responding to a Rule 34 request." *Frontier-Kemper*, 246 F.R.D. at 528, *citing* Rule 33(b)(4)'s requirement that an objection be "stated with specificity." The Fifth Circuit requires that "the 'party resisting discovery 'must show specifically how . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive.''" *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)(holding that objections to document requests on the ground that they were "overly broad, burdensome, oppressive, and irrelevant" were insufficient)(citations omitted); *S.E.C. v. Brady*, 238 F.R.D. 429, 436. (N.D. Tex. 2006)("The burden is on the 'party who opposes its opponent's request for production to 'show specifically how . . . each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive.").  "In order to satisfy its burden, the objecting party must make a specific, detailed showing of how a request is burdensome. . . . A mere statement by a party that a request is 'overly broad and unduly

-20-

burdensome' is not adequate to voice a successful objection. . . . Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request. . . . 'A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.' [citations omitted]" *Brady*, 238 F.R.D. at 437.

Hewitt asserts two privileges in its responses to the requests for production of the documents:  the attorney client privilege and the work product doctrine (Fed. R. Civ. P. 26(b)(3).  Pursuant to Rule 26(b)(5), as amended in 1993 and 2008, provides,

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (1) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

"The parties resisting discovery by asserting any privilege bear the burden of proof sufficient to substantiate their privilege claims and cannot rely merely on a blanket assertion of privilege.' *Coldwell Banker Real Estate Corp. v. Danette O'Neal*, Civ. A. 06-2525. 2006 WL 3845011, *1 (E.D. La. Dec. 29, 2006).

The attorney-client privilege "protects from disclosure

-21-

confidential communications made to obtain a lawyer's professional advice and assistance." *Brady*, 238 F.R.D. at 438. *See also Kansas City Southern Railway Co. v. Nichols Construction Co., L.L.C.*, Nos. 05-1182, et al., 2007 WL 1792352, *1 (E.D. La. June 20, 2007)("The attorney-client privilege shields 'communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from lawyer to the client, at least if they would tend to disclose the client's confidential communications.'"), *quoting Hodges, Grant & Kauffmann v. U.S. Gov.*, 768 F.2d 719, 720-21 (5th Cir. 1985). The party invoking the privilege bears the burden of establishing the applicability of the privilege. *Kansas City*, 2007 WL 1792352, *1, *citing Hodges Grant,* 768 F.2d at 721, and *U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982), *cert. denied*, 466 U.S. 94 (1984). Whether the privilege applies "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *Hodges, Grant*, 768 F.2d at 721.

The elements of the attorney client privilege are as follows: "(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except that the protection be waived." *El Paso*, 682 F.2d at 538, *citing*

-22-

8 J. Wigmore Evidence § 2292, at 554 (J. McNaughton rev. 1961). The Fifth Circuit has "made clear that the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents. . . [but] must be specifically asserted with respect to similar documents." *Id.* (and cases cited therein).

In diversity actions, federal courts apply the law of the forum state to resolve claims of attorney-client privilege. Fed. R. Civ. P. Evid. 501[7]; *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *In re Avantel, S.A.*, 343 F.3d 311, 318 n.6 (5th Cir. 2003). Texas Rule of Evidence 503 prevents discovery of the confidential communications between the client and his attorney. The privilege protects the complete communication between the attorney and his client, including legal advice and factual information. *Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 589 (Texas App.--Dallas 1994). The communication must be confidential and between qualified persons (the attorney, the client, and their representatives), and for the purpose of assisting in the provision of legal services. Tex. R. Evid. 503(b). No presumption of privilege exists under Texas law; the party asserting the privilege must demonstrate its application. *In*

---

[7] Federal Rule of Evidence 501 provides that where state law supplies the rule of the decision, as in a diversity jurisdiction case, the "privilege of a witness, person, government, State, or political sub-division thereof shall be determined in accordance with State law." Thus Texas law of privilege applies here. *In re Avantel*, 343 F.3d at 318 & n.6.

*re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 225 n.3 (Tex. 2004).  The documents, themselves, may provide a *prima facie* showing of attorney-client or work product privilege, *Id.* at 223.

When corporate employees communicate with counsel for their corporation pursuant to instructions from corporate superiors for the purpose of obtain legal advice from that attorney, such communications are protected by the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981); *U.S. v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982). *cert. denied*,466 U.S. 94 (1984).  The privilege does not protect against discovery of underlying facts from their source simply because those facts have been communicated to an attorney.  *Upjohn*, 449 U.S. at 395-96.

If the court decides that the attorney-client privilege applies, the courts do not reach the question whether the work product doctrine applies.  *Upjohn Co. v. U.S.*, 449 U.S. 383, 397 (1981); *Swidler & Berlin v. United States*, 524 U.S. 399, 401 n.1 (1998)("Because we sustain the claim of attorney-client privilege, we do not reach the claim of work product privilege.").

The district court in *Ferko v. National Association for Stock Car Auto Racing Inc.*, 218 F.R.D. 125, 136 (E.D. Tex. 2003), explains,

> The work-product doctrine provides qualified protection of documents and tangible things prepared in anticipation of litigation, including "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir, 1991) . . .

.   The party who asserts work-product protection must show that the materials warrant work-product protection. *Hodges, Grant & Kauffmann v. United States*, 768 F.2d 719, 721 (5th Cir, 1985).  Four elements must be established. First, the materials must be documents or tangible things.   8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure § 2024, at 336 (2d ed. 1994).* Second the materials must be prepared in anticipation of litigation for trial.   In other words, the party had reason to anticipate litigation and "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000)(citation and footnote omitted. Third, the materials must be prepared by or for a party's representative.  Fed. R. Civ. P. 26(b)(3).  Fourth, if the party seeks to show that material is opinion work-product, that party must show that the material contains mental impressions, conclusion, opinions or legal theories of an attorney or other representative of a party.  *Id.; see In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982).

*Id.; see also Brady*, 238 F.R.D. at 441.   The Fifth Circuit emphasizes what it calls the "primary purpose" test.   *In re Kaiser Aluminum and Chem. Co.*, 215 F.3d at 593 ("The law of our circuit is that the privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid possible future litigation.'"), *citing El Paso*, 682 F.2d at 542, *quoting United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

Ordinarily, the work product privilege applies only to "documents and tangible things that are prepared in anticipation of litigation or for trial."   Fed. R. Civ. P. 26(b)(2)(A). Nevertheless, under Fed. R. Civ. Proc. 26(b)(3)(A)(ii), these materials are discoverable if "the party shows that it has

substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Furthermore, "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  This more protected type of work product has been categorized separately as "opinion work product," as opposed to "ordinary work product," by a number of courts.  *Brady*, 238 F.R.D. at 442 (and cases cited therein).  The Fifth Circuit notes that "some courts have provided an almost absolute protection" for "opinion work product."  *Id., citing In re Int'l Sys.*, 693 F.2d at 1240; *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 441 (E.D. Tex. 2003)("A court cannot order production of opinion work-product absent a showing of even higher necessity, which is a rare situation if it exists at all."), *vacated in part on other grounds*, No. 03-Civ. A. 5:97-CV-273, 2003 WL 21911333 (5th Cir. July 25, 2003).[8]

─────────────

    [8] The district court in *Robinson* explains the distinction between "ordinary work product" and "opinion work product":

        The level of protection from disclosure depends on
        whether work-product is classified as "ordinary" or
        "opinion" work product.  *See Sporck v. Peil*, 759 F.2d
        312, 316 (3d Cir. 1985).  Ordinary work-product
        generally consists of "primary information, such as verbatim
        witness testimony or objective data" collected by or for
        a party or a party's representative.  *Kent Corp. v. NLRB*,
        530 F.2d 612, 624 (5th Cir. 1976); *but see Sporck*, 759

Texas Rule of Civil Procedure 192.5(b) bars discovery of an attorney's work product, which protects the attorney's mental impressions, opinions, conclusions and legal theories. *Marathon Oil*, 893 S.W.2d at 589. It also applies to documents generated by counsel, materials prepared by, mental impressions developed, and communications between the party or its representatives, including its attorneys, consultants, insurers, indemnitors, employees, or agents in anticipation of litigation. *Id.*

Work product does not protect materials created in the ordinary course of business or pursuant to public requirements that

---

F.2d at 315-16 (an attorney's compilation of otherwise unprotected documents can constitute opinion work-product because identification of the documents as a group reveal the lawyer's selection process and thus his mental impressions); *LTV,* 89 F.R.D. at 613 ("LTV's collations or choice of samples need not be identified . . . ."). A court may order production of ordinary work-product if the party seeking production can show that it has a "substantial need" for the material in the preparation of its case and that it cannot obtain the substantial equivalent of the material by other means without "undue hardship." Fed. R. Civ. P. 26(b)(3). Opinion work product, on the other hand, which consists of mental impressions, conclusions, opinions, or legal theories of an attorney other representative of a party is afforded an almost absolute protection from discovery. *See In re International Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). A court cannot order production of opinion work-product absent a showing of even higher necessity, which is a rare situation if it exists at all. *See Hickman v. Taylor*, 329 U.S. 495, 513 . . . (1947) . . . .

214 F.R.D. at 441. *See Brady*, 238 F.R.D. at 443 ("[If] the materials sought are opinion work product then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information.").

are not related to litigation.  *El Paso*, 682 F.2d at 1039. Moreover the privilege only protects the documents, not the underlying facts.  *In re International Systems and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240-41 (5th Cir. 1982).

Should the Court not find waiver appropriate, Plaintiffs have identified those objections by Hewitt that Plaintiffs consider unfounded and ask the Court to overrule them and to require Hewitt to produce responsive documents.  The Court addresses each request and the parties' contentions in turn.

**1.  RFP No. 5**

Documents sufficient to identify every customer other than the Plan for which Hewitt has used the NTRC[9] system at any time.

**Hewitt's Response:**  Hewitt objects to request for production No. 5 because it is not limited in scope with regard to time or services provided by Hewitt using the NTRC system.  In addition, Hewitt objects because the phrase "sufficient to identify" is vague and undefined. Hewitt objects further because this request is a mere fishing expedition because it is unrelated to the issues set forth in the Complaint.  Subject to and without waiving these objections, Hewitt states that it has no responsive documents because Hewitt has not "used the NTRC system" in the manner at issue in this case for any other client other than The Plan.

**Plaintiffs' Objection** centers on Hewitt's response that "it has no responsive documents because Hewitt has not 'used the NTRC system' in the manner at issue in this

---

[9] "NTRC" is Hewitt's predecessor, Northern Trust Retirement Consulting, L.L.C., which provided benefits administration services to Enron for some of its defined contribution plans.  This work was transferred to Hewitt in June, 2001.  According to Hewitt, it acquired certain assets of NTRC and the NTRC database in 2003.  Ex. G, Affidavit of Bob Dunlap, attached to #1424.

case for any other client other than The Plan."  They
contend, "This response misinterprets and improperly
limits the scope of Plaintiff's request, as the specific
RFP requires Hewitt to produce documents sufficient to
identify *every* customer other than the Plan for which
Hewitt has used the NTRC system without regard to the
alleged "manner" of use."

**Hewitt's Response:**  Hewitt objects that Plaintiff does
not explain how its requests are designed to lead to the
discovery of admissible evidence and that its
restriction, "limiting the request to uses similar to
that in this lawsuit, is necessary to limit this request
to documents relevant to this lawsuit."

**Court's Ruling:**  Hewitt's objection is overruled.  All
grounds for objections in response to Rule 34 requests
must be stated with specificity.  Aside from boiler plate
objections, Hewitt far too narrowly construes the term
"relevant" for discovery purposes.  Moreover the Court
agrees with Plaintiffs that Hewitt twists the words of
the request and attempts to restrict improperly  the
scope of their request. Clearly similar instances of
Hewitt's clients using the same product and the results
of that use may be relevant to the claims and defenses in
this suit.  Plaintiffs are entitled to these documents.

**2.  RFP No. 6:**

All documents concerning the training or instruction that
Hewitt provided to any of its employees concerning the
use of the NTRC system.

**Hewitt's Response:**   Hewitt objects to request for
production No. 6 because the phrase "all documents" is
overly broad, vague and ambiguous.  Hewitt objects
further because the phrases "training" or "instruction"
are undefined and ambiguous.  Hewitt also objects because
of the breadth of this request, it seeks documents
protected by the attorney client privilege and work
product doctrine.  Subject to and without waiving these
objections, Hewitt states . . . that it has no responsive
documents because all training with regard to the NTRC
system was provided by NTRC to its employees prior to
Hewitt acquiring NTRC or the NTRC system.

**Plaintiffs'  Objection**  argues  that  this  response

"improperly limits the scope of Plaintiffs' request. In the definitions section of Plaintiffs REPs, 'Hewitt' is defined broadly to encompass predecessors, including NTRC prior to the time Hewitt acquired it. Hewitt's response evades the question of whether Hewitt has any documents in its possession or control that concern training or instruction on the NTRC system that NTRC provided."

**Hewitt's Response** states that it is gathering responsive documents that it will produce timely, but according to Plaintiffs, apparently has not produced. Hewitt also claims that Northern Trust "retain[ed] a significant amount of material that may be responsive. Hewitt does not have custody or control over the materials in The Northern Trust's possession, custody or control," and submits as evidence the Declaration of Bob Dunlap, Exhibit G at ¶ 6, attached to #1424.

**Court's Ruling:** What is overly broad and vague are Hewitt's objections that the phrase "all documents" is overly broad, vague and ambiguous and that the phrases "training or "instruction" are undefined and ambiguous; the Court finds they are meritless. The documents requested are sufficiently defined and limited by "the training or instruction that Hewitt provided to any of its employees concerning the use of the NTRC system" and the request is clearly relevant to this litigation. Furthermore Hewitt fails to satisfy the specific elements for asserting attorney-client and work-product privileges. As stated in *First Savings Bank*, *F.S.B., v. First Bank System, Inc.*, 902 F. Supp. 1356, 1360 (D. Kansas 1995),

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.
> Rule 26(b)(5) plainly contemplates that the required notice and information is due upon a party withholding the claimed privileged material. Consequently, reading Rules

> 26(b)(5) and 34(b) together, the producing
> party must provide Rule 26(b)95) notice and
> information at the time it was otherwise
> required to produce the documents under Rule
> 34.

Hewitt has failed both in specificity and in timeliness to satisfy the requirements, even though it responded long after being served with the request. Whatever documents Hewitt has in its possession that were used to train its employees on the NTRC system must be produced. Hewitt's statement under oath that the requested documents are not within its possession or under its control is sufficient to comply with an order for production, but if it knows who has possession or control, it is required to state that information in detail. *See, e.g.,* 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Prac. & Proc.* §2213 and nn.5 and 6 (2008 update), *citing inter alia RCA Mfg. Co. v. Decca Records, Inc.*, 1 F.R.D. 433, 436 (S.D.N.Y. 1940). Moreover, under Rule 34 documents are deemed within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control **or has the legal right to obtain the documents on demand.** *See, e.g., Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476 (D. Colo. 2007). Hewitt has not explained its relationship to Northern Trust, its predecessor, nor indicated whether it has a legal right to obtain documents in Northern Trust's possession or whether it purchased them when it purchased Northern Trust's assets and became its successor. If Hewitt has possession, custody or control, including the legal right to control or obtain any documents that meet Plaintiffs' request, it must produce them. *See Tomlinson*, 245 F.R.D. at 476 (Rule 34 permits a party seeking production of documents to require production of documents not in the actual possession of the opposing party if the opposing party has retained any right or ability to influence the nonparty possessing those documents); *see also Alexander v. F.B.I.*, 194 F.R.D. 299 (D.D.C. 2000).

**3.  RFP No. 8:**

All documents concerning any complaints by customers concerning the NTRC system.

**Hewitt's Response:**  Hewitt objects in boilerplate that the "request is overly broad, vague, ambiguous, and not limited in scope with regard to date, services provided by NTRC, or the nature of any complaints alleged." Hewitt also objects because this request seeks materials protected by the attorney/client privilege and the work product doctrine.  It complains that this request is a complete fishing expedition.  Subject to these objections, Hewitt states that it has no responsive documents.

**Plaintiffs' Objection:**  As with RFP 6, Plaintiffs ask whether Hewitt has any documents in its possession or control regarding complaints about the NTRC system.  If so, the Court should order them produced because they are clearly relevant.  *Haensel v. Chrysler Corp.*, No. Civ. A. 96-1103, 1997 WL 537687, *11 (E.D. La. Aug. 22 1997)(granting motion to compel and noting that "customer complaints are routinely held discoverable").

**Hewitt's Response,** in addition to the objections noted, complains that Plaintiff does not explain how its requests are designed to lead to the discovery of admissible evidence and claims that the Plan has the burden of establishing the "substantial similarity" of other accidents, complaints, claims or lawsuits." *United Oil Co., Inc. v. Parts Assoc., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005).

**Court's Ruling***:*  Hewitt's Response fails to meet the specificity requirements discussed above.  Customer complaints about the NTRC system, which is at the core of this action, are clearly relevant.  Hewitt bears the burden of demonstrating their irrelevance in response to a request for their production, while Plaintiffs would bear the burden of demonstrating their admissibility at trial.  Hewitt's objections are overruled.

## 4.   RFP Nos. 15 and 16

All documents concerning Hewitt's communications with any insurance carrier concerning any error in any calculation that relates to the *Title* allocation, including any letters notifying any insurance carrier of potential claims related to such errors.

**Hewitt's Response:**  Objecting to "all documents" as

"overly broad, vague and undefined" and to "any error in calculations" as "vague and undefined," Hewitt claims "attorney client privilege and work product doctrine" protect this information.  Otherwise it agrees to produce responsive materials at a mutually agreeable time and location.

**Plaintiffs' Objection** asserts that Hewitt's response contradicts its representations in its Initial Disclosures that it does not have any "insurance agreement under which any person carrying on in an insurance business may be liable to satisfy all or part of a judgment" in this case.  Plaintiffs contend that Hewitt should be required to amend its Initial Disclosure to disclose any applicable insurance coverage as required by Rule 26(a)(1)(A)(iv).

**Court's Ruling:**  Again lacking requisite specificity for such objections, Hewitt's Response and Objections are overruled.  Hewitt shall amend its Initial Disclosure, if appropriate, and produce any requested documents within its possession, custody, and control.

5.  **RFP No. 32:**

All documents concerning any changes or modifications that Hewitt made or is planning to make to its quality control procedures for benefits and settlement distributions after January 30, 2007.

**Hewitt's Response** objects that the information is protected by the attorney client privilege and the work product doctrine, that "all documents" is overly broad, ambiguous and undefined, and the terms "change or modifications" and quality control procedures" are also overly broad, vague and undefined.  It further complains the information sought is not relevant and it will not produce any responsive materials.

**Plaintiffs' Objections** state, "In this case, Hewitt failed to verify even one calculation against actual participant data, a knowing and reckless decision in light of the risks associated with a misallocation. Plaintiffs are entitled to explore the feasibility of potential quality control measures, and the measures Hewitt subsequently implemented to prevent similar errors in the future are therefore highly relevant."

**Court's Ruling:**   Not only are Hewitt's objections nonspecific, but the Court agrees that this request is within the scope of relevance for discovery purposes. Modifications and quality control procedures are relevant to Plaintiffs' negligence and gross negligence claims. Hewitt's objections are overruled, and it shall produce the requested documents.

6.  **RFP No. 36:**

All documents concerning Hewitt's consideration of any request by Enron, the Administrative Committee, or the Plan to provide funds to the Plan to cover any shortfall caused to the Plan as a result of errors in the *Tittle* Allocation.

**Hewitt's Response** claimed information sought is protected by the attorney-client privilege and work product doctrine.  It has withdrawn other objections it had previously made to this request.

**Court's Ruling:**   Hewitt has failed to properly raise these privileges. therefore its objection is overruled.

7.  **RFP Nos. 41 and 42**

No. 41:

Documents sufficient to identify any and all actual or threatened litigation against Hewitt that relates to the miscalculation of benefits or settlement distributions, including, for example, copies of any complaints or demand letters concerning such actual or threatened litigations.

No. 42

Documents sufficient to identify any and all actual or threatened litigation against Hewitt that relates to allegations of gross negligence, intentional conduct, fraud, or fraud in the inducement.

**Hewitt's Response:** While conceding that prior complaints and lawsuits may be properly discovered, Hewitt argues they must be connected in some way to this lawsuit, and Plaintiffs must, but cannot, establish the "substantial similarity" with these other actions.  Hewitt also

objects that "sufficient to identify" is vague and undefined; the request is not limited as to time or client; "miscalculation or miscalculation of benefits or settlement distributions" is vague, ambiguous and undefined; the request seeks materials covered by the attorney-client privilege and work product doctrine; and the request is an overly broad fishing expedition. Hewitt objects to No. 42 for assuming facts not in evidence.   Otherwise it states it will make available "information related to the lawsuit brought by The Plan Credit Recovery Corporation and The Plan's Corporation Savings Plan and the Administrative Committee of the Plan Corporation Savings Plan."

**Plaintiffs' Objection** states that Hewitt's objections lack merit, that it failed to disclose whether responsive documents exist, and that the Court should order Hewitt to produce responsive documents without the arbitrary and improper limitation it asserts.

**Court's Ruling:**  The Court agrees with Plaintiffs' that Hewitt's boilerplate objections lack merit.  The Court, however, does find that there should be time limits and that any discoverable lawsuits involving miscalculation of benefits or settlement distributions should be limited to those obtained in part by Hewitt's use of the NTRC system, which Hewitt states it acquired in 2003.[10]  Under Rule 26(b), "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *See, e.g.,  See, e.g., Kormos v. Sportsstuff, Inc.*, 2007 U.S. Dist. LEXIS 64905, *6 (E.D. Mich. Sept. 4, 2007), *citing Thornton v. State Farm Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3499986, *2 (N.D. Ohio Dec. 5, 2006)("Discovery of other lawsuits is not a subject that is amenable to a *per se* rule.  The Court must look to the relevance of the other suits to the particular claims at issue."); *Lohr v. Stanley-Bostitch, Inc.*, 135 F.R.D. 162, 164 (W.D. Mich. 1991)("For discovery purposes, the court need only find that the circumstances surrounding other accidents are similar enough that discovery concerning

---

[10]  Plaintiffs allege that the proprietary database system acquired from Northern Trust Retirement Consulting, operating on a platform known as OS/2, by the end of 2005 had been rendered obsolete.  First Amended Complaint at 21,¶ ¶74, duplicatively filed as #1428 and 1433.

those incidents is reasonably calculated to lead to the uncovering of substantially similar occurrences."); *Payne v. Howard*, 75 F.R.D. 465, 469 (D.D.C. 1977)("whether pleadings in one suit are 'reasonably calculated' to lead to admissible evidence in another suit . . . depends on the nature of the claims, the time when the critical events in each case took place, and the precise involvement of the parties."). Here information about other litigation regarding miscalculation of benefits or settlement distributions by Hewitt during the same period is relevant because it could provide evidence of notice to Hewitt, intent, knowledge, and other elements of Plaintiffs' claims of negligence and gross negligence here. Only when offered as evidence must a party prove substantial similarity based on such facts as the same NTRC system, the same type of error, the same results, etc.

Accordingly for the reasons delineated above, the Court

ORDERS that Plaintiffs' motion to compel is denied as to waiver, but GRANTED in part as to the challenged requests for documentation, as indicated in this Opinion.

**SIGNED** at Houston, Texas, this 19th day of March, 2009.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-36-